# APPENDIX INDEX

| TAB | DOCUMENT | DATE | PAGE |
|---|---|---|---|
| 1. | a. United States Court of Appeals for the Sixth Circuit - Case # 11-5981, Order affirming the district court's judgment pursuant to Rule 34(j)(2)(C), Rules of the Sixth Circuit. | May 9, 2012 | 1-5 |
|  | b. United States Court of Appeals for the Sixth Circuit - Mandate | September 5, 2012 | 6-7 |
|  | c. United States District Court Eastern District of Kentucky - Case # 10-05, Judgment | July 5, 2011 | 8 |
|  | d. United States District Court Eastern District of Kentucky - Case # 10-05, Memorandum Opinion and Order | July 5, 2011 | 9-20 |
|  | e. United States District Court Eastern District of Kentucky - Case # 10-05, Motion to Quash third party subpoena Duces Tecum or in the Alternate for a Protective Order | July 9, 2010 | 21-29 |
|  | f. United States District Court Eastern District of Kentucky - Case # 10-05, Plaintiff's Notice of Appeal | August 8, 2011 | 30-31 |
|  | g. United States District Court Eastern District of Kentucky - Case # 10-05, Memorandum Opinion and Order | July 15, 2011 | 32-34 |
| 2. | a. United States Court of Appeals for the Sixth Circuit - Case # 12-6570, Order Case Dismissed for want of prosecution | February 14, 2013 | 35-36 |
|  | b. United States District Court Eastern District of Kentucky - Case # 10-54, Memorandum Opinion and Order | December 5, 2012 | 37-44 |
|  | c. United States District Court Eastern District of Kentucky - Case # 10-54, Judgment | December 5, 2012 | 45 |
| 3. | United States District Court Eastern District of Kentucky - Case # 12-33, Memorandum Opinion and Order | May 1, 2013 | 46-55 |

# APPENDIX INDEX

4.    a. United States District Court Eastern District of Kentucky Case # 12-34, Order of Dismissal    August 24, 2012    56

b. United States District Court Eastern District of Kentucky Case # 12-34, Plaintiff's Motion for Dismissal with prejudice    August 23, 2012    57-59

5.    a. United States District Court Eastern District of Kentucky Case # 12-35, Memorandum Opinion and Order    January 18, 2013    60-71

b.. United States District Court Eastern District of Kentucky Case # 12-35, Order granting motion to seal exhibits    September 9, 2012    72-73

6.    United States District Court Eastern District of Kentucky Case # 10-5, Default Judgment    March 26, 2010    74

7.    Plaintiff's Response in Opposition to Defendant's Motion to Dismiss    August 31, 2012    75-107

8.    Plaintiff's First Amended Complaint for Declaratory and Injunctive Relief    July 3, 2012    108-134

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

No. 11-5981

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*May 09, 2012*

LEONARD GREEN, Clerk

MICHAEL DEAN VAUGHAN,                )
                                     )
    Plaintiff-Appellant,         )
                                     )
v.                                   )          ON APPEAL FROM THE UNITED
                                     )          STATES DISTRICT COURT FOR
                                     )          THE EASTERN DISTRICT OF
MARY ELIZABETH BRIGHAM, aka Mary     )          KENTUCKY
Elizabeth Kounovksy, aka Mary Elizabeth )
Goad,                                )
                                     )
    Defendant-Appellee.          )

O R D E R

Before:  MOORE, COOK, and WHITE, Circuit Judges.

Michael Dean Vaughan, a pro se litigant, appeals a district court judgment dismissing his complaint.  This case has been referred to a panel of the court pursuant to Rule 34(j)(1), Rules of the Sixth Circuit.  Upon examination, this panel unanimously agrees that oral argument is not needed. Fed. R. App. P. 34(a).

Seeking injunctive relief and monetary damages, Vaughan brought a diversity action against Mary Elizabeth Brigham, claiming defamation, false light, and intentional infliction of emotional distress.  Vaughan's suit was the result of an unsuccessful relationship between himself and Brigham.  After the relationship fell apart, pornographic images of Brigham were sent via an anonymous e-mail to her friends and family.  Brigham believed that Vaughan was the culprit, and she contacted Vaughan's employer, the Kentucky National Guard (Guard), and informed the Guard of her beliefs.  The Guard conducted an investigation and brought charges against Vaughan for engaging in conduct unbecoming an officer.  In response, Vaughan brought suit against Brigham.

**A - 1**

Brigham did not respond to Vaughan's complaint, but instead of moving for default judgment, Vaughan sought to take discovery of the Guard.  The district court issued an order granting the Guard's motion to quash Vaughan's requests for discovery.  Vaughan petitioned this court for a writ of mandamus in which he asked this court to vacate that order and all subsequent orders.  He also sought the disqualification of the district court judge.  This court denied Vaughan's petition.  While Vaughan's petition for a writ of mandamus was pending, the district court dismissed Vaughan's case as a sanction for his contumacious conduct.  In particular, after evidentiary hearings, the district court concluded that Vaughan had acted in bad faith and had committed perjury.  Consequently, the district court dismissed Vaughan's complaint with prejudice and denied his subsequent motion for reconsideration.

On appeal, Vaughan's over arching contention is that the district court judge was biased against him, and he cites the following examples of judicial bias:  (1) the district court failed to impartially apply the Federal Rules of Civil Procedure and denied him due process of law; (2) the district court improperly made adverse credibility determinations; (3) the district court improperly allowed the U.S. Attorney's Office to represent the Kentucky National Guard; and (4) the district court improperly dismissed his case with prejudice.  Vaughan's appeal hinges on his fourth contention.  In other words, if we determine that the district court properly dismissed his case with prejudice, Vaughan's first, second, and third contentions are moot.

A district court has substantial discretion in the management of its docket.  *See Knoll v. AT&T*, 176 F.3d 359, 363 (6th Cir. 1999).  This discretion includes the inherent power to dismiss a case for plaintiff's failure to comply with the Federal Rules or obey a court order.  *Reid v. Prentice-Hall, Inc.*, 261 F.2d 700, 701 (6th Cir. 1958); *see also Knoll*, 176 F.3d at 362-63.  Consequently, this court reviews such a decision for abuse of discretion.  *See Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642 (1976); *United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002).  "[A] case is properly dismissed by the district court where there is a clear record of delay or contumacious conduct." *Knoll*, 176 F.3d at 363.  "In reviewing a district court's dismissal . . . [the court] consider[s] four factors:  '(1) whether the party's failure is due to willfulness, bad faith, or

**A - 2**

Case: 3:15-cv-00006-GFVT   Doc #: 22-3   Filed: 09/13/15   Page: 5 of 136   Page
Case: 3:10-cv-00005-DCR-EBA   Doc #: 87-3   Filed: 05/09/12   Page: 39 of 4   Page ID#: 1008
ID#: 226
No. 11-5981
- 3 -

fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.'" *Reyes*, 307 F.3d at 458 (quoting *Knoll*, 176 F.3d at 363); *see also Coleman v. Am. Red Cross*, 23 F.3d 1091, 1094 n.1 (6th Cir. 1994) (providing for the application of the factors under the rubric of a court's inherent powers). A party seeking to avoid the sanction of dismissal "has the burden of showing that his failure to comply was due to inability, not willfulness or bad faith." *Reyes*, 307 F.3d at 458.

The record shows that the district court properly exercised its discretion when it dismissed Vaughan's case. Instead of resolving his defamation suit against Brigham, Vaughan improperly used his defamation suit to challenge the Guard's internal disciplinary process and its punishment of him. Therefore, the first *Knoll* factor weighs in favor of finding the proper exercise of the district court's discretion. In addition, the district court, in no uncertain terms, determined that Vaughan had lied to the court. The district court specifically cited Vaughan's testimony at a September 28, 2010 hearing that was, "at best, difficult to believe." Vaughan testified that his sworn statement given during the course of the Guard's disciplinary investigation was "coached" and "coerced" by a superior officer in the Guard. He also claimed that his sworn statement was inaccurate because he made it while he was under the influence of narcotics.

The district court expressed its incredulity and noted that "despite [Vaughan] . . . being so high as to render him unable to tell the truth, Vaughan's statement contained remarkably accurate detail of the events leading up to this dispute." The district court went on to note that, "Vaughan later testified that every single fact provided in the statement was accurate, except the single paragraph that was damning to his present claims." Thus, Vaughan failed to meet his burden of showing that his behavior was due to inability, not willfulness or bad faith.

The second *Knoll* factor also weighs in favor of finding an appropriate exercise of the district court's discretion. The Guard has been prejudiced by being forced to defend against Vaughan's improper attempt to use his underlying defamation case to collect discovery from it. With respect to the third *Knoll* factor, the record reveals that the district court warned Vaughan verbally and via

**A - 3**

Case: 3:10-cv-00005-DCR-EBA   Doc #: 82-3   Filed: 05/09/12   Page: 49 of 4 - Page ID#: 1009

No. 11-5981

- 4 -

written notice that false testimony would be punished. Finally, the district court plainly considered other sanctions, but after "considering Vaughan's conduct throughout [the] proceeding," the district court was convinced that no other sanction would deter Vaughan's conduct. Moreover, the district court specifically noted that, in order to effectuate its sanction, a dismissal with prejudice was necessary. In light of Vaughan's conduct, including his apparent intent to impede the Guard's disciplinary proceeding against him, we cannot say that the district court abused its discretion.

Accordingly, we affirm the district court's judgment pursuant to Rule 34(j)(2)(C), Rules of the Sixth Circuit.

ENTERED BY ORDER OF THE COURT

Clerk

**A - 4**

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540

Leonard Green        POTTER STEWART U.S. COURTHOUSE       Tel. (513) 564-7000
Clerk                CINCINNATI, OHIO 45202-3988        www.ca6.uscourts.gov

Filed: May 09, 2012

Mr. Michael Dean Vaughan
2010 Scott Boulevard
Covington, KY 41014

       Re: Case No. 11-5981, *Michael Vaughan v. Mary Brigham*
           Originating Case No. : 3:10-CV-5

Dear Sir or Madam,

    The Court issued the enclosed (Order/Opinion) today in this case.

            Sincerely yours,

            s/Robin Duncan
            Case Manager
            Direct Dial No. 513-564-7027

cc:   Ms. Mary Elizabeth Brigham
     Mr. Robert R. Carr

Enclosure

Mandate to issue

**A - 5**

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

|                      | 100 EAST FIFTH STREET, ROOM 540      |                      |
| -------------------- | ------------------------------------ | -------------------- |
| Deborah S. Hunt      | POTTER STEWART U.S. COURTHOUSE        | Tel. (513) 564-7000  |
| Clerk                | CINCINNATI, OHIO 45202-3988           | www.ca6.uscourts.gov |

Filed: September 05, 2012

Mr. Robert R. Carr
Eastern District of Kentucky at Frankfort
330 W. Broadway
Suite 313 John C. Watts Federal Building
Frankfort, KY 40601-1992

> Re: Case No. 11-5981, *Michael Vaughan v. Mary Brigham*
> Originating Case No. : 3:10-CV-5

Dear Clerk,

Enclosed is a copy of the mandate filed in this case.

Sincerely yours,

s/Robin Duncan
Case Manager
Direct Dial No. 513-564-7027

cc:  Mary Elizabeth Brigham
     Mr. Michael Dean Vaughan

Enclosure

**A - 6**

Case: 3:10-cv-00005-DCR-EBA Doc #: 33-3 Filed: 09/05/12 Page: 290f 2 Page ID#: 2012
ID#: 230

## UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

_____

No: 11-5981

_____

Filed: September 05, 2012

MICHAEL DEAN VAUGHAN

     Plaintiff - Appellant

v.

MARY ELIZABETH BRIGHAM, aka Mary Elizabeth Kounovsky, aka Mary Elizabeth Goad

     Defendant - Appellee

<u>MANDATE</u>

   Pursuant to the court's disposition that was filed 05/09/2012 the mandate for this case hereby issues today.

COSTS:  None

**A - 7**

Case: 3:10-cv-00005-DCR-EBA Doc #: 27-3 Filed: 07/05/11 Page: 1 of 1 - Page ID#: 231

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| MICHAEL DEAN VAUGHAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3: 10-05-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MARY ELIZABETH BRIGHAM, | ) | **JUDGMENT** |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

Consistent with the Memorandum Opinion and Order entered this date and pursuant to

Rule 58 of the Federal Rules of Civil Procedure, it is hereby

**ORDERED** and **ADJUDGED** as follows:

1.    Plaintiff's complaint [Record No. 2] is **DISMISSED**, with prejudice.

2.    This is a **FINAL** and **APPEALABLE** Judgment and there is no just cause for

delay.

3.    This matter is **DISMISSED** and **STRICKEN** from the Court's docket.

This 5th day of July, 2011.



**Signed By:**

*Danny C. Reeves* DCR

**United States District Judge**

**A - 8**

Case: 3:10-cv-00009-DCR-EBA   Doc #: 76   Filed: 07/05/11   Page: 9 of 12 - Page ID#: 232

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| MICHAEL DEAN VAUGHAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3: 10-05-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MARY ELIZABETH BRIGHAM, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court for consideration of sanctions against the *pro se* plaintiff, Michael Dean Vaughan. Vaughan has proved that he intends to use the federal court system for harassment, retaliation, and to improperly influence his pending military-discipline hearing. But more importantly, Vaughan has committed perjury. For these reasons, the Court believes that the only appropriate sanction is to dismiss Vaughan's case.

**I.**

This case is unusual in both its factual underpinnings and procedural posture. Vaughan initially filed this action in February 2010. [Record No. 2] At its core, the case arises from the broken personal relationship between Vaughan and Defendant Mary Brigham. Shortly after the two ended their relationship, Brigham discovered that pornographic images of her had been forwarded by anonymous e-mail to her friends and family. Brigham believed that Vaughan had distributed the images. As a result, Brigham contacted the Kentucky National Guard, Vaughan's

-1-

**A - 9**

employer, and informed them of her beliefs. The Guard initiated an investigation and eventually brought charges against Vaughan for engaging in conduct unbecoming an officer. In response, Vaughan brought this suit against Brigham, alleging defamation, false light, and intentional infliction of emotional distress. [*Id.*] Additionally, in August 2010, Vaughan sued Colonel Robert Hayes, of the Kentucky National Guard, alleging similar claims of defamation, false light, and intentional infliction of emotional distress. *See Vaughan v. Hayes*, No. 3:10-054-DCR (E.D. Ky., Aug. 16, 2010).

Brigham never filed an answer to Vaughan's complaint. As a result, the Clerk initially entered default against Brigham. [Record No. 15] Had Vaughan simply moved for default judgment, and nothing more, this case would likely have concluded in quick fashion. However — revealing his true motives in filing this case — Vaughan did not immediately move for default judgment. Instead, he sought to take discovery of the Kentucky National Guard. It is his conduct in pursuing that discovery that has led the Court to consider sanctions.

Vaughan's conduct illuminates his intent in pursuing this case: to harass the defendant and the Kentucky National Guard and to impede the pending Guard disciplinary proceeding. On March 26, 2010, Vaughan was granted leave to conduct discovery of certain members of the Kentucky National Guard. [Record No. 14] He served subpoenas upon two officers, but he failed to comply with Army regulations for serving subpoenas in private litigation. [*See* Record No. 34] When the Guard informed Vaughan of his request's procedural deficiencies, rather than moving the Court to compel production, Vaughan twice moved the Court to hold the officers in contempt. [Record Nos. 26, 30] His requests were summarily denied. [Record Nos. 28, 34]

**A - 10**

Case: 3:10-cv-00009-DCR-EBA   Doc #: 76-3 Filed: 07/05/11   Page: 3 of 12 - Page ID#: 726

After Vaughan complied with the procedural requirements, the Guard moved to quash the subpoenas. [Record No. 35]  In response, Vaughan moved for sanctions against the Guard's attorney, Lieutenant Colonel Dylan Seitz. [Record No. 43][1]  At a hearing held on September 28, 2010, the Court heard testimony, granted the Guard's motion to quash, and denied Vaughan's motion for sanctions. [Record No. 45]

During the September 28, 2010 hearing, Vaughan provided testimony that so strained credulity it eventually led the Court to conduct further inquiry into whether he committed perjury. [Record Nos. 47, 64]  Also as a result of evidence presented at the hearing, the Court held the case in abeyance for six months to allow criminal authorities to investigate accusations of Vaughan's harassment and threatening communications. [Record No. 45]  Additionally, based on Vaughan's conduct, the Court found good cause to deny Vaughan's motion for entry of default judgment. [Record No. 47, p. 50]  *See* Fed. R. Civ. P. 55(b)(2).

After the six-month stay, Vaughan immediately renewed his motions for default judgment (which had previously been denied) and sanctions against LTC Seitz (also previously denied). [Record Nos. 52, 59]  Vaughan's motion for default judgment was again denied [Record No. 63] and the Court scheduled a second hearing to address Vaughan's motion for sanctions and motion for a preliminary injunction. [Record Nos. 61, 62]  At the second hearing, on June 28, 2011, the United States Attorney entered an appearance on behalf of the Guard. [Record No. 71]  However, Vaughan moved to disqualify the United States Attorney, claiming that his authority

---

1       The basic premise of Vaughan's motion was that LTC Seitz referred to an "open" criminal investigation against Vaughan in Washington, which Vaughan believed to then be closed. However, at the hearing on the matter, Vaughan admitted that the investigation (as of the hearing) was, in fact, open. [Record No. 47, p. 12 ("It's open as of right now.")]

did not allow him to represent the Guard — which Vaughan claimed was a state agency. [Record No. 69; *see also* Record No. 34, pp. 3–4 (concluding that "[a]lthough the Kentucky National Guard may be a state agency falling under the Kentucky Department of Military Affairs, it is nevertheless also a component of the United States Armed Forces and subject to regulations promulgated by the Department of Defense")] The Court denied Vaughan's motion.

This long, drawn-out discovery dispute with the Kentucky National Guard exemplifies Vaughan's conduct. In total, rather than simply moving for default judgment, Vaughan has filed motions for discovery, three "emergency" motions, two motions for contempt, two motions for sanctions, and a motion to disqualify a United States Attorney from representing members of the United States Army.[2] Vaughan has proved that his intent is not to settle his dispute with Brigham, but to attack and harass those involved, particularly the third-party Kentucky National Guard. The federal courts are not a forum for pursuing such motives, and the Court finds that several of Vaughan's motions were filed in bad faith.

In the process, Vaughan has committed perjury. As previously mentioned, Vaughan's testimony at the September 28, 2010 hearing was, at best, difficult to believe. Particularly, Vaughan alleged that a sworn statement that he gave during the course of the Guard's disciplinary investigation was "coached" and "coerced." [Record No. 47, p. 26] He claimed that he was forced into making a false statement by a Major in the Kentucky National Guard. [*Id.*]

---

2       Continuing with this pattern, on June 30, 2011, Vaughan filed a set of "Objections" [Record No. 75], in which he essentially objected to all of the Court's rulings to date and asked for a rehearing of all contested motions. Vaughan's motion refers to the "blatant bias, incredible prejudice, and intimidation tactics of the Honorable Judge Reeves" and described the undersigned as being willing "to sacrifice the integrity of the court to attack" Vaughan. [*Id.*, pp. 1,4] In other words, Vaughan has now turned his obstreperous conduct and pattern of harassment toward the Court itself.

**A - 12**

Case: 3:10-cv-00009-DCR-EBA Doc #: 76-3 Filed: 07/05/11 Page: 5 of 12 - Page ID#: 728

Vaughan also claimed that the sworn statement was inaccurate because it was procured while he was under the influence of narcotics. [*Id.*, p. 15] However, despite his allegedly being so high as to render him unable to tell the truth, Vaughan's statement contained remarkably accurate detail of the events leading up to this dispute. In fact, Vaughan later testified that every single fact provided in the statement was accurate, except the single paragraph that was damning to his present claims. [*Id.*, p. 26] Before receiving his testimony, the Court put Vaughan on notice that if he provided false testimony, it could have grave consequences for him and his case. [*Id.*, p. 16 ("And you do understand that because you're making these statements to me in open court . . . that if the Court finds those statements to be false that you could be subject to some serious penalties?")]

Prior to the June 28, 2011 hearing, the Court put Vaughan on notice, for the second time, that if his statements were found to be incorrect, he would face sanctions. [Record No. 64, p. 2] At the June 28, 2011 hearing, the Court received additional testimony concerning Vaughan's statements. Major Richmond testified. His credible testimony clearly established that Vaughan was not impaired while providing his previous sworn statement. Further, Major Richmond established that, contrary to Vaughan's assertions, he in no way ordered, coached, or coerced Vaughan into providing the statement. At the conclusion of the hearing, the Court concluded that Vaughan had committed perjury.[3]

---

3    The Court recognizes that not all inaccurate testimony is perjury. On many occasions, statements that are incorrect may result from confusion, mistake, or faulty memory. Therefore, not all inaccurate testimony or statements reflect a willful attempt to obstruct justice. However, that is not the case here. In the present matter, the Court finds that Vaughan intentionally lied to the Court about a matter that is central to his claims. His false testimony was not the result of confusion or mistake; rather, it was willfully deceptive and a plain attempt to obstruct justice.

**A - 13**

## II.

Courts have the power to monitor, control, and discipline the conduct of parties and attorneys in litigation.  This authority is derived from a number of sources such as statutes (*e.g.*, 28 U.S.C. § 1927) and procedural rules (*e.g.*, Rules 11, 37(b), and 41(b) of the Federal Rules of Civil Procedure).  These rules are, in general, "tailored to certain categories of participants or aspects of litigation, and are subject to procedural and substantive limitations peculiar to each." *Derzack v. Allegheny*, 173 F.R.D. 400, 412 (W.D. Pa. 1996) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)).  For example, Rule 37(b) applies exclusively to conduct in discovery. *See* Fed. R. Civ. P. 37(b).  And § 1927 applies exclusively to attorneys, not *pro se* litigants or parties.  *Davenport v. Roach Oil Co.*, No. 09-11793, 2011 U.S. Dist. LEXIS 13802, at *23 n.8 ( E.D. Mich. Feb. 11, 2011) ("[B]y its very terms, [§ 1927] only allows courts to impose penalties upon 'any attorney or other person admitted to conduct cases . . . .'  Thus, § 1927 has no applicability here to the imposition of sanctions against a *pro se* litigant.").  Likewise, because Vaughan is appearing *pro se*, he cannot, technically, commit fraud on the court.  *See Demjanjuk v. Petrovsky*, 10 F.3d 338, 348 (6th Cir. 1993) (explaining that, in order for conduct to be fraud on the court, it must have been "on the part of an officer of the court"); *Florence v. Donald*, No. 306-087, 2008 U.S. Dist. LEXIS 31259, at *4 (S.D. Ga. Apr. 16, 2008) ("Because Plaintiff is a *pro se* litigant rather than a member of the bar, his actions cannot properly be described as 'fraud on the court.'").

In some cases, such as Vaughan's, conduct falls between the cracks of this regulatory scheme.  The offending party's conduct does not fall within the scope of any single provision.

**A - 14**

Case: 3:10-cv-00009-DCR-EBA Doc #: 76-3 Filed: 07/05/11 Page: 9 of 12 - Page ID#: 238

However, in such cases, the Court is not left without the ability to regulate behavior before it. "Neither statute nor the Federal Rules of Civil Procedure supplant . . . the implicit, inherent power of the court . . . to restrain excesses of the participants and to preserve the integrity of the judicial process." *Derzack*, 173 F.R.D. at 411. As the Supreme Court has explained, it "has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed within a Court, because they are necessary to the exercise of all others.'" *Chambers*, 501 U.S. at 43 (quoting *United States v. Hudson*, 11 U.S. 32 (1812)). "These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Id.* (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)). The inherent power of the court "extends to a full range of litigation abuses," *id.*, and "can be called upon to fill-in the interstices between particular rules of conduct." *Derzack*, 173 F.R.D. at 412. In this case, the Court relies on its inherent powers to appropriately sanction Vaughan's conduct.

The Sixth Circuit "has long recognized that a trial court's inherent power includes the power to dismiss cases." *Wolfe v. GC Servs. Ltd.*, No. 08-10628, 2008 U.S. Dist. LEXIS 119489, at *16–17 (E.D. Mich. Dec. 5, 2008) (citing *Reid v. Prentice-Hall, Inc.*, 261 F.2d 700, 701 (6th Cir. 1958); *Mitan v. Fidelity Ins. Co.*, 23 F. App'x 292, 298 (6th Cir. 2001)); *see also Republic of the Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 73 (3d Cir. 1995) (holding that a district court "may dismiss a suit outright in response to litigation abuses."). Further, the Court understands that dismissal is an "extreme sanction," *Derzack*, 173 F.R.D. at 412, that

**A - 15**

should only be utilized when "a lesser sanction would not better serve the interests of justice." *Consolidation Coal Co. v. Gooding*, 703 F.2d 230, 233 (6th Cir. 1983).  However, in this case, the severity of Vaughan's contumacious conduct compels such a sanction.

Two different facets of Vaughan's behavior underpin this conclusion.  First, he lied. Numerous cases support the Court's authority to dismiss a case for perjury or fabricating evidence. *See, e.g.*, *Nichols v. Klein Tools, Inc.*, 949 F.2d 1047 (8th Cir. 1991) (dismissing case because plaintiff lied during deposition testimony); *Wyle v. R.J. Reynolds Ind., Inc.*, 709 F.2d 585 (9th Cir. 1983) ("[C]ourts have an inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice."); *Rybner v. Cannon Design, Inc.*, No. 95-0279, 1996 U.S. Dist. LEXIS 12068 (S.D.N.Y. Aug. 20, 1996) (citing numerous "fabrication of evidence" cases and dismissing case as sanction for submitting false documents and providing false testimony during deposition); *Vargas v. Peltz*, 901 F. Supp. 1572 (S.D. Fla. 1995) (dismissing case, under inherent powers, for fabricating evidence, perjury, and obstruction of discovery process).  Second, Vaughan's pattern of behavior indicates that his suit was brought for an improper purpose and in bad faith.  Vaughan has shown a desire not to resolve his suit but to attack the Kentucky National Guard and impede its pending disciplinary processes.  Vaughan has shown a pattern of bad faith and harassment that leaves the Court no other option than to dismiss his case.

The Court's conclusion is further bolstered by considering the four factors used to determine whether dismissal is an appropriate sanction:

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the

**A - 16**

dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002) (quoting *Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999).[4]  In this case, each of the four factors supports dismissal.

First, Vaughan's conduct is unquestionably due to willful actions and bad faith.  The Court does recognize that Vaughan is proceeding *pro se*.  While *pro se* litigants are held to less stringent standards in the construction of their pleadings, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), "*pro se* status does not exempt [litigants] from compliance" with applicable rules. *Sharwell v. Baumgart*, No. 97-33320, 1997 U.S. App. LEXIS 30278, at *5 (6th Cir. Oct. 30, 1997).  In this case, Vaughan's conduct is not the result of inartful pleading or any lack of legal training; in fact, he has shown himself to be quite knowledgeable of applicable statutes and rules of procedure.  *Cf. Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir.  1991).  Rather, Vaughan's conduct is the result of a bad-faith attempt to harass other parties through the mechanism of the federal courts and a purposeful attempt to deceive the Court.  Vaughan's contumacious conduct was willful and is not excused by his *pro se* status.

Second, while the defendant, Brigham, was not necessarily prejudiced by Vaughan's conduct, the same conclusion cannot be reached with respect to the third-party, the Kentucky National Guard.  First, the Guard expended significant resources to address both Vaughan's attempts to use this case to collect discovery from the Guard and his repeated motions for

---

4       *Reyes* set out these four factors to guide courts in deciding whether dismissal is proper under Rule 41(b) or 37(b), but the Sixth Circuit has explained that the factors evaluated when considering dismissal, either under Rule 41(b), Rule 37(b), or a court's inherent powers, "are largely the same." *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1094 n.1 (6th Cir. 1994).

**A - 17**

contempt and sanctions.  The Guard has been dragged into court on multiple occasions to respond to a suit to which it is not a party.  Thus, while Vaughan's conduct has not necessarily prejudiced Brigham, it has prejudiced other parties in a significant way.

Third, Vaughan was warned that perjury would have serious consequences.  The Court verbally warned Vaughan before he provided any testimony in this case that false testimony would carry "serious penalties." [Record No. 47, p. 16]  Further, the Court provided Vaughan written notice, before the second hearing, that if he were found to have committed perjury, he would be subject to sanctions. [Record No. 64] Vaughan, therefore, was adequately warned that his continued reliance on his false statements and representations would have consequences.

Finally, considering Vaughan's conduct throughout this proceeding, the Court is convinced that no other sanction would appropriately deter the kind of conduct Vaughan has exhibited in this case. *See Eppes v. H.E. Snowden*, 656 F. Supp. 1267 (E.D. Ky. 1986) ("The remedy must serve as a deterrent to the defendant and all other that might be similarly tempted to [provide false testimony] . . . [and] must be sufficient to serve universal notice that this conduct will not be tolerated.").  The Court has considered other sanctions, but finds that nothing short of dismissal would sufficiently make clear to Vaughan that his conduct will not be tolerated.  [*See* June 28, 2011 Tr. ("I find that this defendant has presented false and perjured testimony to me, he doesn't seem to understand the significance of that, he doesn't seem to understand that he's lost on several motions that he's filed, that he keeps coming back with the same arguments that are unsuccessful.  In short, I don't know that there's any other sanction that

-10-

**A - 18**

Case: 3:10-cv-00005-DCR-EBA  Doc #: 76-3  Filed: 07/05/11  Page: 11 of 12  Page ID#: 242

would be appropriate other than dismissal of this case.")[5]] Perjury will not be tolerated. And using the federal court as a means for retaliation, harassment, and the fulfillment of personal vendettas will likewise not be tolerated. Vaughan has acted in bad faith and he has abused the litigation process. Under the circumstances, the only appropriate remedy is outright dismissal of his action.

## III.

Dismissals of actions that do not reach the merits of a claim are not "ordinarily a bar to a subsequent action on the same claim." *Costello v. United States*, 365 U.S. 265, 285 (1961). In other words, dismissals which do reach the merits are generally made without prejudice. "Nevertheless, 'in rare circumstances, a district court may use its inherent powers to dismiss with prejudice (as a sanction for misconduct) . . . .'" *Mitan v. Int'l Fid. Ins. Co.*, 23 F. App'x 292, 298 (6th Cir. 2001) (citing *Caribbean Broadcasting Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1091 (D.C. Cir. 1998)). This case is one of those "rare circumstances." *Id.* The Court's sanction — dismissal — would have no practical effect unless the case is dismissed with prejudice. Therefore, to effectuate its sanction, the Court believes it is necessary to dismiss Vaughan's case with prejudice.

---

5     The official transcript of the June 28, 2011 hearing has not yet been published.

-11-

**A - 19**

Case: 3:10-cv-00005-DCR-EBA   Doc #: 76   Filed: 07/05/11   Page: 12 of 12 - Page ID#: 735

**IV.**

Vaughan has acted in bad faith and has committed perjury.  The Court, through its inherent powers, will dismiss this action as a sanction for his contumacious conduct. Accordingly, it is hereby

**ORDERED** as follows:

1.      Plaintiff Michael Vaughan's action is **DISMISSED**, with prejudice, and **STRICKEN** from the Court's active docket.

2.      Plaintiff's pending motions [Record Nos. 74, 75] are **DENIED** as moot.

This 5th day of July, 2011.

Signed By:

_**Danny C. Reeves**_   DCR

**United States District Judge**

-12-

**A - 20**

**LTC DYLAN F. SEITZ (State Bar No. 84032)**
**United States Army**
**Kentucky Army National Guard**
**Office of the Staff Judge Advocate**
**100 Minuteman Pkwy**
**Frankfort, Kentucky 40601**
**Telephone: (502) 607-1456**

Eastern District of Kentucky
**FILED**

SEP - 9 2010

AT FRANKFORT
LESLIE G. WHITMER
CLERK: U.S. DISTRICT COURT

## United States District Court
## Eastern District of Kentucky
## (Frankfort Division)

|  |  |
|---|---|
| **Michael Dean Vaughan** <br> **(Plaintiff)** <br><br> v. <br><br> **Mary Elizabeth Brigham** <br> **(Defendant)** | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Civil Action No.: 3:10-cv-00005-DCR

**UNITED STATES ARMY'S MOTION TO
QUASH THIRD PARTY SUBPOENA *DUCES
TECUM* OR, IN THE ALTERNATIVE, FOR
A PROTECTIVE ORDER; [PROPOSED]
ORDER**

## NOTICE OF MOTION; MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT at a time and date to be set by the Court, Non-Party United States Army shall appear in the United States District Court, Eastern District of Kentucky (Frankfort Division), and shall move the court for an order quashing two third-party Subpoenas *Duces Tecum* to Colonel Rodney Hayes and Major James Richmond, Department of the Army civilian employees (Federal Technicians) and Kentucky Army National Guard Officers which were served on the Kentucky Army National Guard by Plaintiff Michael Dean Vaughan. In the alternative, The United State Army shall move the Court for a protective order prohibiting the

**A - 21**

taking of any deposition to a related Notice of 30(b)(6) Deposition ("Deposition Notice") served by Plaintiff on Colonel Rodney Hayes and Major James Richmond.   This motion shall be made pursuant to Rule 26(c) and Rule 45(c)(3)(A) of the Federal Rules of Civil Procedure.  In support of its motion The United States Army submits the Memorandum of Points and Authorities below, Department of the Army Report of Proceedings by Investigative Officer/Board of Officers, and attached [proposed] Order.

## RELIEF SOUGHT

The United States Army moves the Court for an order quashing the Subpoena insofar as it purports to require deposition testimony or, in the alternative, for a protective order prohibiting the taking of any deposition testimony pursuant to the Subpoena.   The United States Army also moves the Court for a protective order prohibiting the taking of any deposition testimony pursuant to the Deposition Notice.

## I.      INTRODUCTION AND STATEMENT OF FACTS

Plaintiff Michael Dean Vaughan is a commissioned officer in the Kentucky Army National Guard serving as a traditional M-day (part-time) officer.   Prior to the commencement of this action, Lieutenant Vaughn was also employed by Ram Systems Inc, an independent civilian contractor performing information technology services for the Kentucky National Guard.   In August of 2009, Defendant Mary Elizabeth Brigham contacted the Colonel Rodney Hayes, Kentucky National

2

**A - 22**

Guard J-6 Deputy Chief of Staff (LT Vaughn's civilian supervisor) in an effort to have action taken against Lieutenant Vaughan for conduct tantamount to harassment, intimidation, stalking, defamation and intentional infliction of emotional distress.   In support of these allegations, Ms. Brigham provided evidence in the form e-mail messages and photographs which substantiated her allegations.  Colonel Hayes investigated the matter to confirm the veracity of Ms. Bingham's claims and then spoke to Lieutenant Vaughn about the allegations.  After speaking with Lieutenant Vaughn about the allegations and convinced that Lieutenant Vaughn had in fact engaged in the conduct of which he was accused, Colonel Hayes contacted Ram Systems Inc and informed them that Lieutenant Vaughn's services would no longer be needed.  Lieutenant Vaughn then filed suit in the United States District Court against Defendant Mary Elizabeth Brigham in February 2010 alleging Defamation, False Light and Intentional Infliction of Emotional Distress.

The genesis of this entire matter begins in 2005 when Lieutenant Vaughn met Ms. Brigham at an out-of-state military education course (First Responders Course).  Lieutenant Vaughn and Ms. Brigham began corresponding via e-mail and through internet chat rooms (Ms. Brigham lives in Washington State and Lieutenant Vaughn lives in Kentucky).   A sexual relationship then developed whereby Lieutenant Vaughn would visit Ms. Brigham in Washington.  During these visits, Lieutenant Vaughn took pornographic pictures of himself and Ms. Bingham having sexual relations. In August of 2009, Ms. Brigham attempted to end her relationship with Lieutenant Vaughn when, in the course of a disagreement over a custody issue facing Ms. Brigham, she found out he was married.  However, Lieutenant Vaughn would not allow the relationship to end and began threatening Ms. Brigham if she attempted to end the relationship.  Lieutenant Vaughn specifically threatened to send the pornographic pictures he took of her to her family, friends, employer and

3

**A - 23**

coworkers.   He also threatened to post the pornographic photos on the internet to include her Myspace and Facebook pages.   When Ms. Bingham did not respond, Lieutenant Vaughn carried through with these threats by utilizing a proxy server (to disguise his identity) to post the photos on the internet and send e-mails containing these pornographic pictures to Ms. Bingham's family, friends, employer and coworkers.   In response, Ms. Bingham contact local law enforcement to get a restraining order against Lieutenant Vaughn and to assist her in removing these postings on the internet.   At this time, the Thurston County Sheriff's Office (Olympia, Washington) has an open investigation on Lieutenant Vaughn (Case #09-5046) for the crimes of Felony Harassment / DV, Cyber Stalking / DV and Identity Fraud.

In addition to informing Lieutenant Vaughn's employer that his services would no longer be needed, the Kentucky National Guard also launched an official investigation into the matter to determine whether action should be taken against Lieutenant Vaughn in his military capacity for military specific crimes to include Conduct Unbecoming an Officer.   Lieutenant Colonel Jerry Morrison, Lieutenant Vaughn's Battalion Commander, appointed Major James Richmond to conduct an investigation into the allegations under the provisions of Army Regulation 15-6.   Major Richmond investigated the allegations and produced a Report of Investigation (Incl) in which he substantiated the allegations made by Mary Elizabeth Brigham against Michael Dean Vaughn. Based upon the findings of this investigation, the Kentucky National Guard is now initiating action to remove Lieutenant Vaughn's Federal Recognition as an officer and to separate him from the Kentucky National Guard.

**A - 24**

Lieutenant Vaughn was provided a copy of the investigation report prepared by Major James Richmond. This investigation report contains the evidence Lieutenant Vaughn purports to seek by way of subpoena. When Lieutenant Vaughn was handed a copy of the investigation report, he explicitly and unequivocally stated his intention to sue Colonel Hayes in his personal capacity for the loss of his civilian job.

## II. DEFENSES AND ARGUMENT

ALL ACTIONS TAKEN WITHIN SCOPE OF EMPLOYMENT

Plaintiff Lieutenant Michael Vaughn attempted to serve Colonel Rodney Hayes and Major James Richmond with subpoenas directing them to produce documents and provide information belonging to the Kentucky National Guard. The subpoenas were received by counsel for the Kentucky National Guard who informed Colonel Hayes and Major Richmond that they were not at liberty to provide documents and information belonging to the Kentucky National Guard absent a directive by the Secretary of the Army or a court order signed by a judge of competent jurisdiction. Colonel Hayes and Major Richmond were directed not to respond to the subpoenas nor provide any documentation sought in the subpoenas. Colonel Hayes and Major Richmond were, with regard to all matters concerning this litigation, acting in their official capacity as officers in the Kentucky National Guard. All actions taken and all work product produced by Colonel Hayes and Major Richmond where conducted and produced in the course of their official duty and are therefore the exclusive property and under the exclusive control of the United States (through the Kentucky National Guard). Plaintiff Lieutenant Vaughn was informed early in this process that the

5

**A - 25**

information he sought belonged to the United States Army and Kentucky National Guard and that any subpoena or request for deposition should be directed to those entities.

SUBPOENA IS OVERBROAD

Plaintiff Lieutenant Michael Vaughn seeks to obtain documents and information that is privileged and protected. In his subpoena, Lieutenant Vaughn seeks to obtain the agency's internal memoranda as well as communications protected by the attorney-client privilege. Te Kentucky National Guard has been working with the Thurston County Sheriff's Office (Olympia, Washington) which has Michael Vaughn listed as a suspect in an open criminal investigation for offenses against Mary Brigham to include Felony Harassment / DV, Cyber Stalking / DV and Identity Fraud. Further, the Kentucky National Guard has documents and information protected by the attorney-client privilege which relate to ongoing disciplinary actions against Lieutenant Vaughn.

SUBPOENA SOUGHT FOR IMPROPER PURPOSE -- Discovery for further lawsuits

Plaintiff Lieutenant Michael Vaughn seeks to obtain discovery which would otherwise be unavailable for the purpose of pursuing a lawsuit against Colonel Rodney Hayes and others in the Kentucky National Guard for actions that may have contributed to or resulted in the loss of his civilian employment. Lieutenant Vaughn has already stated his intention of suing Colonel Hayes in his personal capacity. It is reasonable to believe that he may pursue similar actions against other individuals in the Kentucky National Guard based on the information he seeks to obtain by these subpoenas and depositions.

6

**A - 26**

SUBPOENA SOUGHT FOR IMPROPER PURPOSE -- Harassment of superior officers

Plaintiff Lieutenant Michael Vaughn seeks to utilize the deposition process for the purpose of harassing and belittling officers in the Kentucky National Guard whom he feels has wronged him in the course of their official actions. As a Lieutenant in the Kentucky National Guard, Michael Vaughn must render proper respect and traditional military courtesies when addressing superior officers such Colonel Hayes and Major Richmond. Lieutenant Vaughn has expressed great anger and resentment toward these officers but is constrained by law from displaying any discourtesy or insubordination. By seeking to personally depose these officers (in his pro se capacity), Lieutenant Vaughn intends to utilized an opportunity to "turn the tables" on these individuals by making them answer to him. By doing so, he seeks an opportunity to belittling them and inconveniencing by subjecting them to his demands.

PLAINTIFF POSSESSES RELEVANT INFORMATION SOUGHT BY SUBPOENA

Plaintiff Lieutenant Michael Vaughn has been provided with a copy of the investigation report which substantiates the facts he seeks to establish in his lawsuit against Mary Brigham. The investigation report contains the evidence necessary to establish the fact that Mary Brigham contacted the Kentucky National Guard and relayed derogatory information about Lieutenant Vaughn. Further, it details the allegations she made against Lieutenant Vaughn and contains the evidence she provided to the Kentucky National Guard in support of her claim. As Lieutenant

7

**A - 27**

Case: 3:10-cv-00005-DCR-EBA Doc #: 35 Filed: 09/09/10 Page: 8 of 9 - Page ID#: 251

Vaughn is already in possession of the evidence relevant to his suit against Mary Brigham, the subpoena serves no legitimate purpose.

UNDERLYING LAWSUIT A FRAUD UPON THE COURT

Plaintiff Lieutenant Michael Vaughn's suit against Ms. Mary Brigham is premised on the following assumptions. That she, not Lieutenant Vaughn, sent pornographic pictures of herself to friends, relatives, her employer and her coworkers and that she posted these pornographic pictures of herself on the internet. Further that she did so for the sole purpose of contacting local law enforcement and the Kentucky National Guard to make false reports against Lieutenant Vaughn. When Mary Brigham, a young single mother with little income, received notice of the lawsuit filed against her by Lieutenant Vaughn, she went to the local legal aid society in Olympia, Washington to seek assistance. The local legal aid society explained that they did not have the qualifications or expertise to handle an out-of-state lawsuit filed in Federal Court. Ms. Brigham then sought the advice of an attorney who told her that due to fact she had never been to Kentucky, had no business in Kentucky and had no ties to Kentucky, that the minimal contact necessary to establish jurisdiction was insufficient. This was obviously bad advice which may result in a default judgment against her. While the United States and Kentucky National Guard can not assist Ms. Bingham in her representation before this court, the fraud which Lieutenant Vaughn is perpetrating upon this court is now impacting the United States and Kentucky National Guard. For that reason, the United States and the Kentucky National Guard seeks the opportunity to address the underlying cause of action which forms the basis and rationale for these subpoenas.

**A - 28**

### III. CONCLUSION AND RELIEF SOUGHT

For all of the foregoing reasons, the United States Army (through the Kentucky National Guard) respectfully requests the following relief:

That Colonel Rodney Hayes and Major James B Richmond not be found in contempt of court for failing to respond to the subpoenas and notice of depositions seeking to obtain information belonging to the United States and Kentucky National Guard.

That the Court order the subpoena to be quashed or, in the alternative, that the Court issue a protective order prohibiting the discovery sought pursuant to the Subpoena. Further, if the court finds that the information sought by the Plaintiff is relevant and subject to discovery, the United States Army / Kentucky National Guard requests that it be allowed to submit the documents directly to the court for in camera review.

Respectfully submitted,
BY:

Dylan F. Seitz
Lieutenant Colonel, Judge Advocate General's Corps
Kentucky Army National Guard
100 Minuteman Parkway
Frankfort, Kentucky 40601
(502) 607-1456

**A - 29**

Eastern District of Kentucky
FILED

AUG - 8 2011

AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

**United States District Court**
**Eastern District of Kentucky**
**(Frankfort Division)**

Michael Dean Vaughan,

    Plaintiff,

    vs.

Mary Elizabeth Brigham

    Defendant

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 3:10-CV-5-DCR

Judge: Danny C. Reeves
Magistrate: Edward B. Atkins

## <u>NOTICE OF APPEAL</u>

Notice is hereby given that Michael Dean Vaughan, Plaintiff in the above named case, hereby appeals to the United States Court of Appeals for the Sixth Circuit from the final Judgment (Doc. 77) entered in this action on the 5th day of July 2011.

**Respectfully submitted**

Dated this 8th day of August, 2011

MICHAEL DEAN VAUGHAN
PLAINTIFF (PRO SE)
9681 CLOVERIDGE DR.
INDEPENDENCE, KY 41051
(859) 628-8449

**A - 30**

## CERTIFICATE OF SERVICE

**UNDER PENALTY OF PERJURY, I CERTIFY** that a true and accurate copy of the foregoing <u>Notice</u> <u>of Appeal</u>, was provided by U.S. Mail on this 8th day of August 2011, to the following:

David E. Middleton
U.S. Attorney's Office, EDKY
260 W. Vine Street
Suite 300
Lexington, KY 40507-1612

Kentucky Army National Guard
Office of the Staff Judge Advocate
LTC Dylan Seitz
100 Minuteman Parkway
Frankfort, KY 40601

Mary Kounovsky (Mary Elizabeth Brigham)
3800 Ensign Rd. Apt. A5
Olympia, W A. 98506

MICHAEL VAUGHAN
PLAINTIFF (PRO SE)
9681 Cloveridge Dr.
Independence, KY 41051
(859) 628-8449

**STATE OF OHIO** )
) SS:
**COUNTY OF HAMILTON** )

BEFORE ME personally appeared **Michael Dean Vaughan** who, being first duly sworn and identified in accordance with Ohio law, did execute the foregoing in my presence this _____ day of _____, 2011.

TINA M. GALLIMORE
NOTARY PUBLIC, STATE OF OHIO
MY COMMISSION EXPIRES 6/5/16

My Commission Expires _6/5/16_

Notary Public _____

**A - 31**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| MICHAEL DEAN VAUGHAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3: 10-05-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MARY ELIZABETH BRIGHAM, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

*** *** *** ***

This matter is before the Court for review of Plaintiff Michael Vaughan's Motion for Reconsideration. [Record No. 78] In short, Vaughan's current motion perfectly exemplifies the point the Court made in its previous Memorandum Opinion and Order. [*See* Record No. 76] Despite Vaughan's beliefs, this case is *not* a referendum on the Kentucky National Guard's investigation into his alleged harassment. Yet, Vaughan's motion repeatedly argues that this Court has failed to consider such items as: whether the Guard has jurisdiction to "make a determination of 'guilt or innocence'" [Record No. 78, p. 4], whether the Guard's investigation followed proper military protocol [*id.*], and whether the Guard properly disclosed records of its investigation [*id.*, pp. 8–11]. Such considerations are not relevant to this case. Vaughan's behavior — attempting to use this suit to collaterally attack his Guard disciplinary proceedings — is precisely what led the Court to conclude he was using this case for improper purposes.

The Court dismissed Vaughan's case for two reasons: (1) as mentioned, his conduct revealed that he had filed this case in bad faith and for an improper purpose; and (2) he

-1-

**A - 32**

committed perjury. [*See* Record No. 76] Vaughan's motion for reconsideration, in addition to exemplifying the first conclusion, does not alter the second. Vaughan argues that he has been asserting the same claim, which the Court found to be perjury, since 2009. [Record No. 78, p. 2] However, a lie oft repeated is no less a lie.

Vaughan also continues to argue that he was, in fact, coerced. However, Vaughan's argument is misguided. The Court first asked Vaughan about his sworn statement at the September 28, 2010 hearing. [*See* Record No. 47] Immediately, Vaughan indicated that the statement was unreliable because he was on narcotics at the time of giving it. [*Id.*, p. 15] However, after walking Vaughan through the statement, he admitted that the overwhelming majority of the statement was true. [*Id.*, pp. 16–26] At that time, the Court was dubious that Vaughan could have provided remarkably accurate factual detail, but that a single line of the statement was influenced by narcotics. [*Id.*, p. 26 ("So you're able to provide all of this other information in this statement that you affirm was true, but this one section you say was not true because you were out of your mind because you were on some type of medication.")] In response, Vaughan indicated that he had been "coached" and "coerced" into making the false statement. [*Id.*] Vaughan now argues that he was ordered by a commanding officer to provide a statement, and thus, his statement was coerced. However, even if the Court believed Vaughan's current assertions, its opinion would not change. There is a vast difference between being ordered to provide *a* statement and being coerced into providing a *false* statement. At the September 28, 2010 hearing, Vaughan stated that he was coerced into providing *false*

**A - 33**

information. The Court found that statement to be perjury, and nothing Vaughan has argued in his present motion changes the Court's conclusion.

Motions to reconsider are not "designed to give an unhappy litigant an opportunity to relitigate matters already decided." *Davison v. Roadway Express, Inc.*, 562 F. Supp. 2d 971, 985 (N.D. Ohio 2008). Although Vaughan disagrees with the Court's ruling, it is more appropriate for him to challenge the findings by means of appeal, rather than rehearsing the same arguments in a motion to reconsider. Vaughan has not demonstrated a clear error of law in the Court's previous ruling. *See Moore v. Coffee Cnty.*, 402 F. App'x 107, 108 (6th Cir. 2010). Any new evidence he may have submitted is irrelevant to the Court's findings.[1] Vaughan has failed to make a case for relief under Rule 59. Accordingly, it is hereby

**ORDERED** as follows:

1. Plaintiff Michael Vaughan's Motion for Reconsideration [Record No. 78] is **DENIED**.

2. Vaughan's Emergency Ex Parte Motion [Record No. 79] is **DENIED**.

This 15th day of July, 2011.



Signed By:
*Danny C. Reeves*
United States District Judge

---

1   On July 14, 2011, Vaughan filed an "Emergency" Motion asking the Court to issue a subpoena to the Kentucky National Guard for an official copy of the transcript of his Guard disciplinary hearing. [Record No. 79] As previously explained, the Guard's disciplinary process and findings are irrelevant to Vaughan's behavior in this Court and the findings that predicated the Court's dismissal of his case. Thus, Vaughan's emergency motion for a subpoena does not establish new evidence sufficient to cause the Court to reconsider its previous decision.

**A - 34**

Case No. 12-6570

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

## ORDER

MICHAEL DEAN VAUGHAN

      Plaintiff - Appellant

v.

RODNEY HAYES; UNITED STATES OF AMERICA

      Defendants - Appellees

 

Appellant having previously been advised that failure to satisfy certain specified obligations would result in dismissal of the case for want of prosecution and it appearing that the appellant has failed to satisfy the following obligation(s):

The Appellant's Brief was not filed by January 30, 2013.

It is therefore **ORDERED** that this cause be, and it hereby is, dismissed for want of prosecution.

**ENTERED PURSUANT TO RULE 45(a),
RULES OF THE SIXTH CIRCUIT**
Deborah S. Hunt, Clerk

Issued: February 14, 2013

**A - 35**

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

| | 100 EAST FIFTH STREET, ROOM 540 | |
|---|---|---|
| Deborah S. Hunt | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: February 14, 2013

Mr. Michael Dean Vaughan
2010 Scott Boulevard
Covington, KY 41014

     Re:  Case No. 12-6570, *Michael Vaughan v. Rodney Hayes, et al*
        Originating Case No. : 3:10-cv-00054

Dear Mr. Vaughan,

  The Court issued the enclosed (Order/Opinion) today in this case.

          Sincerely yours,

          s/Roy G. Ford
          Case Manager
          Direct Dial No. 513-564-7016

cc:  Mr. Robert R. Carr
   Mr. David E. Middleton
   Mr. Charles P. Wisdom Jr.

Enclosure

No mandate to issue

**A - 36**

Case: 3:10-cv-00054-DCR   Doc #: 53   Filed: 12/05/12   Page: 1 of 8 - Page ID#: 608

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| MICHAEL DEAN VAUGHAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3: 10-54-DCR |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On March 23, 2012, the United States moved to substitute itself as a party for Defendant Colonel Rodney Hayes.  [Record No. 18]  The Court granted the United States' motion and substituted the United States for Hayes on October 18, 2012.  [Record No. 45]  The matter is now pending for consideration of Defendant United States' motion to dismiss for lack of jurisdiction.  [Record No. 19]  The United States argues that this matter should be dismissed because: (1) Vaughan failed to exhaust his administrative remedies under the Federal Tort Claims Act ("FTCA"); (2) the FTCA's limited grant of jurisdiction expressly does not waive sovereign immunity for the intentional torts of libel and slander; and (3) the claims arises out of Vaughan's military service and, therefore, are barred by the doctrine of intra-military immunity. [Record No. 19-1, p. 1]  For the reasons discussed below, the Court will grant the United States' motion.

-1-

**A - 37**

Case: 3:15-cv-00006-GFVT   Doc #: 22-3   Filed: 09/18/15   Page: 40 of 136 - Page
Case: 3:10-cv-00054-DCR   Doc #: 53   Filed: 12/05/12   Page: 2 of 3 - Page ID#: 609
ID#: 261

## I.

This action, as well as several others, arises out of an investigation regarding Michael Vaughan conducted by the Kentucky National Guard.[1]  The complaint concerns two incidents regarding the investigation:  (1) a meeting held by Colonel Rodney Hayes on August 18, 2009; and (2) a hearing regarding Vaughan's "federal recognition" held on July 9, 2011.  [*See* Record No. 16.]  In his First Amended Complaint, Vaughan alleges that he was called into a meeting by Hayes regarding allegations made by Mary Kounovsky/Brigham ("Brigham").[2]  [*Id.*, p. 1] Vaughan alleges that, at this meeting, he was advised of a complaint made by Brigham, and that Hayes had determined that Vaughan:

    a.  posted pornographic material purporting to be of Brigham on the Internet,

    b.  contacted 'peers within [Brigham's] workplace in order to harass [her],'

    c.  created separate online personas in order to harass [Brigham],

    d.  engaged in an extramarital sexual relationship with [Brigham].

[*Id.*, p. 2]  Vaughan alleges that Colonel Hayes "made these statements of fact in the presence of a number of individuals at this meeting."  [*Id.*]  Vaughan alleges that, as a result of this meeting and Hayes' statements, he has "sustained deprivations to his civil rights, suffered and will continue to suffer from mental distress with resulting physical manifestations, humiliation, embarrassment, and defamation of his character and reputation."  [*Id.*]

---

[1]This action is closely related to several other cases brought by Vaughan.  *See* Civil Action Nos. 2: 12-53, 3: 10-05, 3: 10-54, 3: 12-33, 3: 12-34-DCR, 3: 12-35-DCR.

[2]A more complete statement of the facts of this case can be found in the Memorandum Opinion and Order entered October 18, 2012.  [*See* Record No. 45]

The other incident alleged in the complaint is a Withdrawal of Federal Recognition Board hearing ("Board hearing") that occurred on July 9, 2011. Vaughan alleges that Hayes testified during the Board hearing that he "conducted a detailed forensic investigation surrounding allegations" made by Brigham. [*Id.*] Vaughan further alleges that Hayes "advised the board that the investigation[']s results determined that no evidence existed that corroborated any of [Brigham's] allegations though [Hayes] publicly stated he still believed that [Vaughan] had engaged in the alleged activities." [*Id.*] Vaughan also claims that Hayes stated that his office had not been in contact with anyone in the Thurston County Sheriff's office since August of 2009. [*Id.*]

Based on these incidents and statements, Vaughan filed this cause of action against Colonel Hayes alleging Defamation, Slander, and Libel; Invasion of Privacy; False Light; and Intentional Infliction of Emotional Distress/Outrage. Vaughan requests $1,000,000 in compensatory damages, punitive damages, an injunction against the United States from publishing any more statements regarding the investigation, and an "order to third parties where the Defendant has published his defamatory statements that all such material is stricken from any records either on or off the internet." [Record No. 16, p. 5] After the complaint was filed, the United States moved to substitute itself as a party for Hayes, arguing that Hayes was acting within the scope of his employment during the incidents in question. [Record No. 18] By Memorandum Opinion and Order dated October 18, 2012, the Court held that Hayes was acting within the scope of his employment and substituted the United States as the Defendant.

**A - 39**

Case: 3:10-cv-00054-DCR   Doc #: 53-2   Filed: 12/05/12   Page: 4 of 8 - Page ID#: 631

## II.

Federal courts are courts of limited jurisdiction and possess "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). Once jurisdiction is challenged under Rule 12(b)(1) of the Federal Rules of Civil Procedure, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal citation omitted). The plaintiff has the burden of establishing subject matter jurisdiction to survive the defendant's Rule 12(b)(1) motion to dismiss. *Giesse v. Sec'y of Dept. Of Health and Human Services*, 522 F.3d 697, 702 (6th Cir. 2008).

## III.

The United States has moved to dismiss Vaughan's First Amended Complaint for lack of jurisdiction, arguing that his claims are barred by the FTCA, sovereign immunity, and intra-military immunity. Although the Court finds that Vaughan's claims are barred by his failure to exhaust his administrative claims, the Court will also address the United States' claims of sovereign immunity under the FTCA.

1.      Failure to Exhaust Administrative Remedies

The United States argues that Vaughan's claim should be dismissed due to his failure to exhaust his administrative remedies as required by the FTCA. Tort claims against federal employees can only be brought under the terms and conditions under the FTCA, which states

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government *while acting within the scope of his office or employment*, unless the claimant shall have

-4-

**A - 40**

first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a) (emphasis added). "Prior to filing a complaint under the FTCA, a plaintiff must exhaust administrative remedies." *Bumgardner v. United States*, 2012 WL 858647, *2 (6th Cir. 2012). The Sixth Circuit has held that this exhaustion requirement is jurisdictional. *Id.* (citing *Joelson v. United States*, 86 F.3d 1413, 1422 (6th Cir. 1996)). Therefore, if a plaintiff has failed to fulfill the administrative requirements of the FTCA, the case must be dismissed for lack of jurisdiction. *Dolan v. United States,* 514 F.3d 587, 592 (6th Cir. 2008).

The Court has previously determined that Hayes was acting within the scope of his employment during the events in issue. [*See* Record No. 45.] As a result, Vaughan's claims are actually claims under the FTCA and are subject to the administrative exhaustion requirements of the FTCA. *See Dolan*, 514 F.3d at 593 ("[I]f the defendant federal employee was acting in the scope of his or her employment, substitution of the United States as a defendant is appropriate and the district court 'must assess the plaintiff's claims pursuant to the [FTCA]'"). Vaughan does not show – or even attempt to show – that he has satisfied the exhaustion requirement of the FTCA. Instead, he admits that "[i]f Hayes acted intentionally and within the scope of his employment, then the substitution of the United States would mean immunity for both Hayes individually as well as the United States." [Record No. 26, pp. 2-3]

Additionally, Vaughan's failure to file an administrative claim to the appropriate governmental agency within two years of its accrual is to fatal his claim that arises out of events

**A - 41**

occurring on August 18, 2009.  *See* 28 U.S.C. § 2401(b) ("A tort claim against the United States

shall be forever barred unless it is presented in writing to the appropriate Federal agency within

two years after such claim accrues or unless action is begun within six months after the date of

mailing.").  The Board hearing occurred on July 9, 2011, less than two years ago.  However, the

meeting which led to Vaughan's firing occurred on August 18, 2009.  More than two years have

passed since that date; thus, this portion of his claim is "forever barred" because of his failure

to exhaust his administrative remedies.

      2.      <u>Sovereign and Intra-military Immunity</u>

The United States also contends that Vaughan's claims should be dismissed because the

FTCA provides only a limited sovereign immunity waiver that does not include the intentional

torts of libel and slander.  [Record No. 19-1, pp. 6-7]  In response, Vaughan agrees that the

"FTCA does not cover intentional torts of federal employees and the notice of substitution of the

United States was simply the logical precursor to the United States moving to dismiss the

intentional tort and punitive damage claims under the FTCA's protection of sovereign

immunity."  [Record No. 26, p. 3]

The FTCA provides a limited waiver of sovereign immunity from civil tort actions, with

certain exceptions.  *Chomic v. United States*, 377 F.3d 607, 609 (6th Cir. 2004).  Among those

exceptions are the intentional torts of libel and slander.  Thus, the statute expressly does not

waive sovereign immunity regarding such claims. The Act provides that 28 U.S.C. § 1346(b)

shall not apply to "[a]ny claim arising out of assault, battery, false imprisonment, false arrest,

malicious prosecution, abuse of process, *libel, slander*, misrepresentation, deceit, or interference

**A - 42**

with contract rights. . ." 28 U.S.C. § 2680(h) (emphasis added). Because Vaughan's claims arise out of the intentional torts of libel and slander, they are barred by the sovereign immunity of the United States. As a result, dismissal is also appropriate for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 2680(h).

Finally, the United States argues that Vaughan's claims should be dismissed because they are barred by the *Feres* Doctrine of intra-military immunity. The United States argues that the Board hearing held on July 9, 2011, was a military proceeding, because it was a "Board to Withdraw the Federal Recognition of 1LT Michael Vaughan [] that was conducted on July 9th, 2011." [Record No. 19-1, p. 7] Vaughan responds that "the Feres Doctrine is not applicable in this case as the actions alleged against the defendant did not occur when the plaintiff was in a military status nor were the allegations made by [Brigham] to the defendant related to any actions that would be justiciable by the KY Army National Guard." [Record No. 26, p. 6] However, inasmuch as the Court finds that this cause of action must be dismissed for the failure to exhaust administrative remedies and because of the United States' immunity from claims of libel and slander, the Court need not address whether Vaughan's claims arise "incident to Military Service." *See Feres v. United States,* 340 U.S. 135, 138 (1950); *see also Orloff v. Willoughby,* 345 U.S. 83, 93-94 (1953) ("Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.") Because deciding whether Vaughan's cause of action arises incident to his military service is not necessary to determine the viability of his claim, the Court declines to do so here.

-7-

**A - 43**

Case: 3:15-cv-00006-GFVT   Doc #: 22-3   Filed: 09/18/15   Page: 46 of 136 - Page
ID#: 267
Case: 3:10-cv-00054-DCR   Doc #: 53   Filed: 12/05/12   Page: 8 of 8 - Page ID#: 615

**IV.**

For the reasons discussed above, it is hereby

**ORDERED** that the United States' motion to dismiss [Record No. 19] is **GRANTED**.

This matter is **DISMISSED**, with prejudice, and stricken from the Court's docket.

This 5th day of December, 2012.

Signed By:

*Danny C. Reeves*   DCR

**United States District Judge**

**A - 44**

Case: 3:10-cv-00054-DCR   Doc #: 54   Filed: 12/05/12   Page: 1 of 1 - Page ID#: 316

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| MICHAEL DEAN VAUGHAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3: 10-54-DCR |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | **JUDGMENT** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

In accordance with the Memorandum Opinion and Order entered this date, and pursuant to Rule 58 of the Federal Rules of Civil Procedure, it is hereby

**ORDERED** and **ADJUDGED** as follows:

(1)     Judgment is entered in favor of Defendant United States of America with respect to all issues raised herein.

(2)     This action is **DISMISSED** and **STRICKEN** from the Court's docket. Likewise, all claims asserted in this action by Plaintiff Michael Dean Vaughan are **DISMISSED**, with prejudice.

(3)     This is a **FINAL** and **APPEALABLE** Judgment and there is no just cause for delay.

This 5th day of December, 2011.



Signed By:
*Danny C. Reeves* DCR
**United States District Judge**

-1-

**A - 45**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| MICHAEL DEAN VAUGHAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3: 12-33-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| KY ARMY NATIONAL GUARD, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is one in a series of suits filed by Plaintiff Michael Dean Vaughan concerning actions taken against him while a member of the Kentucky Army National Guard. This case was filed on March 5, 2012, in the United States District Court for the District of Columbia. [Record No. 1] The Kentucky Army National Guard and the United States Department of the Army are named as defendants. Vaughan's First Amended Complaint includes two counts for relief alleging violations of certain provisions of the Privacy Act. Because the defendants' use of records in litigation is permissible under the Privacy Act, Vaughan's claims will be dismissed.

**I.**

It is necessary to summarize Vaughan's other civil actions to put this matter in proper context.

A.  *Michael Dean Vaughan v. Mary Elizabeth Brigham, et al.*, U.S. Dist. Ct., E.D. Ky., Central Div. at Frankfort, Civil Action No. 3: 10-005-DCR (filed February 16, 2010)

-1-

**A - 46**

In this original action, Vaughan contended that Brigham had improperly contacted individuals with the Kentucky National Guard to accuse him of: (i) posting pornographic materials purporting to be Brigham on the internet; (ii) contacted "peers" within Brigham's workplace to harass her; and (iii) creating an online "persona" to harass Brigham. Based on these factual allegations, Vaughan asserted claims of defamation, false light and intentional infliction of emotional distress. Following a hearing on several motions held on September 10, 2010, the Court denied various items of relief requested by Vaughan. The matter was then held in abeyance for six months to allow the Federal Bureau of Investigation to determine whether Vaughan had committed criminal acts related to the litigation. [Civil Action No. 3: 10-005-DCR; Record No. 45]

More motions followed, with an evidentiary hearing held on June 28, 2011. By Memorandum Opinion and Order filed on July 5, 2011, the Court dismissed the action because Vaughan had acted in bad faith and committed perjury. In relevant part, the Court noted:

> Vaughan was warned that perjury would have serious consequences. The Court verbally warned Vaughan before he provided any testimony in this case that false testimony would carry "serious penalties." Further, the Court provided Vaughan written notice, before the second hearing, that if he were found to have committed perjury, he would be subject to sanctions. Vaughan, therefore, was adequately warned that his continued reliance on his false statements and representations would have consequences.
>
> Finally, considering Vaughan's conduct throughout this proceeding, the Court is convinced that no other sanction would appropriately deter the kind of conduct Vaughan has exhibited in this case. *See Eppes v. H.E. Snowden*, 656 F. Supp. 1267 (E.D. Ky. 1986) ("The remedy must serve as a deterrent to the defendant and all other that might be similarly tempted to [provide false testimony] . . . [and] must be sufficient to serve universal notice that this conduct will not be tolerated."). The Court has considered other sanctions, but finds that nothing short of dismissal would sufficiently make clear to Vaughan that his conduct will

-2-

**A - 47**

not be tolerated.  [*See* June 28, 2011 Tr. ("I find that this defendant has presented false and perjured testimony to me, he doesn't seem to understand the significance of that, he doesn't seem to understand that he's lost on several motions that he's filed, that he keeps coming back with the same arguments that are unsuccessful. In short, I don't know that there's any other sanction that would be appropriate other than dismissal of this case.")]  Perjury will not be tolerated.  And using the federal court as a means for retaliation, harassment, and the fulfillment of personal vendettas will likewise not be tolerated.  Vaughan has acted in bad faith and he has abused the litigation process.  Under the circumstances, the only appropriate remedy is outright dismissal of his action.

(footnotes and internal citations omitted) [*Id.*; Record No. 76]

This dismissal was affirmed by the United States Court of Appeals for the Sixth Circuit on May 9, 2012. [*Id.*; Record No. 87]

> **B.**  ***Michael Dean Vaughan v. Rodney Hayes, et al.,* U.S. Dist. Ct., E.D. Ky., Central Div. at Frankfort, Civil Action No. 3: 10-054-DCR (filed August 16, 2010)**

Further angered by actions occurring in Civil Action No. 3: 10-005-DCR, on August 6, 2010, Vaughan sued Rodney Hayes, an officer with the Kentucky National Guard.  In his official capacity as the Chief Information Officer for the Kentucky National Guard, Hayes[1] was involved in investigating Brigham's claims against Vaughan.  Hayes also held the position as military staff officer in charge of communications and computers in a joint command involving both army and air force elements.  Thus, he was responsible for all aspects of the Kentucky National Guard's computer systems.  Hayes duties included exercising supervisory personnel management responsibilities.  This required Hayes to initiate action to correct performance or conduct

---

[1]  On October 18, 2012, the Court sustained the Attorney General's motion to substitute the United States as a party defendant in place of Hayes in accordance with 28 U.S.C. § 2679. [Civil Action No. 3: 10-054-DCR; Record No. 45]

-3-

**A - 48**

problems of employees directly supervised and reviews and/or approval of serious disciplinary actions involving non-supervisory subordinates such as Vaughan.

According to Vaughan, Hayes stated at a meeting on August 18, 2009 in which others were present, that he had conducted an investigation of Brigham's assertions and determined that they were correct. Vaughan contends that he was not allowed to rebut Brigham's allegedly defamatory statements. Vaughan sought both injunctive and monetary relief based upon claims of: defamation, slander and libel (Count One); invasion of privacy (Count Two); false light (Count Three); and intentional infliction of emotional distress (Count Four). [*Id.*; Record No. 3][2]

This action was dismissed in accordance with the Memorandum Opinion and Order entered on December 5, 2012. [*Id.*; Record No. 53] The Court dismissed the claims asserted in this action due to Vaughan's failure to exhaust his administrative remedies under the Federal Tort Claims Act and based upon the government's assertion of sovereign immunity. The Court did not reach the United States' argument that the claims should also be dismissed under the *Feres* doctrine of intra-military immunity.

Again, Vaughan appealed the Court's dismissal of his action. This appeal was dismissed on February 14, 2013 for failure to prosecute.

C. ***Michael Dean Vaughan v. Ky. National Guard Bureau, et al.*, U.S. Dist. Ct., E.D. Ky., Central Div. at Frankfort, Civil Action No. 3: 12-034-DCR (filed March 26, 2012)**

---

[2] Vaughan filed an Amended Complaint in this civil action on March 13, 2012. [*Id.*; Record No. 16]

-4-

Vaughan filed a third action in the United States District Court for the District of Columbia, alleging violations of the Privacy Act and the Freedom of Information Act. Additionally, Vaughan sought a declaratory judgment. In relevant part, Vaughan claimed that, in moving to quash subpoenas issued in Civil Action No. 3: 10-005-DCR, Defendants National Guard Bureau and the Kentucky Army National Guard violated the above-referenced acts by failing to comply with statutory deadlines (Count One), and by denying him access to certain records relating to the investigation of his conduct (Count Two). After receiving copies of the documents in issue in the litigation, Vaughan moved to dismiss the action with prejudice. [Civil Action No. 3: 12-34-DCR; Record No. 16] That motion was granted on August 24, 2012. [*Id.*; Record No. 17]

**D.** ***Michael Dean Vaughan v. Ky. Army National Guard, et al.,* U.S. Dist. Ct., E.D. Ky., Central Div. at Frankfort, Civil Action No. 3: 12-035-DCR (filed May 2, 2012)**

On March 5, 2012, Vaughan filed a separate action in the United States District Court for the District of Columbia alleging violations of 42 U.S.C. § 1983 by the Kentucky Army National Guard and the United States Department of the Army. [Civil Action No. 3: 12-035-DCR; Record No. 35] The matter was transferred to this district on May 29, 2012. [*Id.*; Record No. 6] Through this action, Vaughan asserted claims of equitable estoppel and laches (Count One); violations of the Fifth and Fourteenth Amendments to the United States Constitution (Count Two); and violations of the Administrative Procedure Act (Count Three). Vaughan's claims were based on allegations that the defendants improperly: (i) produced the report of its investigation of him in violation of Army regulations; (ii) issued a letter of reprimand to

**A - 50**

Vaughan; (iii) issued a "relief-for-cause" Officer Evaluation Report; (iv) suspended Vaughan's military clearance; and (v) held a Withdrawal of Federal Recognition Hearing.

On January 18, 2013, the Court granted the defendant's motion to dismiss the action. As outlined in the Court's Memorandum Opinion and Order, the Court determined that Vaughan failed to exhaust his administrative remedies regarding three issues raised in his pleadings (*i.e.*, the AR15-6 report, the Letter of Reprimand, and the Officer Evaluation Report). [*Id.*; Record No. 37] Additionally, the Court concluded that the AR 15-6 Report did not constitute final agency action subject to review under the Administrative Procedures Act. Likewise, the Letter of Reprimand was temporary in nature and did not constitute final administrative action. And while the Officer Evaluation Report constituted final agency action, it fell within the purview of military immunity not subject to review. Further, Vaughan's challenge regarding the suspension of his security clearance and the withdrawal of federal recognition hearing did not constitute final agency action and, therefore, was not ripe for review. Vaughan did not appeal following entry of judgment in this case.

**E.     Vaughan's Remaining Civil Action**

On March 5, 2012, Vaughan filed this action with the United States District Court for the District of Columbia. Like his two other out-of-district cases, this matter was transferred to this district and assigned to the undersigned on May 29, 2012. [Civil Action No. 3: 12-033-DCR; Record No. 7] Initially, Vaughan asserted claims against John HcHugh of the United States Department of the Army and Kentucky Army National Guard Major General Edward W. Tonini. [*Id.*; Record No. 1] However, on March 14, 2012, Vaughan filed an Amended Complaint that

substituted the United States Department of the Army and the Kentucky Army National Guard as defendants. In this action, Vaughan contended that the defendants violated his rights under the Privacy Act by disseminating records relating to the Bingham investigation without providing him an opportunity to rebut the statements he asserts were false and malicious.

On February 26, 2013, the defendants moved the Court to dismiss the claims asserted in this action. As outlined more fully below, the defendants' motion is based on the assertion that, under the facts presented, the defendants' actions do not constitute violations of the Privacy Act. Vaughan has not filed a response to the motion to dismiss.

## II.

When evaluating a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, although the complaint need not contain "detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and alteration omitted).

**A - 52**

**III.**

The defendants contend that they have not violated the Privacy Act because the records

in issue were properly turned over to the Justice Department and that department may file such

records in court proceedings where the records in issue are relevant to the matters being litigated.

And, they assert, that is exactly what happened here. Because Vaughan filed an action in which

he sought to put in the public record assertions that Brigham had told the Kentucky National

Guard: (i) he harassed her; (ii) Brigham had threatened disclosure of pornographic material; and

(iii) Brigham had released the subject material, it was necessary to provide relevant documents

to the Court. The defendants are correct in their arguments. Therefore, their motion will be

granted.

The parts of the Privacy Act which are relevant to this action provide:

**(a) Definitions.**–For purposes of this section– . . .

    **(4)** the term "record" means any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identity number, symbol, or other identifying particular assigned to the individual; . . .

**(b) Conditions of disclosure.**–No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be– . . .

    **(3)** for a routine use as defined in subsection (a)(7) of this section and described under subsection (e)(4)(D) of this section; . . .

    **(11)** pursuant to the order of a court of competent jurisdiction; . . .

5 U.S.C. § 552a.

-8-

**A - 53**

The defendants concede that the documents that are the subject of this action constitute "records" covered by the Privacy Act. However, applicable regulations establish that the subject records may be disclosed for use in litigation and that such disclosure constitutes "routine use" which is not prohibited. As noted in the defendants' motion, Appendix C to Part 310 of Title 32 of the Code of Federal Regulations lists routine uses of documents maintained by the Department of Defense and subject to the Privacy Act. Paragraph I of Appendix C states:

> ROUTINE USE – DISCLOSURE TO THE DEPARTMENT OF JUSTICE FOR LITIGATION   A record from a system of records maintained by a Component [of the Department of Defense] may be disclosed as a routine use to any component of the Department of Justice for the purpose of representing the Department of Defense, or any officer, employee or member of the Department in pending or potential litigation to which the record is pertinent.

*See* 32 CFR Part 310 Appendix C Paragraph I.

As properly summarized in the defendants' motion, Vaughan's original action filed with this Court sought to put in the public record allegations that Bingham incorrectly provided information to the Kentucky Army National Guard and its officers. It was Vaughan who attempted to demonstrate that the Kentucky Army National Guard had given credence to those allegations and, as a result, it took improper actions against him. Under those circumstances, Vaughan may not contend that the defendants violated the Privacy Act by placing documents relevant to his claims in the hands of the Court for review. Instead, the use of those documents in related proceedings is not a harm that the Privacy Act was designed to protect. The records in issue were properly disclosed for routine use by the Department of Justice in defending this action.

**A - 54**

**IV.**

Based on the foregoing discussion and analysis, it is hereby

**ORDERED** that the Defendants' motion to dismiss [Record No. 37] is **GRANTED**. The

claims asserted in this action are **DISMISSED**, with prejudice. A separate Judgment will be

entered this date.

This 1st day of May, 2013.

Signed By:

_**Danny C. Reeves**_  DCR

**United States District Judge**

-10-

**A - 55**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| MICHAEL DEAN VAUGHAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3: 12-34-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| NATIONAL GUARD BUREAU and | ) | **ORDER OF DISMISSAL** |
| KENTUCKY ARMY NATIONAL | ) | |
| GUARD, | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Michael Dean Vaughan having filed a motion to dismiss this action with prejudice, and the Court being sufficiently advised, it is hereby

**ORDERED** that Vaughan's Motion for Dismissal with Prejudice [Record No. 16] is **GRANTED**. This action is **DISMISSED**, with prejudice, and **STRICKEN** from the Court's docket.

This 24th day of August, 2012.



Signed By:
*Danny C. Reeves* DCR
United States District Judge

**A - 56**

**United States District Court**
**Eastern District of Kentucky**
**(Frankfort Division)**

Eastern District of Kentucky
**F I L E D**
**AUG 2 3 2012**
AT COVINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

Michael Dean Vaughan,  )   Case No.: 3:12-CV-00034
    Plaintiff,  )
vs.  )
     )
KY Army National Guard  )   Judge: Danny Reeves
    AND  )   Magistrate:
National Guard Bureau (NGB)  )
    Defendant(s)  )
     )
     )

## MOTION FOR DISMISSAL WITH PREJUDICE

**COMES NOW** the Plaintiff Michael Vaughan, and hereby moves this court to dismiss this action with prejudice as the defendants have submitted to the plaintiff the documents requested.

. **Respectfully submitted**

Dated this 23rd day of August, 2012

_____
MICHAEL DEAN VAUGHAN
Plaintiff (*PRO SE*)
2010 Scott Blvd
Covington, KY 41014
(513) 365-8090

**A - 57**

Case: 3:12-cv-00084-DCR Doc #: 16-2 Filed: 08/23/12 Page: 2 of 2 - Page ID#: 99

**Certificate of Service**

It is hereby certified that a true copy of the forgoing was mailed via first class mail on this the 23rd day of August, 2012 to the following:

| David E. Middleton | KY ARNG | National Guard Bureau |
|---|---|---|
| U.S. Attorney's Office, EDKY | Office of the State JAG | Office of the Chief Counsel |
| 260 W. Vine Street | LTC Dylan Seitz | Suite T319B |
| Suite 300 | 100 Minuteman PKWY | 111 South George Mason Dr. |
| Lexington, KY 40507-1612 | Frankfort, KY 40601 | Arlington, VA 22204 |

**COMMONWEALTH OF KENTUCKY**

**COUNTY OF KENTON**

Subscribed and sworn to before me on _____ 8/23/12 _____

My Commission Expires _____ 8/2/2014 _____

Notary Public _____



B. NEAL BROWN
Notary Public, Kentucky
State At Large
My Commission Expires
August 2, 2014
Notary ID 424026

**A - 58**

**United States District Court**
**Eastern District of Kentucky**
**(Frankfort Division)**

|  |  |
|---|---|
| Michael Dean Vaughan, | Case No.: 3:12-CV-00034 |
| Plaintiff, | |
| vs. | |
| KY Army National Guard | Judge: Danny Reeves |
| AND | Magistrate: |
| National Guard Bureau (NGB) | |
| Defendant(s) | |

## PROPOSED ORDER

This matter having come before this Court on Plaintiff's motion for dismissal with prejudice as the defendants have supplied the requested documents and recordings to the plaintiff of the documents submitted to First Army of the Withdrawal of Federal Recognition Board Hearing held regarding the plaintiff on July 9th, 2011 and the defendants having supplied the unedited audio recordings of the Withdrawal of Federal Recognition Board Hearing held regarding the plaintiff on July 9th, 2011;

**IT IS HEREBY ORDERED** that this action is dismissed with prejudice.

**IT IS SO ORDERED**

_____

Date_____

**A - 59**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| MICHAEL DEAN VAUGHAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3: 12-35-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| KENTUCKY ARMY NATIONAL | ) | |
| GUARD and UNITED STATES | ) | **MEMORANDUM OPINION** |
| DEPARTMENT OF THE ARMY, | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant Kentucky Army National Guard's and Defendant United States Department of the Army's motion to dismiss. [Record No. 14] The defendants argue that the Court should dismiss the Complaint because each of the plaintiff's claims fail to satisfy either the case or controversy requirement for justiciability or the jurisdictional prerequisites of the Administrative Procedure Act ("APA"). For the reasons explained below, the Court will grant the defendants' motion.

**I.**

Plaintiff Michael Dean Vaughan is very litigious. This action, as well as several others, arises out an investigation of Vaughan conducted by the Kentucky National Guard regarding harassment allegations.[1] And as the defendants note, the Court is "familiar with the harassment

---

[1] This action is closely related to several other cases filed by Vaughan. *See* Civil Action Nos. 2: 12-53; 3: 10-05; 3: 10-54; 3: 12-33; 3: 12-34; 3: 12-35.

-1-

**A - 60**

allegations against plaintiff that gave rise to the actions by the defendants that are the subject of this action." [Record No. 14-1, p. 2] Mary Elizabeth Brigham-Kounovsky ("Brigham") alleged that Vaughan had taken certain harassing actions against her to officers of the Kentucky Army National Guard in August of 2009. [Civil Action No. 3:10-005-DCR, Record No. 47] Major James Richmond was appointed to conduct an investigation of Vaughan on August 13, 2009, by his Battalion Commander, Lieutenant Colonel Jerry Morrison. [Record No. 14-1, p. 3] He was directed to "perform an investigation [in accordance with] AR 15-6, obtaining the details pertaining to the informal commander's inquiry pertaining to harassment of Ms. Kounovsky by 1LT Michael Vaughan of the 207th Horizontal company" of the 201st Engineer Battalion, Kentucky Army National Guard." [*Id.*, p. 2]

Major Richmond issued a report of the investigation to Lieutenant Colonel Morrison, and "found that [Vaughan] had harassed Ms. Brigham by sending her threatening e-mails and had engaged in a sexual relationship with her at a time when he was separated but still married to his wife." [*Id.*] In September 2009, Vaughan was relieved of his command and transferred. [Record No. 1] In February of 2010, a relief for cause Officer Evaluation Report was issued to Vaughan. [Record No. 11, p. 13] On March 31, 2012, a Withdrawal of Federal Recognition Hearing was held. [*Id.*, p. 18]

Vaughan filed a Complaint on May 2, 2012, in the United States District Court for the District of Columbia. [Record No. 1] He asserted three Counts: equitable estoppel and laches (Count I); violation of the due process clause of the Fifth and Fourteenth Amendments (Count II); and claims under the APA (Count III). On May 8, 2012, the District Court for the District

**A - 61**

of Columbia transferred the case (along with two of Vaughan's other cases) to the Eastern District of Kentucky, pursuant to 28 U.S.C. § 1391. [Record No. 5] On July 3, 2012, Vaughan filed his First Amended Complaint. [Record No. 11] He asserts the same counts as before, with the addition of Count IV, which asserts a alleged violation of the Kentucky Code of Military Justice's provision relating to double jeopardy. [*Id.*, p. 25]

## II.

Federal courts are courts of limited jurisdiction and possess "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Article III of the United States Constitution provides that federal courts may hear only justiciable cases or controversies. U.S. Const. Art. III, § 2. In every federal case, the threshold question is whether the court has the judicial power to hear the suit. *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

Once jurisdiction is challenged under Rule 12(b)(1) of the Federal Rules of Civil Procedure, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal citations omitted). The plaintiff has the burden of establishing subject matter jurisdiction to survive the defendant's Rule 12(b)(1) motion to dismiss. *Giesse v. Sec'y of Dept. of Health and Human Serv.,* 522 F.3d 697, 702 (6th Cir. 2008). In reviewing a 12(b)(1) motion challenging the factual basis for jurisdiction, a district court "has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio*

**A - 62**

*Nat'l Life Ins. Co v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). If a court determines that it lacks subject matter jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3).

### III.

Vaughan alleges that the following agency actions taken by the defendants were improper: (1) production of the report of investigation pursuant to Army Regulation ("AR") 15-6; (2) issuance of a letter of reprimand to Vaughan; (3) issuance of a relief-for-cause Officer Evaluation Report to Vaughan; (4) suspension of Vaughan's military security clearance; and (5) holding the Withdrawal of Federal Recognition Hearing. [Record No. 11; *see also* Record No. 14-1, p. 1] However, the defendants contend that this matter is not justiciable at this time. They argue that, because a parallel action is currently pending in front of an Army Board to Correct Military Records, any claims regarding the AR 15-6 Report, the letter of reprimand, and the Officer Evaluation Report should be dismissed.

The defendants also contend that the Court lacks subject matter jurisdiction over the claims for various other reasons. The defendants first argue that the AR 15-6 investigation is not an "adverse administrative action" and is not subject to judicial review. [*Id.*] Second, they argue that the letter of reprimand complained of was a "local corrective measure, and the document was never placed in the plaintiff's Official military Personnel File" and was, therefore, not a final agency action. [*Id.*, p. 3] Third, the defendants assert that "the decision to issue the plaintiff a relief-for-cause Officer Evaluation Report that resulted in the plaintiff's removal from a military leadership position was not arbitrary and capricious. Moreover, judicial review should be precluded by the intra-military doctrine or because it involved the exercise of subjective

-4-

**A - 63**

discretion reserved to the military agency." [*Id.*] Regarding the suspension of Vaughan's military clearance and withdrawal of federal recognition, the defendants argue that neither matter constitutes final agency action and that these issues are not ripe because the agency has not taken final action against Vaughan with an administrative board.

### 1. Administrative Remedies

Although Vaughan was not *required* to exhaust his administrative remedies before this Court has jurisdiction over his claims, the Sixth Circuit vests district courts with discretion to defer. *Bangura v. Hanse*, 434 F.3d 487, 494 (6th Cir. 2006). Vaughan "has recently availed himself of the statutory remedy of 10 U.S.C. § 1552 to appeal to the Secretary of the Army for a correction of his military records" to the Army board for Correction of Military Records ("ABCMR"). [Record No. 14-1, p. 10] Where no statute or administrative rule requires a plaintiff to exhaust available administrative remedies, the question of whether a plaintiff "should be required to exhaust [his] administrative remedies is a matter of sound judicial discretion." *Bangura*, 434 F.3d at 494. Thus, the inquiry becomes whether requiring Vaughan to exhaust his administrative remedies serves the interests of judicial economy.

The defendants assert that the interests of judicial economy would be served by requiring Vaughan to exhaust his administrative remedies because the plaintiff has already availed himself of an administrative petition to correct his military records. This petition is currently pending. In the petition, Vaughan asks the ABCMR to correct his military records to address the AR 15-6 Report, the letter of reprimand, and the Officer Evaluation Report. As the defendants note, the petition is based on the same set of facts and Vaughan is seeking essentially the same remedy

**A - 64**

Case: 3:12-cv-00035-DCR Doc #: 37 Filed: 01/18/13 Page: 6 of 12 Page ID#: 1173

that he is seeking from this Court. Additionally, the defendants point out that the ABCMR has statutory authority to confer monetary remedies and other equitable remedies that are not available to courts under the APA. *See* 10 U.S.C. § 1552a-c. The Court agrees that judicial economy is served by requiring Vaughan to exhaust his administrative remedies. If Vaughan is granted relief by the ABCMR under that petition, the matters for which he seeks redress from this Court will be moot. Thus, the Court concludes that Vaughan will be required to exhaust his administrative remedies on the matters of the AR 15-6 Report, the Letter of Reprimand and the Officer Evaluation Report.

### 2. Lack of Final Agency Action

Even if the Court did not require that Vaughan exhaust his administrative remedies before the ABCMR regarding the AR 15-6 Report, the letter of reprimand, and the Officer Evaluation Report, there are additional reasons why the Court cannot review these matters. "Only final agency decisions are subject to review under the APA." *Ohio Forestry Ass'n, Inc., v. Sierra Club*, 523 U.S. 726, 732 (1998). By its terms, the APA "provides a right to judicial review of all 'final agency action for which there is no other adequate remedy in a court.'" *Bennett v. Spear*, 520 U.S. 154, 174-75 (1997) (quoting 5 U.S.C. § 705). Agency action is final under the APA where it: (1) marks the consummation of the agency's decision-making process; and (2) determines rights and obligations or occasions legal consequences. *Bangura,* 434 F.3d at 500. "The core question is whether the agency has completed its decision making process, and whether the result of that process is one that will directly affect the parties." *Or. Natural Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006).

**A - 65**

### i.    AR 15-6 Report

The AR 15-6 Report of Investigation is not a final agency action that consummated the agency's decision-making process to determine Vaughan's rights. Therefore, it is not subject to review under the APA. The relevant army regulations dictate that an officer conducting an informal investigation "may use whatever method he finds most efficient and effective for acquiring information." AR 15-6, ¶ 4-2. AR 15-6 "sets out an informal investigation process [and] provides a fact-gathering tool for Army commanders." [Record No. 14-1, p. 7] AR 15-6 is a general regulation outlining procedures to be followed by boards of officers who are conducting investigations involving individual members of the Army. AR 15-6 explicitly states that the "regulation does not require that an investigation be conducted before adverse administrative action, such as relief for cause, can be taken against an individual."[2] AR 15-6; *see also* Record No. 14-1, p. 8.

The AR 15-6 Investigation and Report issued on August 18, 2009, was not the consummation of the military's decision regarding Vaughan. Instead, it provided factual information to the military appointing authority. Therefore, it was "of a merely tentative or interlocutory nature." *Or. Natural Desert Ass'n*, 465 F.3d at 984 (quoting *Bennett*, 520 U.S. at 178). In addition, looking to see whether the agency had "rendered its last word on the matter" by conducting an informal investigation, it is obvious from the factual allegations of the Complaint that it had not. *Id.* The informal AR 15-6 investigation occurred on August 13, 2009.

---

[2]    Vaughan spends considerable time, in his Complaint and in his Response to the Motion to Dismiss, attacking the alleged procedural deficiencies from the AR 15-6 Report and Investigation. However, as the defendants point out, the army regulations themselves state that "procedural errors or irregularities in an investigation or board do not invalidate the proceeding or any action based on it." AR 15-6, ¶ 2-3c.

**A - 66**

[Record No. 11, p. 3] After the AR 15-6 investigation, the investigation into the harassment complaint continued up the chain of command. *See* Civil Action No. 3: 10-54-DCR, Record No. 45 (discussing at length Colonel Rodney Hayes' investigation and conclusions into the harassment allegations). In addition, Vaughan himself was informed on several occasions that the AR 15-6 Report was not considered when Vaughan was eventually relieved for cause. [Record No. 11, p. 15] This undercuts any finding that the Report was "the last word" on the matter. As a result, the Court concludes that the AR 15-6 Report and Investigation is not final agency action. Judicial review under the APA is not appropriate where final agency action is lacking. The Court, thererfore, will dismiss Counts I, II, and III insofar as they relate to the AR 15-6 Report.[3]

### ii. Letter of Reprimand

Vaughan alleges that "[o]n May 9, 2010, additional final action was taken against [him] by the filing of his Relief for Cause [Officer Evaluation Report] and his Letter of Reprimand into his permanent record that was based on the AR 15-6 Report of Proceedings." [Record No. 11, p. 16] The defendants argue that the letter of reprimand issued to Vaughan on April 6, 2010 "was only a locally filed measure and, because it was not filed in [Vaughan's Official Military Personnel File (OMPF)], the decision to file the letter was of only temporary import and not a decision from which permanent legal consequences will flow." [Record No. 14-1, p. 9] In

---

[3] Count I states that Vaughan is alleging "equitable estoppel and laches" against the defendants due to the AR 15-6 Report. [Record No. 11] However, the claim is simply a reiteration of his APA violation claim, because he is attacking the alleged procedural deficiencies of the AR 15-6 Report and Investigation. Therefore, it is proper to dismiss Counts I and II for the same reasons that dismissal of Count III is appropriate.

-8-

**A - 67**

support, the defendants have attached an exhibit documenting a review of Vaughan's OMPF, which occurred on July 20, 2012. [Record No. 16-2] The review, conducted by the Chief of the Soldier Records Branch at the Army National Guard Readiness Center in Arlington, Virginia, determined that "[n]o letter of reprimand is filed in 1LT Vaughan's OMPF." [*Id.*]

Based on the credible documentation available to the Court, the letter of reprimand was only of a temporary nature and thus did not constitute a final administrative action. However, the Court also concludes that judicial review of the letter of reprimand is inappropriate due to the petition currently pending before the Army Board to Correct Military Records, as discussed above. Because the defendants have shown a lack of finality regarding the letter of reprimand, and because an administrative action on this exact issue is pending, the Court concludes that judicial review of the letter of reprimand is improper. Count III, as it relates to the letter of reprimand, will be dismissed.

### iii. Officer Evaluation Report

Vaughan received a relief-for-cause Officer Evaluation Report ("OER"), dated April 9, 2010, which was filed in Vaughan's OMPF. [Record No. 14-1] The defendants concede that this OER is final agency action, yet argue that the action was a result of sound military discretion, and is not arbitrary and capricious. The defendants have provided the following summary (*via* the Chief of the Soldier Records Branch at the Army National Guard Readiness Center) regarding the Report:

> The Officer Evaluation Report does not indicate that 1LT Vaughan was being relieved from a command position, but it does indicate he was removed from a leadership position. The officer's rater annotated the basis for relief as: "1LT Vaughan is receiving a referred report due to poor decision making and lack of

**A - 68**

moral character," and his senior rater listed the basis as: "1LT Vaughan made some decisions that violate the Army Values. These decisions show poor character and do not reflect the leadership position he is assigned as a commissioned officer." There is no document in the OMPF indicating that 1LT Vaughan has appealed the Officer Evaluation Report to the Officer Special Review Board of the Department of the Army, although he may do so within five years of the date of the report.

[Record No. 16, p. 3] Because Vaughan was removed from his leadership position due to poor character that did not reflect his leadership position, poor-decision making, and violating the Army Values, the defendants assert that the decision to remove Vaughan from his leadership position was not arbitrary and capricious. [Record No. 14-1, p. 11] The defendants also argue that "the military decision to remove an officer from a position based on leadership deficiencies should not be subject to judicial review" because of the doctrine of military immunity and military discretion. [*Id.*]

The doctrine of military immunity requires "that the judiciary be scrupulous not to interfere with legitimate Army matters." *Orloff v. Willoughby*, 345 U.S. 83, 94 (1953). The special status accorded the military has long been upheld by the Supreme Court. *See Chappell v. Wallace*, 462 U.S. 296, 303-04 (1983) ("The special status of the military has required, the Constitution contemplated, Congress has created and this Court has long recognized two systems of justice, to some extent parallel: one for civilians and one for military personnel."). Of course, the Supreme Court has never held that military personnel are barred from all redress, but have noted that "the special relationships that define military life 'have supported the military establishment's power to deal with its own personnel.'" *Id.* at 305. The Court agrees with the defendants' assertions that "unit-level leadership determinations and assignments are legitimate

**A - 69**

Army matters that should be reserved to military officials." [Record No. 14-1, p. 13] Insofar as the actions removing Vaughan from leadership positions were final agency action, it is within the purview of military immunity and discretion and is not subject to review by this Court. The Court will dismiss the claims in the Complaint relating to the Officer Evaluation Report.

### iv. Security Clearance and Withdrawal of Federal Recognition

Vaughan also complains about the suspension of his security clearance and the withdrawal of federal recognition hearing by the defendants. The defendants argue that no justiciable controversy exists regarding these actions for the same reasons discussed above. It is undisputed that Vaughan's security clearance was suspended on March 8, 2011. [Record No. 14-1, p. 15] The defendants argue that "by agency definition suspension is 'the temporary withdrawal of a person's eligibility for access to classified information.'" [*Id.*, p. 15 (quoting AR 380-67)] Thus, the defendants argue that Vaughan's claims regarding his security clearance are premature because final agency action has not yet occurred. In addition, on July 9th, 2011, a Withdrawal of Federal Recognition Board hearing was held. Yet, on March 26, 2012, the Commanding General of 1st Army determined that the board was legally deficient because it had failed to make factual findings concerning the specific allegations of misconduct identified in the board's convening order. [*Id.*, p. 18]

The Court finds that neither of these actions was a final agency decision. Thus, they are not ripe for review. It appears that Vaughan's security clearance is currently suspended, but other administrative actions must occur to determine whether the clearance will be permanently revoked. Nor has Vaughan's federal recognition been finally withdrawn. A claim is not

**A - 70**

justiciable where it hinges on hypothetical future events. *See Cooley v. Granholm,* 291 F.3d 880, 883-84 (6th Cir. 2002) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."). It is certainly possible that neither his security clearance nor federal recognition will be withdrawn. Therefore, the Court will dismiss Count IV of the Complaint regarding the Withdrawal of Federal Recognition Hearing, and Count III of the Complaint as it relates to Vaughan's security clearance.

## IV.

For the foregoing reasons, each of Plaintiff Michael Dean Vaughan's claims present matters that are not justiciable controversies. As such, the Court lacks subject matter jurisdiction over the matters alleged in the Complaint. Accordingly, it is hereby

**ORDERED** as follows:

1.  Defendants Kentucky Army National Guard and United States Department of the Army's Motion to Dismiss [Record No. 14] is **GRANTED**.

2.  Plaintiff Michael Dean Vaughan's claims regarding the AR 15-6 Report, the letter of reprimand, and the Officer Evaluation Report (in Counts I, II, and III) are **DISMISSED**, with prejudice. All other claims are **DISMISSED**, without prejudice.

3.  This matter is **DISMISSED** and **STRICKEN** from the Court's docket.

This 18th day of January, 2013.



Signed By:
*Danny C. Reeves*
United States District Judge

-12-

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| MICHAEL DEAN VAUGHAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3: 12-35-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| KENTUCKY ARMY NATIONAL | ) | **ORDER** |
| GUARD and UNITED STATES | ) | |
| DEPARTMENT OF THE ARMY, | ) | |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

This matter is before the Court for consideration of Plaintiff Michael Dean Vaughan's motion to file certain documents under seal as attachments to his response in opposition to the defendants' motion to dismiss. [Record No. 28] Vaughan asserts that the documents contain information protected by the federal Privacy Act. The Court notes that, although this motion is not unopposed, the defendants have previously filed two motions for leave to seal similar documents. [Record Nos. 15, 20] In those motions, the defendants submitted attachments under seal and reserved the question of whether the documents may be unsealed under the Privacy Act. [*See* Record No. 15, p. 1] Being sufficiently advised, it is hereby

**ORDERED** that Vaughan's Motion to Seal Exhibits [Record No. 28] is **GRANTED**. Exhibits A through H to Plaintiff's Response in Opposition to Defendant's Motion to Dismiss shall be maintained in the record under seal pending further Orders of the Court.

-1-

**A - 72**

Case: 3:12-cv-00099-DCR Doc #: 34 Filed: 09/19/12 Page: 2 of 2 - Page ID#: 1102

This 19th day of September, 2012.

A - 73



**Signed By:**

*Danny C. Reeves* DCR

**United States District Judge**

-2-

**A - 73**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT FRANKFORT



Eastern District of Kentucky
**FILED**

MAR 2 6 2010

AT FRANKFORT
LESLIE G. WHITMER
CLERK: U.S. DISTRICT COURT

CIVIL ACTION NO. 3: 10-CV-5-DCR

MICHAEL DEAN VAUGHAN        PLAINTIFF

v.             ENTRY OF DEFAULT

MARY ELIZABETH BRIGHAM        DEFENDANT
a/k/a Mary Elizabeth Kounovsky
a/k/a Mary Eluzabeth Goad

\* \* \* \* \* \* \* \* \*

This matter is before the Clerk for Entry of Default [R. 11] as to Mary Elizabeth Brigham, a/k/a Mary Elizabeth Kounovsky, a/ka Mary Elizabeth Goad. The record reflects that summons and complaint were served upon the defendant as required by law and said defendant having failed to plead or otherwise defend this action, this fact having been made known by motion and affidavit of plaintiff;

NOW, THEREFORE, default is hereby entered against the defendant, Mary Elizabeth Brigham a/k/a Mary Elizabeth Kounovsky a/ka Mary Elizabeth Goad, as provided in Rule 55(a), Federal Rules of Civil Procedure.

Dated this 26th day of January, 2010.

LESLIE G. WHITMER

By:_____ C. Dearborn _cbd_____
Deputy Clerk

**A - 74**

Eastern District of Kentucky
**F I L E D**

AUG 3 1 2012

AT COVINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

## United States District Court
## Eastern District of Kentucky
### (Frankfort Division)

| | |
|---|---|
| 1LT Michael Dean Vaughan )<br>2010 Scott BLVD. )<br>Covington, KY 41014 )<br>　　　*Plaintiff,* )<br>　　 )<br>vs. )<br>　　 )<br>KY Army National Guard )<br>100 Minuteman PKWY )<br>Frankfort, KY 40601 )<br>　　 )<br>　　 )<br>　　AND )<br>　　 )<br>United States Department of the Army )<br>1400 Defense Pentagon )<br>Washington DC 20301-1400 )<br>　　 )<br>　　 )<br>　　*Defendant(s)* )<br>　　 ) | Case No.: 3:12-cv-00035-DCR<br>Judge: Danny Reeves |

### PLAINTIFF'S RESPONSE IN OPPPOSITION TO
### DEFENDANT'S MOTION TO DISMISS
### (Doc. No, 14)

Plaintiff 1LT Michael Vaughan moves this court to deny the United States'

Motion to Dismiss. Plaintiff contends that dismissal of this action is unwarranted and

therefore, improper in this matter, for the reasons set forth in Plaintiff's accompanying

brief and plaintiff's statement of undisputed facts.

**A - 75**

**Wherefore,** Plaintiff respectfully requests that this Honorable Court deny the

United States motion to dismiss or in the alternative to allow preliminary discovery on

the matter and hold an evidentiary hearing.

Dated: August 31st, 2012

Respectfully submitted,
BY:

MICHAEL DEAN VAUGHAN
Plaintiff (*PRO SE*)
2010 Scott Blvd.
Covington, KY 41014
(513) 365-8080
mvaughan@kyguardgonewild.com

**A - 76**

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served by regular U.S.

Postal Mail on this 31st day of August 2012, to the following;

| | |
|---|---|
| Kentucky Army National Guard<br>Office of the Staff Judge Advocate<br>ATTN: LTC Dylan Seitz<br>100 Minuteman Parkway<br>Frankfort, KY 40601 | ATTN: David Middleton<br>US Attorney-Civil Division<br>260 West Vine St. Suite 300<br>Lexington, KY 40507-1612 |
| The Honorable Eric Holder<br>Attorney General of the U.S<br>U.S. Department of Justice<br>950 Pennsylvania Ave. N.W<br>Washington, DC 20530-0001 | The Honorable John McHugh<br>Secretary, U.S. Army<br>1400 Defense Pentagon<br><br>Washington DC 20301-1400 |

MICHAEL DEAN VAUGHAN
Plaintiff (*PRO SE*)
2010 Scott Blvd.
Covington, KY 41014
(513) 365-8090
mvaughan@kyguardgonewild.com

**COMMONWEALTH OF KENTUCY**

**COUNTY OF KENTON**

Subscribed and sworn to before me on ___8 / 31 / 12___

My Commission Expires ___8 / 2 / 14___

Notary Public _____



B. NEAL BROWN
Notary Public, Kentucky
State At Large
My Commission Expires
August 2, 2014
Notary ID 424026

**A - 77**

Eastern District of Kentucky
**F I L E D**

AUG 3 1 2012

AT COVINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

**United States District Court**
**Eastern District of Kentucky**
**(Frankfort Division)**

| | |
|---|---|
| 1LT Michael Dean Vaughan ) | |
| 2010 Scott BLVD. ) | |
| Covington, KY 41014 ) | |
| *Plaintiff,* ) | Case No.: 3:12-cv-00035-DCR |
| ) | Judge: Danny Reeves |
| vs. ) | |
| ) | |
| KY Army National Guard ) | |
| 100 Minuteman PKWY ) | |
| Frankfort, KY 40601 ) | |
| ) | |
| AND ) | |
| ) | |
| United States Department of the Army ) | |
| 1400 Defense Pentagon ) | |
| Washington DC 20301-1400 ) | |
| ) | |
| *Defendant(s)* ) | |

*"He that takes the procedural sword shall perish with that sword."*
-Justice Frankfurter; Vitarelli v. Seton, 359 U.S. 535 (1959)

**BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**

**PRELIMINARY MATTER**

As a preliminary matter, the plaintiff would like to address an issue that involves

the Assistant U.S. Attorney David Middleton ("AUSA") and the defendants in the

**A - 78**

government's motion to dismiss. The Plaintiff has noted[1] that the defendants in collusion with the U.S. Attorney's Office, have engaged in the intentional spoliation of relevant evidence in order to effect the justiciability of this action, and of the intentional 'misstatements' of the AUSA regarding relevant evidence of record. Additionally, the plaintiff notes the defendants and the AUSA's response [2] to the plaintiffs 'Initial Notice of Fraud on the Court', whereas the AUSA stated that it was *"never the intention of counsel to convey false or misleading information to the court."* Then the AUSA gave the reasoning behind the willful, intentional, and bad faith spoliation of evidence in order to affect the justiciability of this action. This and other more poignant examples of the defendant's bad faith conduct will be addressed later in this document and in the plaintiff's statement of undisputed facts.

## I.     SUBJECT MATTER JURISDICTION & JUSTICIABILITY

The plaintiff asserts that not every claim arising from a military decision presents a nonjusticiable controversy as asserted by the AUSA. Courts have consistently recognized that, although the merits of a decision committed wholly to the discretion of the military are not subject to judicial review, a challenge to the particular procedure followed in rendering a military decision does present a justiciable controversy.

---

[1] 'Initial Notice of Fraud on the Court'; Doc. No. 18, filed on August 8th, 2012 in KY E.D. 3:12-CV-35.

[2] 'Amended Document' (Amendment to Memorandum in Support of Motion to Dismiss); Doc. No. 19, filed on August 13th, 2012 in KY E.D. 3:12-CV-35.

Specifically, a court may appropriately decide whether the military followed procedures, as because by their very nature, the procedures explicitly limit the military's discretion in making a decision. It is the plaintiff's position, that this court may review the challenged process[s] as challenged by the plaintiff in his complaint for compliance with established procedures.

Moreover, other Circuit Courts of Appeals have recognized a similar distinction. See, e.g., Watson v. Arkansas Nat'l Guard, 886 F.2d 1004, 1011 n. 16 (8th Cir.1989) ("[A]djudication of [plaintiff's] claims requires the district court to determine only whether the Secretary's decision making process was deficient, not whether his decision was correct."); Kreis v. Secretary of Air Force, 866 F.2d 1508, 1511 (D.C.Cir.1989) (same).

In cases in which procedural violations are alleged, the test or standards against which this court should measure the military's conduct are inherent; they are the applicable statutes and regulations in which the military has limited its discretion. In such instances, this court does not improperly exercise any discretion reserved for the military. This court is to merely determine whether the procedures were followed by applying the facts to the statutory or regulatory standard and to act as appropriate.

With regards to Subject Matter Jurisdiction, the plaintiff concedes that a court is always obligated to consider its own jurisdiction in a case. However, the APA provides for judicial review of *"final agency action for which there is no other adequate remedy in a*

**A - 80**

court." 5 U. S. C. §704. Moreover, the APA creates a *presumption favoring judicial review of administrative action.*" Block v. Community Nutrition Institute, 467 U. S. 340, 349.

Furthermore, the plaintiff in this action has alleged that the actions of the defendants were willful, intentional, arbitrary and capricious as they deprived the plaintiff of his liberty interest in his good name and professional reputation without due process of law, in violation of the plaintiff's Fifth and Fourteenth Amendment rights. As the AR 15-6 Report of Investigation is willfully and intentionally not subject to review by the defendants, it thus marks the consummation of the agency's decision making process as it resulted in multiple final adverse administrative action(s) being taken against the plaintiff from which *"determined"* the plaintiff's *"rights or obligations. "* Bennett v. Spear, 520 U. S. 154, 178 (1997) that which "legal consequences . . . [did] flow'". Therefore, this court explicitly has both subject matter jurisdiction, and this case is explicitly justiciable notwithstanding the multiple instances of intentional spoliation of evidence by the defendants in this and other action(s).

## THE ARMY BOARD FOR THE CORRECTION OF MILITARY RECORDS

As to the justiciability or appropriateness of this action in relation to the plaintiff's pending Army Board for the correction of Military Records action that the AUSA correctly states is pending, administrative exhaustion is not required in the present case. The Supreme Court decided Darby v. Cisneros, 509 U.S. 137 (1993). In Darby, the Court explicitly held that federal courts have no authority to require plaintiffs to exhaust

administrative remedies prior to seeking judicial review under the APA unless a statute or agency regulation specifically mandates exhaustion as a prerequisite to judicial review. Darby, 509 U.S. at 144-146. Unlike other past decisions, the Court in Darby did not distinguish nor exempt the military, or its separate justice system, from its holding.

Furthermore, Federal Courts of Appeals have also declined to read a military exception into the Supreme Court's ruling in Darby. In Dowds v. Clinton, 18 F.3d 953 (Table), 1994 WL 85040 (D.C. Cir. 1994), 305 U.S. App. D.C. 193, the Circuit Court of Appeals for the District of Columbia held that pursuant to the Court's decision in Darby, the plaintiff was not required to resort to the Military Board of Correction prior to filing suit in federal court. Approximately one year later, in Ostrow v. Secretary of the Air Force, 48 F.3d 562 (Table), 1995 WL 66752 (D.C. Cir. 1995), the court reaffirmed its decision in Dowds, declining the Secretary's invitation to construe a military exception to the rule on exhaustion set forth in Darby. See also Robertson v. United States, 145 F.3d 1346 (Table), 1998 WL 223159 *4 n. 2 (10th Cir. 1998) (noting that "other courts no longer require exhaustion in military cases due to the holding in Darby").

More recently in the 6th Circuit in BANGURA v. HANSEN, 434 F.3d 487 (6th Cir. 2006); *"Plaintiffs' failure to exhaust their administrative remedies does not deprive this court of subject matter jurisdiction over Plaintiffs' APA claims. The law governing the exhaustion of APA claims differs from that governing exhaustion in other contexts. It is governed by 5 U.S.C. § 704; Darby v. Cisneros, 509 U.S. 137, 146-47, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993).*

**A - 82**

*Section 704 only requires a plaintiff to exhaust his or her administrative remedies where a statute or agency rule makes the remedies mandatory. Id.; see also Dixie Fuel Co., 171 F.3d at 1059. Where an intra-agency appeal is optional, however, the APA does not require a plaintiff to appeal prior to filing suit in federal court. Darby, 509 U.S. at 147, 113 S.Ct. 2539 ("Section [704] explicitly requires exhaustion of all intra-agency appeals mandated either by statute or by agency rule; it would be inconsistent with the plain language of § [704] for courts to require litigants to exhaust optional appeals as well.").* It is clear that exhaustion is not a requirement for the plaintiff in this action.

Furthermore, this court can enjoin the defendants from engaging in further violations of the plaintiff's procedural due process rights which the Army Board for the Correction of Military Records will not pursuant to Army Regulation 15-185 PARA 2-6 which states pertinently as follows;

> **"2–6. Stay of other proceedings**
> *Applying to the ABCMR does not stay other proceedings."*

## II.    INTRODUCTION

This case is ultimately about procedural due process that was supposed to have been accorded to the plaintiff in this action. The question is; 'Was 1LT Michael Vaughan supposed to have been given the opportunity to rebut the AR 15-6 Report of Investigation prior to adverse administrative action?' The defendants have confirmed via their Motion to Dismiss and via e-mails with the U.S. Attorney's Office that the

**A - 83**

plaintiff was explicitly denied the right to receive and rebut the AR 15-6 Report of
Investigation that was produced on August 18th, 2009[3]. Though the plaintiff requested
on multiple occasions to get a copy of this AR 15-6 Report of Investigation in his
military capacity for rebuttal purposes, prior to final adverse action being taken against
him, he ultimately only received a [incomplete] copy of the AR 15-6 Report of
Investigation from a FOIA/Privacy Act request[4]. Though Army Regulations, and
constitutional due process required that the plaintiff be accorded the opportunity to
rebut the AR 15-6 Report of Investigation ("AR 15-6 ROI") as multiple final adverse
actions were taken against him based on the AR 15-6 ROI , the plaintiff was willfully,
intentionally, arbitrarily, and capriciously denied his procedural rights in order to
protect COL Rodney Hayes from then pending, now current litigation.

Furthermore, this pattern of denying the plaintiff his procedural rights
represents willful and intentional affirmative misconduct of the defendants for the past
three years that includes the defendants intentionally lying about the plaintiff to this
court, intentionally spoliating evidence, and committing frauds on this federal court
and even ultimately refusing the plaintiff the opportunity to rebut the AR 15-6 ROI at
the Withdrawal of Federal Recognition Board Hearing held on July 9th, 2011 by giving
the AR 15-6 Report of Investigation 'Res Judicata' status and making findings of fact

---

[3] See attachments to Doc. No. 35 in Vaughan v. Brigham 3:10-CV-5. Note that
this missing the last page in which the appointing officer non-concurred with
the finding of conduct unbecoming.
[4] Attached as Exhibit "A" to this memorandum.

**A - 84**

despite such an egregious violation of his substantive rights and completely contrary to what LTG Michael Bednarek advised through his Deputy Chief of Staff COL Shane Deverill.

As explained below in the plaintiff's Argument Section and in the plaintiff's statement of undisputed facts, despite the fact that the AR 15-6 Report of Investigation is itself legally & procedurally insufficient and that the defendants intentional denial of the plaintiff's due process requirements will never ultimately be sustained, the defendants continue their relentless attack and affirmative misconduct against the plaintiff for doing nothing more than engaging in his statutory/constitutional right to seek redress in the courts for wrongs committed against him and demanding that the defendants follow the procedures that they are required to follow.

Given the defendants persistent and continuing violations of the plaintiff's procedural, constitutional, and statutory rights, the plaintiff is entitled to injunctive and declaratory relief preventing the defendants from continuing to threaten the plaintiff with a legally insufficient AR 15-6 Report of Investigation that the plaintiff was intentionally denied the right to receive and rebut as required by Army & National Guard Regulations. As these bad faith actions and threats all meet the applicable elements necessary for 'Equitable Estoppel against the Government', this honorable court can enjoin and restrain the defendants from any further actions based on the AR 15-6 Report of Investigation.

**A - 85**

Because the threat of a second Board hearing in and of itself does, and any following through on that threat would, violate the plaintiff's fundamental due process rights under Fifth and Fourteenth Amendments to the U.S. Constitution, and the Administrative Procedure Act, this court must act swiftly.

### III.    ARGUMENT

### THE AR 15-6 REPORT OF INVESTIGATION AS IT RELATES TO
### THE RELIEF FOR CAUSE/REFERRED OFFICER EVALUATION REPORT

This court has subject matter jurisdiction and this case is justiciable as multiple final adverse agency actions were taken against the plaintiff based on an AR 15-6 Report of Investigation that the plaintiff was willfully, intentionally, arbitrarily, and capriciously denied the opportunity to rebut as required by Army Regulations[5]. These adverse actions had legal consequences and were the consummation of the defendant's decision making process as the findings and conclusions are demonstrably not subject to further review.

The AUSA's response[6] that the plaintiff was not required to be accorded the right to rebut the AR 15-6 as he was not designated a respondent is legally and factually inaccurate.

---

[5] Army Regulation 15-6, Army Regulation 600-37, Army Regulation 623-105, and Army Regulation 623-3 attached as Exhibit "C".
[6] See Motion to Dismiss, Memorandum in Support; Doc. No. 14-1, Page 8

**A - 86**

Specifically, Army Regulation 15-6 PARA 1-9 (c) states in pertinent part;

"c. Except as provided in d below, **when adverse administrative action is contemplated against an individual** (other than a civilian employee, see b above)**, including an individual designated as a respondent,** based upon information obtained as a result of an investigation or board conducted pursuant to this regulation, **the appropriate military authority must observe the following minimum safeguards before taking final action against the individual**:

> **(1) Notify the person in writing of the proposed adverse action and provide a copy, if not previously provided, of that part of the findings and recommendations of the investigation or board and the supporting evidence on which the proposed adverse action is based.**

> **(2) Give the person a reasonable opportunity to reply in writing and to submit relevant rebuttal material.**

> **(3) Review and evaluate the person's response.**

d. There is no requirement to refer the investigation to the individual if the adverse action contemplated is prescribed in regulations or other directives that provide procedural safeguards, such as notice to the individual and opportunity to respond. For example, there is no requirement to refer an investigation conducted under this regulation to a soldier prior to giving the soldier an adverse evaluation report based upon the investigation because the regulations governing evaluation reports provide the necessary procedural safeguards.

e. **When the investigation or board is conducted pursuant to this regulation but the contemplated administrative action is prescribed by a different regulation or directive with more stringent procedural safeguards than those in c above, the more stringent safeguards must be observed.**"

Army Regulation 15-6 PARA 1-9 (e) [above] shows that whenever different

regulations and directives have different procedural safeguards, the *"more stringent*

*procedural safeguards"* must be observed.  Furthermore, Army Regulation 15-6 PARA

1-9 (d) states that *"there is no requirement to refer an investigation conducted under this*

**A - 87**

*regulation to a soldier prior to giving the soldier an adverse evaluation report*". However, the

plaintiff did not just receive a simple 'adverse evaluation report', he received a 'Relief

for Cause/Referred Officer Evaluation Report' which has its own procedural safeguards.

Thus an examination of Army Regulations 623-105 and Army Regulation 623-3 PARA

3–58 (2007 Version) that pertain to evaluation reports must be checked to see what these

army regulations require for due process as they relate to the plaintiff; 1) being relieved

of command on September 19th, 2009 and ultimately transferred[7] on November 9th, 2009

to the 201st EN BN as an operations officer, and of the plaintiff receiving a relief for

cause/referred officer evaluation report based on an informal AR 15-6 Investigation.

Specifically, Army Regulation 623-105 PARA 3-50(a) states in pertinent part;

> *a. **A report is required when an officer is relieved for cause regardless of the
> rating period involved.** Relief for cause is defined as an early release of an officer from a
> specific duty or assignment directed by superior authority and based on a decision that
> the officer has failed in his or her performance of duty. In this regard, duty performance
> consists of the completion of assigned tasks in a competent manner and compliance at all
> times with the accepted professional officer standards shown in Part IV, DA Form 67-9.
> These standards apply to conduct both on and off duty. **If, for whatever reasons, the
> relief does not occur on the date the officer is removed from his or her duty
> position responsibilities, the period of time between the removal and the relief
> will be nonrated time included in the period of the relief report.** The report will be
> rendered by the published rating chain at the time of the relief; no other report will be due
> during this nonrated period. When an officer is suspended from duties pending
> investigation every effort should be made to retain the established rating chain until the
> investigation is resolved.*
>
> *b. **If relief for cause is contemplated on the basis of an informal AR 15-6***

---

[7] See attached copy of orders transferring the plaintiff attached as Exhibit
"B" to this memorandum.

*investigation, the referral procedures contained in that regulation must be
complied with before the act of initiating or directing the relief. This is
irrespective of the fact that the resultant relief for cause report must also be
referred to the rated officer as described in paragraph 3-33.*[8] This does not
*preclude a temporary suspension from assigned duties pending application of the
procedural safeguards contained in AR 15-6. Action to relieve an officer from
any command position will not be taken until after written approval by the first
general officer in the chain of command of the officer being relieved is obtained,
as required by AR 600-20.*

Army Regulation 623-105 PARA 3-50 requires that the referral procedures

as outlined in AR 15-6 **MUST BE COMPLIED WITH [Emphasis Added]** before

the act of initiating or directing relief and this is irrespective of the fact that the

resultant relief for cause report MUST also be referred to the rated

officer...."*pending application of the procedural safeguards contained in AR 15-6."*

Thus AR 623-105 & AR 623-3 has more stringent procedural safeguards that AR

15-6 require be followed. Additionally, AR 623-3 states the same requirements.

Specifically, Army Regulation 623-3 PARA 3–58 (2007 Version) states in pertinent

part;

> *b. Cases where the rated officer has been suspended from duties pending an
> investigation will be resolved by the chain of command as expeditiously as
> possible to reduce the amount of potential non-rated time involved. Every effort
> will be made to retain the established rating chain, with the officer performing
> alternate duties under that rating chain, until the investigation is resolved. If the
> rated officer is suspended and subsequently relieved, the period of suspension is
> nonrated time. If the rated officer is suspended and subsequently placed back to
> duty (not relieved), the period of suspension is recorded as evaluated time on the*

---

[8] Plaintiff also notes that an examination of the plaintiff's relief for
cause/referred OER will show that the end date of the OER should actually be
September 19th, 2009 as all time after this date should have been non-rated.

*next OER.*

> *c. If Relief-for-Cause is contemplated on the basis of an informal AR 15–6 investigation, referral procedures contained in that regulation will be followed before the act of initiating or directing the relief.* This is *irrespective of the fact that the resultant report will also be referred to the rated officer as described in paragraph 3–34. This does not preclude a temporary suspension from assigned duties pending application of the procedural safeguards contained in AR 15–6. Action to relieve an officer from any command position will not be taken until after obtaining written approval from the first general officer in the chain of command of the officer being relieved, as required by AR 600–20.*

In reviewing the events that unfolded involving the plaintiff; 1) he was relieved of command based on an informal AR 15-6 Report of Investigation and was never accorded any of the procedural protections required from the defendants.  2) prior to receiving a relief for cause/referred officer evaluation report and letter of reprimand, he was also denied the AR 15-6 ROI [though the plaintiff requested numerous times] to rebut it.  Additionally, he has never been given the opportunity to rebut the AR 15-6 ROI so that the plaintiff could have his local security clearance reinstated that has been suspended since September of 2009.

The requirements of Army Regulation 15-6, Army Regulation 623-105, and Army Regulation 623-3 state that regardless of if a person is a respondent or not, they are entitled to specific procedural protections, none of which were followed by the defendants in this action. Those requirements were to; *(1) Notify the person in writing of the proposed adverse action and provide a copy, if not previously provided, of that part of the*

**A - 90**

*findings and recommendations of the investigation or board and the supporting evidence on which the proposed adverse action is based. (2) Give the person a reasonable opportunity to reply in writing and to submit relevant rebuttal material. (3) Review and evaluate the person's response.* In other words, to receive a copy of the AR 15-6 Report of Investigation and the opportunity to rebut the contested AR 15-6 Report of Investigation. None of which occurred.

Most interestingly, the defendants put forth the incredible argument[9] that the Relief for Cause/Referred OER and the Letter of Reprimand are amazingly not related to the hotly contested AR 15-6 Report of Investigation. This argument had also been made to the plaintiff directly by LTC Jerry Morrison and the [then] Inspector General COL David Alexander[10]. However, unbeknownst to the plaintiff, the defendants intended for the plaintiff to believe their willful and intentional bad faith misrepresentations and the defendants instead used the AR 15-6 Report of Investigation against the plaintiff, while willfully, intentionally, arbitrarily, and capriciously denying him the right to rebut the AR 15-6 Report of Investigation as they were required to do. These intentional misrepresentations and the willful, intentional, arbitrary, and capricious denial of the plaintiff of the right to rebut the AR 15-6 Report of Investigation

---

[9] See Doc No 14-1 Page 12 in Defendant's Motion to Dismiss
[10] See attached e-mail from the [then] Command Inspecting General for the KY National Guard, COL David Alexander as sent to the plaintiff; attached as Exhibit "D"

**A - 91**

("LOR") was based so that the plaintiff would have been able to properly rebut the very

basis of the LOR.

Specifically, Army Regulation 600-37 PARA 3-2 'Policies', states pertinently that

in tendering a Letter of Reprimand to a soldier, unfavorable information will not be

filed in an official personnel file unless the recipient has been given the chance to review

the documentation that serves as the basis for the proposed filing and make a written

statement, or to decline, in writing, to make such a statement. As the plaintiff was

explicitly denied the opportunity to receive much less rebut the AR 15-6 ROI, he was

unable to make a written statement to include with the LOR that was based on the AR

15-6 ROI and the LOR that was placed in the plaintiff's Official Military Personnel File.

1LT Michael Vaughan was clearly unable to address the underlying reasons for

the Letter of Reprimand much less the relief for cause/referred OER. However, the

AUSA acknowledges that the Letter of Reprimand is also *the culmination of the agency's*

*decision making process*" but makes a fraudulent argument as to why it really isn't an

adverse action. Specifically, the AUSA states in the motion to dismiss[13] that the LOR

was never filed in the plaintiff's Official Military Personnel File ("OMPF") [**FALSE**] and

misstates the sealed statement of SFC Marian Barry in which he erroneously states that

*"[no] letter of reprimand is filed in 1LT Vaughan's OMPF."* The addendum[14] of the

defendants gives reasons as to why the AUSA made arguably intentional misstatements

---

[13] See Motion to Dismiss Doc No 14-1 Page 9.
[14] See Amended Document, Doc No 19.

**A - 92**

and why the LOR was removed from the plaintiff's Official Military Personnel File after it had been in the plaintiff's file for over two years as it [sic] violated Army Regulations.

This entire case is explicitly about the defendants violating Army Regulations and the plaintiff's procedural due process rights and the plaintiff finds it laughable that the defendants have [again] openly engaged in violating an automatic litigation hold on documents arguably relevant to the underlying cause of action of the plaintiff in this federal lawsuit. With great alacrity, the defendants make the bold statement that because the Letter of Reprimand is not part of the plaintiff's Official Military Personnel File…that ostensibly this does not *"Determine Plaintiff's Rights or Obligations…"* and *"…not a decision from which permanent legal consequences will flow"*. Aside from the intentional spoliation of the evidence that was nothing less than a blatant attempt to effect the subject matter jurisdiction and justiciability of this court regarding this case, the defendants explicitly stated as fact that the LOR was never part of the plaintiff's Official Military Personnel File, intentionally misstated the then sealed statement of SFC Marian Barry that the LOR was not in the plaintiff's OMPF is yet another example of the defendant's bad faith conduct.

However, the plaintiff argues that being relieved from his leadership position as the 207th EN CO Platoon leader, the subsequent relief for cause/referred officer evaluation report, the Letter of Reprimand, and the suspension of the plaintiff's security clearance in September of 2009 are the culmination of the agency's decision making

**A - 93**

Case: 3:15-cv-00006-GFVT Doc Doc #: 22-3 Filed: 09/18/15 Page: 96 of 136 - Page
ID#: 317
Case: 3:12-cv-00039-DCR Doc #: 27-1 Filed: 08/31/12 Page: 17 of 29 - Page ID#: 673

process as it has dramatically affected the plaintiff in both his civilian and military

capacities. Currently the plaintiff has not been able to be promoted for over three years

due to the affirmative misconduct of the defendants. Furthermore, the plaintiff is

unemployed due to the bad faith actions that resulted in the suspension of his security

clearance; to wit, the plaintiff is unable to get a job in his chosen line of work as he was

denied the right to rebut the AR 15-6 ROI. The final actions taken against the plaintiff

by the defendants in clear violation of his procedural rights have dramatically harmed

the plaintiff in this action.

## THE AR 15-6 REPORT OF INVESTIGATION AS IT RELATES TO
## THE SUSPENSION OF THE PLAINTIFF'S SECRET SECURITY CLEARANCE

The AR 15-6 Report of Investigation was ostensibly used to have the plaintiff's

Secret Security Clearance suspended. However, what the defendants conveniently left

out of their Motion to Dismiss was that that the plaintiff's Secret Security Clearance was

suspended based on an AR 15-6 Report of Investigation that the plaintiff was willfully

and intentionally denied the opportunity to rebut. Furthermore, the national (CCF)

suspension was based on a fraudulent memorandum[15] submitted by the plaintiff's

current Battalion Commander, LTC Dean Gosney.

Pertinently, in the memorandum requesting the revocation of 1LT Michael

Vaughan's Secret Security clearance submitted by LTC Dean Gosney on 22FEB2012,

---

[15] Attached as Exhibit "F". Also attached to this is the missing page from the
R 15-6 ROI as filed with this court in Vaughan V. Brigham Doc 35-2.

fits the explicit definition of 'Affirmative Misconduct' required for Equitable Estoppel against the Government.

Attached[11] is the memorandum signed by LTC Jerry Morrison in which he explicitly recommends all of the adverse action(s) based on the AR 15-6 Report of Investigation that the AUSA states that the relief of the plaintiff from his leadership position, the letter of reprimand, the relief for cause/referred OER, and the continued suspension of the plaintiff's security clearance really are not based upon. These signed official military documents link with finality the multitude of adverse actions taken against the plaintiff with the AR 15-6 Report of Investigation. Also attached[12], is the memorandum by LTC Jerry Morrison requesting the Withdrawal of Federal Recognition Board based on the AR 15-6 Report of Investigation, and the Relief for Cause/Referred OER, and the Letter of Reprimand.

## THE AR 15-6 REPORT OF INVESTIGATION AS IT RELATES TO THE LETTER OF REPRIMAND ("LOR")

The Letter of Reprimand that the plaintiff received was also based on the contested AR 15-6 ROI in which the plaintiff was accorded specific procedural rights regardless of the filing location of the LOR. Specifically, the defendants violated AR 600-37 in not providing the plaintiff the AR 15-6 ROI on which the Letter of Reprimand

---

[11] Attached with Exhibit "E". This memorandum also requests that the Letter of Reprimand be filed in the plaintiff's OMPF.
[12] Also attached with Exhibit "E".

paragraph 1(a) states: *"A formal investigation completed in September of 2009 found 1LT Vaughan guilty of conduct unbecoming an officer (see encl)."* However, there never was a formal investigation. However, as submitted by the AUSA in his Motion to Quash and as outlined above, from August 13th 2009-August 18th, 2009 there was only an informal AR 15-6 Investigation that involved the plaintiff. Though, the investigating officer made the initial recommendation that the plaintiff should be found to have committed conduct unbecoming an officer, the appointing officer for the AR 15-6 Report of Investigation explicitly **non-concurred** with this recommendation.

## THE AR 15-6 REPORT OF INVESTIGATION AS IT RELATES TO THE WITHDRAWAL OF FEDERAL RECOGNITION BOARD HELD ON JULY 9th 2011 ("WOFR BOARD")

The contested AR 15-6 Report of Investigation and the subsequent relief for cause/referred OER and the Letter of Reprimand were the reasons why a board was convened to determine if the plaintiff's Federal Recognition as a commissioned officer should be withdrawn on July 9th, 2011. Aside from being denied the opportunity to be represented by TDS military counsel[16] at the WOFR board hearing due to the misconduct of the defendants, the defendant's, [again] arbitrarily and capriciously denied the plaintiff the opportunity to rebut the AR 15-6 Report of Investigation at the WOFR Board hearing held on July 9th, 2011. Evidence of this affirmative misconduct was explicitly withheld from this court and the plaintiff as the defendants in collusion

---

[16] See attached WOFR Rebuttal Memorandums attached with Exhibit "G".

**A - 96**

with the National Guard Bureau [See KY E.D. Case No. 3:12-CV-34] were refusing to turn over the "edited" transcript and the <u>unedited</u> audio from the WOFR Board Hearing that the plaintiff requested via a FOIA/Privacy Act Request. However, the defendant's required the plaintiff in this action to agree to dismiss with prejudice the FOIA/Privacy Action 3:12-CV-34 in order to get the documents and the unedited audio from the Withdrawal of Federal Recognition Board Hearing held on July 9th, 2011.

Pertinently, LTC Dylan Seitz states in his opening statement of the WOFR Board hearing held on July 9th, 2011 that ***"First Army has already decided that the investigation was legally sufficient and that he had an adulterous relationship with a woman not his wife, and that he harassed her after she attempted to end that relationship."*[Emphasis Added]** . The below excerpt is from the unedited audio recording file vaughan3r as turned over to the plaintiff by the defendants of the withdrawal of federal recognition board hearing held on July 9th, 2011.

> <u>*Plaintiff Title: "LTC Dylan Seitz Opening Statement"*[17]</u>
>
> ***LTC Dylan Seitz:** In the memorandum that Lieutenant Vaughan received signed by Lieutenant General Miller, the first paragraph states unequivocally, specifically, "<u>You had an adulterous relationship with a woman not your wife and an AR 15-6 investigation found that you harassed this woman after the relationship ended. Your actions negatively affected the good order and discipline of the Kentucky National Guard.</u>"*

---

[17] The pertinent transcripts referenced throughout the rest of the document with regard to the WOFR Board Hearing are attached with Exhibit "H", which also has copies of the relevant audio files as turned over to the plaintiff by the defendant's in 3:12-CV-34.

Case: 3:15-cv-00306-CRV Doc #: 22-3 Filed: 09/18/15 Page: 100 of 126 PageID#: 97
Case: 3:12-cv-00035-DCR Doc #: 27-12 Filed: 08/31/12 Page: 236 of 290 Page ID#: 97
ID#: 321

*It didn't say, "You have been accused." It didn't say, "We believe." It said unequivocally, "You had."* <u>**The reason why it is in those terms is that has already been decided**</u>. *That's why the burden is not on the government to prove anything in this case.*

<u>***First Army has already decided that the investigation was legally sufficient and that he had an adulterous relationship with a woman not his wife, and that he harassed her after she attempted to end that relationship.[Emphasis Added]***</u>

*What Lieutenant Vaughan's role is here is to show why his actions would be justified. Why his actions wouldn't constitute conduct unbecoming. Why his actions wouldn't constitute moral turpitude. Not whether or not the actions happened, but what was his rationale for doing it?*

*I would also remind the board, too, of the appointment order that each of you all received. This was signed by Lieutenant General Bednarek.*

*He states to each one of you all who are named here at the very first paragraph, "A board of officers is hereby appointed to determine whether Lieutenant Vaughan should have his federal recognition withdrawn for moral or professional dereliction in according with NGR 635-101, Paragraph 9." The important part, specifically, "He had an adulterous relationship with a woman not his wife and an AR 15-6 investigation found that he harassed this woman after the relationship ended."*

*Again, this is not to be in question and this isn't what this board is going to be debating on. Now, the burden of proof is also referenced in Lt. General Bednarek's memorandum to each one of you. It says at the end:*

<u>***"Accordingly, the burden of proof rests with the officer to produce convincing evidence that their federal recognition should not be withdrawn."***</u>

During deliberations of the WOFR Board, the president of the board of officers had a question. That discussion is pertinently excerpted below from audio

**A - 98**

recording vaughan7r;

<u>*Plaintiff Title: "**Board Deliberation Question**"*</u>

**COL JEFFERY MISER:** *That's my question. Am I judging or coming to a conclusion that he did commit these acts? Because that's not what the recorder [LTC Dylan Seitz] said. He's saying he's done these acts.*

**LTC JOHN K. MILLS:** *First Army has already made a finding that he committed the acts.*

**COL JEFFERY MISER:** *I got that. But what is my determination? If First Army has already concluded he's done these acts, what am I judging?*

**LTC JOHN K. MILLS:** *You're judging whether or not he now has shown cause as why he should remain an officer in The United States of America.*

**COL JEFFERY MISER:** *So I am not judging whether I believe him or don't believe that he did this, and I am not judging whether he provided me any proof that he didn't do this. My job, you're telling me, is he's done it. The army says he's done it. I'm just determining since he did do it, we determine if he stays in the army or not.*

**LTC JOHN K. MILLS:** *I believe that's pretty much correct, sir.*

**COL JEFFERY MISER:** *I need to know...*

**LTC JOHN K. MILLS:** *The First Army [inaudible 01:35] . The First Army has made the determination he did these acts. You are judging whether or not those acts constitute any of these things listed under moral and professional dereliction. Given the fact he did this, does this constitute anything involved in that list? I don't mean he already constituted the three highlighted ones.*

**COL JEFFERY MISER:** *[inaudible 01:58] .*

**LTC Dylan Seitz:** *And they accepted it.*

**A - 99**

**LTC JOHN K. MILLS** : *They accepted what you said [inaudible 02:11] . [crosstalk]*
**[Plaintiff's Note,** *the 'gist' of the 'crosstalk' involved 1LT Michael Vaughan angrily arguing that he had never been accorded the right to rebut the AR 15-6 Investigation..]*

**COL JEFFERY MISER:** *It's not going to give contention. I'm just...here's what I'm looking at. What's my authority? What is the authority of this panel? That's all I care about. You know what I'm saying? What I'm hearing is the Army has concluded that Lt. Vaughan has harassed this individual, has concluded that Lt. Vaughan committed adultery. What I'm hearing now is we're not voting guilty/not guilty. We're voting is adultery... [inaudible...]*

Furthermore, the WOFR board decision and findings are pertinently excerpted below from audio recording vaughan8r as presented to the plaintiff by the defendants;

### Plaintiff Title: "WOFR Board Decision"

*[inaudible conversation]*
**LTC Dylan Seitz:** *[2:00] OK. This hearing will come to order. Let the record reflect that Lieutenant Colonel White, Colonel Mizer, Lieutenant Colonel Riddle, Col. Harris and Lieutenant Colonel Mills and Lieutenant Vaughan are present.*

**COL JEFFERY MISER:** *[2:22] OK. The process, as I see it, is that this time the Board, through me, needs to announce its findings and recommendations. After announcing verbally those findings and recommendations, this Board will be concluded.*

**LTC JOHN K. MILLS:** *[2:37] Yes, Sir.*

**COL JEFFERY MISER:** *[2:38] OK. All right. After deliberation, Lieutenant Vaughan, you will today be told the verbal findings and recommendations of this board. That will be followed up with written findings, with specifics regarding the findings of this board. Correct?*

**LTC JOHN K. MILLS:** *[2:58] That is correct, Sir.*

**A - 100**

*COL JEFFERY MISER:* *[2:59] OK. The board has deliberated and it will be the findings and recommendations of this board that your federal recognition be withdrawn. That concludes this board. Correct?*

*LTC JOHN K. MILLS: [3:17] Unless...the only thing is you are saying followed up in written findings.*

*COL JEFFERY MISER:* *[3:27] Written findings.*

*LTC JOHN K. MILLS: [3:27] Findings of fact?*

*COL JEFFERY MISER:* *[3:28] Exactly.*

*LTC Dylan Seitz: [3:29] OK.*

*LTC Dylan Seitz: [3:31] Yes sir. What we will do is we will prepare the specific findings regarding each allegation. Probably appropriate for you to address the two allegations and which of the allegations are supported and which of the... [crosstalk]*

*COL JEFFERY MISER: [3:55] Well, the allegations -- and that's why I brought everyone back in -- __it was not this board to determine whether Lieutenant Vaughan did not commit adultery or did not do harassment.__ That's not the purpose of the board. [4:13] The purpose of this board was for Lieutenant Vaughan to give evidence that he did not do, for those two accusation[18]s.*

*COL JEFFERY MISER: [4:22] It is important to show cause why... [crosstalk]*

---

[18] The accusations that; "He had an [**1**]adulterous relationship with a woman not his wife and [**2**] an AR 15 6 investigation found that he harassed this woman after the relationship ended." Plaintiff was denied the opportunity to rebut the very basis of these two allegations, IE: the AR 15-6 that encompassed these base allegations.  As LTC Mills the legal adviser instructed during the board and the board president during board deliberations; "**LTC JOHN K. MILLS:** The First Army [inaudible 01:35]. The First Army has made the determination he did these acts. You are judging whether or not those acts constitute any of these things listed under moral and professional dereliction. Given the fact he did this, does this constitute anything involved in that list?"

**COL JEFFERY MISER:** *[4:26] But the first thing is, the burden of proof was for Lieutenant Vaughn to show that, first of all, he did not do those. Or that if he did do them, there was reason that he remain with his federal recognition.*

**LTC JOHN K. MILLS:** *[4:42] Just as an example to that latter point, sir, could you just -- for instance, a soldier who admits to using drugs in violation of the regulations. However they come in and provide, they admit to it and provide proof, they've gone to rehabilitation. They [inaudible 05:01] service record, otherwise they're showing other causes why. Even though they've done the drugs and they did testify, they're worthy of being kept in [inaudible 05:14] . That's just an example.*

**COL JEFFERY MISER:** *[5:15] I got you. But this is what I'm going to do. I have given the verbal recommendation of findings of the board and I'm just going to stop at that. They will be submitted in writing and presented to Lieutenant Vaughan.*

**LTC Dylan Seitz:** *[5:28] Yes sir. You and the other members will have an opportunity to view those and sign off on them.*

**LTC JOHN K. MILLS:** *[5:34] We're going to explain exactly what the findings and conclusions are.*

**LTC Dylan Seitz:** *[5:38] OK.*

**LTC JOHN K. MILLS:** *[5:39] All right. Thank you. Thank you. [inaudible background conversation]*

**1LT Michael Vaughan:** *[5:54] Mr. President, will I be able to get a copy of the transcript for these proceedings, sir?*

**LTC Dylan Seitz:** *[5:57] Yes. Defense is entitled to a copy of the transcript and all the evidence as part of the certification of record and be allowed to make any comments regarding any received [indecipherable 06:08] .*

**1LT Michael Vaughan:** *[6:11] OK.*

**A - 102**

*LTC JOHN K. MILLS:* *[6:19] Sir, we should probably also make sure that all these copies of this material are hand delivered.*

*COL JEFFERY MISER:* *[6:25] And I would like to clear the boardroom at this time, with the exception of you. OK?*

*LTC Dylan Seitz:* *[6:30] Yes sir.*

*COL JEFFERY MISER:* *[6:31] All right.*

The Withdrawal of Federal Recognition Board Hearing explicitly gave 'Res Judicata' effect to the contested AR 15-6 Report of Investigation that contained the allegations of adultery. Furthermore, the plaintiff specifically alleges that the defendants have again misstated the record by stating as fact that no 'findings of fact' were made. The record was clear that findings of fact were made contrary to the assertions of (3 Star) Lieutenant General Bednarek and his deputy Chief of Staff, COL Shane M. Deverill. Specifically, the board president stated "*COL JEFFERY MISER:* *[3:55] Well, the allegations -- and that's why I brought everyone back in -- it was not this board to determine whether Lieutenant Vaughan did not commit adultery or did not do harassment. That's not the purpose of the board. [4:13] The purpose of this board was for Lieutenant Vaughan to give evidence that he did not do, for those two accusations[19].*" IE: that the plaintiff failed to justify his actions and thus show cause as to why he should retain

---

[19] The accusations that; "He had an [1] adulterous relationship with a woman not his wife and [2] an AR 15 6 investigation found that he harassed this woman after the relationship ended." Plaintiff was denied the opportunity to rebut the very basis of these two allegations, IE: the AR 15-6 that encompassed these base allegations.

**A - 103**

his commission. Findings of fact were made, but the defendant's are again trying to hide their misconduct of [again] denying the plaintiff the opportunity to rebut the AR 15-6 ROI. The very same AR 15-6 Report of Investigation that the defendants admit that the plaintiff was denied the opportunity to rebut.

Plaintiff 1LT Vaughan states that any use of the AR 15-6 Report of Investigation constitutes a violation of the substantive due process rights accorded to the plaintiff by Army Regulations, the administrative procedure act, and the fifth an fourteenth amendments of the U.S. Constitution as he was and has been intentionally denied the right to rebut the AR 15-6 ROI and after three years and after final action has long been taken against the plaintiff is arguably far too late to happen now.

It is also the plaintiff's contention that no adverse action can ever be taken against the plaintiff based on the AR 15-6 Report of Investigation [or the evidence contained therein] as the plaintiff was explicitly and intentionally denied his procedural rights. It is also the plaintiff's contention that **ALL** adverse actions taken against him based on the AR 15-6 Report of Investigation to date were improper.

## IV.    CONCLUSION

This case is ultimately very simple...was 1LT Vaughan supposed to have been given the opportunity to rebut the AR 15-6 Report of Investigation?  Army Regulation 15-6 PARA 1-9 (c), Army Regulation 623-105 PARA 3-50(a), Army Regulation 623-3 PARA 3–58 (2007 Version), and Army Regulation 600-37 PARA 3-2 explicitly show that

**A - 104**

he was indeed supposed to have been given that right <u>prior to</u> adverse action being taken against him. Prior to him being relieved as a platoon leader, prior to his being given a relief for cause/referred officer evaluation report, prior to 1LT Vaughan having a Letter of Reprimand based on the AR 15-6 ROI placed into his Official Military Personnel File.

However, this procedural right was willfully, intentionally, arbitrarily, and capriciously denied prior to final action being taken despite Army Regulations mandating it. The question then revolves around why? The plaintiff explains that on February 16th, 2010, the plaintiff filed his lawsuit 'Vaughan v. Brigham 3:10-CV-5' and immediately notified the defendants of his filing that specific action and simultaneously his intent to file suit against COL Rodney Hayes due to his tortuous actions against the plaintiff in his civilian capacity as a civilian contractor for RAM Inc. That very same day, the Relief for Cause/Referred OER and Letter of Reprimand Documents were created by LTC Jerry Morrison. Plaintiff states that the true purpose of the defendants is to protect COL Rodney Hayes by any means necessary that included interfering in civil litigation with Privacy Act Violation(s) [<u>that included incomplete documents that failed to show that the appointing officer had non-concurred with the finding of conduct unbecoming an officer..</u>], intentional spoliation of evidence, lying to this court, intentional denial of documents to the plaintiff he was entitled to [KY E.D.: 3:12-CV-34, and 3:10-CV-5 (Subpoena Duces Tecum)], and blatantly lying to other federal agencies

to attack the plaintiff's security clearance in order to discredit & materially harm the plaintiff in this action.

Again, the question before the court ultimately is; 'Was 1LT Michael Vaughan supposed to have been accorded the right to rebut the AR 15-6 Report of Investigation prior to adverse action being taken?' Everything else falls into place once that obvious answer is decided by this court who ultimately is the guardian of military due process of which the plaintiff was explicitly and intentionally denied.

**Wherefore,** plaintiff 1LT Michael Vaughan respectfully requests that this court deny the defendant's Motion to Dismiss.

Dated: August 31st, 2012

Respectfully submitted,

BY:

MICHAEL DEAN VAUGHAN
Plaintiff (*PRO SE*)
2010 Scott Blvd.
Covington, KY 41014
(513) 365-8080
mvaughan@kyguardgonewild.com

**A - 106**

**United States District Court**
**Eastern District of Kentucky**
**(Frankfort Division)**

| | |
|---|---|
| 1LT Michael Dean Vaughan ) | |
| 2010 Scott BLVD. ) | |
| Covington, KY 41014 ) | |
| *Plaintiff*, ) | Case No.: 3:12-cv-00035-DCR |
| ) | Judge: Danny Reeves |
| vs. ) | |
| ) | |
| KY Army National Guard ) | |
| 100 Minuteman PKWY ) | |
| Frankfort, KY 40601 ) | |
| ) | |
| AND ) | |
| ) | |
| United States Department of the Army ) | |
| 1400 Defense Pentagon ) | |
| Washington DC 20301-1400 ) | |
| ) | |
| *Defendant(s)* ) | |

## PROPOSED ORDER

Upon the plaintiff's Response in Opposition to the Defendant's Motion to Dismiss filed

by Plaintiff 1LT Michael Vaughan, the Court having considered the arguments and memoranda

of the parties, and being otherwise duly and sufficiently advised;

**IT IS HEREBY ORDERED AND ADJUDGED** that the defendant's Motion to Dismiss is

denied.

A 107

Case: 3:15-cv-00006-GFVT Doc #: 1-22-3 Filed: 07/03/12 09/18/15 Page: 1 of 27 1 of 136 Page ID#: 331 Page ID#: 271

**Eastern District of Kentucky**
**F I L E D**

**JUL -3 2012**

AT COVINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

**United States District Court**
**Eastern District of Kentucky**
**(Frankfort Division)**

| | |
|---|---|
| 1LT Michael Dean Vaughan<br>2010 Scott BLVD.<br>Covington, KY 41014<br><br>*Plaintiff,*<br>vs.<br><br>KY Army National Guard<br>100 Minuteman PKWY<br>Frankfort, KY 40601<br><br>AND<br><br>United States Department of the Army<br>1400 Defense Pentagon<br>Washington DC 20301-1400<br><br>*Defendant(s)* | Case No.: No. [3:12-cv-00035]<br><br>Judge: Danny C. Reeves<br>Magistrate: |

"The opportunity to secure ourselves against defeat lies in our own hands,
but the opportunity of defeating the enemy is provided by the enemy himself."
-Sun Tzu (The Art of War)

## FIRST AMENDED COMPLAINT FOR
## DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, First Lieutenant Michael Vaughan ("plaintiff" or "1LT Vaughan") brings this

action for declaratory, injunctive, and other appropriate relief pursuant to 42 U.S.C § 1983, the

Administrative Procedure Act, 5 U.S.C. § 701, et. seq., as amended, and the Federal Declaratory

Judgment Act, 28 U.S.C. § 2201, KRS 35.220, and in order to redress deprivation, under color

of law, of rights, privileges, and immunities secured to the plaintiff by the Fifth and Fourteenth

Amendments to the United States Constitution.

**A - 108**

## JURISDICTION

1. Subject matter jurisdiction over this action is conferred by 28 U.S.C. § 1331 and 41 U.S.C. §§1983 and 1988. This action presents federal questions pursuant to the Administrative Procedure Act, 5 U.S.C. § 701, et. Seq. This Court has personal jurisdiction over the parties pursuant to 5 U.S.C. § 702 & 28 U.S.C. § 1331.

## VENUE

2. Venue lies in this district under 28 U.S.C. §1391(e). Relief may be awarded pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 703 and 706, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the All-Writs Act, 28 U.S.C. § 1651.

## PARTIES

3. Plaintiff is a Decorated Army National Guard Engineer Officer who was mobilized from March 1st, 2008 to March 22nd, 2009. He deployed to Afghanistan to support the NATO/ISAF Mission as part of Operation Enduring Freedom. Prior to this, he served for four years of combined reserve and active duty in a variety of assignments. Currently, he serves as the M-Day/part-time Executive Officer, HSC 201st EN BN, KY Army National Guard. This case is being brought in his military capacity.

4. Defendant KY Army National Guard is a sub-entity of the Defendant U.S. Department of the Army

5. Defendant U.S. Dept. of the U.S. Army is a sub-entity of the Department of Defense.

**A - 109**

## FACTUAL BACKGROUND

6.  On August 12th, 2009 at 2:57 PM (EST) Mary Elizabeth Kounovsky (Brigham/Goad) contacted via e-mail the KY Army National Guard stating she had a complaint to file

7.  On August 13th, 2009 at 05:44 AM (EST), LTC Jerry Morrison sent an e-mail to LTC Dylan Seitz, Staff Judge Advocate General for the KY Army National Guard. In this e-mail he states *"Dylan, You want me and MAJ Richmond to refer every case and Article 15 to an Mday Jag. We as a State cannot afford to wait 3 drill weekends to do a reading, assign counsel, make elections, and finally conduct and Article 15 or the KCMJ version. We have no damn bite. We do an administrative reduction so we don't have to deal with the legal. I think it is BS. Please call me."* This e-mail was CCed to MAJ James Richmond who was to shortly become the AR 15-6 Investigation Officer. MAJ Richmond was just informed what LTC Jerry Morrison's desired end state was for the AR 15-6 investigation.

8.  On August 13th, 2009 an informal Army Regulation 15-6 ("AR 15-6") investigation was initiated by LTC Jerry Morrison by the appointment of MAJ James Richmond as an investigating officer to perform an informal investigation pertaining to the [alleged] harassment of Ms. Kounovsky by the Plaintiff. Also note that LTC Dylan Seitz became the Servicing Judge Advocate for this AR 15-6 Investigation at this time.

**A - 110**

9. On August 15th, 2009, the Investigating Officer MAJ James B. Richmond ordered plaintiff Vaughan to do a sworn statement while the plaintiff was provably under the influence of narcotics and opiates administered to him at a hospital in the presence of the state command chaplain (MAJ Draper), his assistant (SPC Cloyd Rodkey), and a combat medic (SPC Joshua Sallee). These drugs affected the statement's truthfulness in violation of AR 15-6 PARA 3-7 (6). Moreover, MAJ Richmond failed to read the plaintiff his rights as required by AR 15-6 PARA 3-7 (5)(D) nor was a DA Form 3881 (Rights Warning Procedure / Waiver Certificate) filled out and filed with the AR 15-6 Report of Proceedings as required. Furthermore, a memorandum of legal sufficiency was never created or filed with the AR 15-6 Report of Proceedings as required by Army Regulation 15-6 PARA 2-3(b) which pertinently states as follows;

> "The appointing authority will also seek legal review of all cases involving serious or complex matters, such as where the incident being investigated has resulted in death or serious bodily injury, <u>or where the findings and recommendations may result in adverse administrative action</u> (see para 1–9), or will be relied upon in actions by higher headquarters. The JA's review will determine—
>
>> (1) Whether the proceedings comply with legal requirements.
>> (2) What effects any errors would have.
>> (3) Whether sufficient evidence supports the findings of the investigation or board or those substituted or added by the appointing authority (see para 3–10b).
>> (4) Whether the recommendations are consistent with the findings."

**A - 111**

As the plaintiff was never accorded the right to rebut the AR 15-6 Report of
Proceedings as outlined in the below paragraphs, it would have been impossible to
generate a memorandum of legal sufficiency as required.

10. On August 17th, 2009, the Thurston County Sherriff's Office in Olympia, WA opened
an investigation into purported misdemeanor crimes committed against Mary
Kounovsky/Brigham. The Thurston County Sherriff's Case number is: 09-5046.

   a. The crimes alleged were;
      i. Cyberstalking pursuant to RCW 9.61.260 (misdemeanor)
      ii. Harassment pursuant to RCW 9a.46.020 (misdemeanor)

   b. On November 12th, 2009, Detective Michael Hirte applied for and was granted
   a search warrant for records relating to a MySpace page of friend #495441909
   that Mary Kounovsky alleged was 'secretly' 1LT Vaughan's. The warrant was
   authorized by the Honorable Judge Hirsh of the Thurston County Superior
   Court and served to the custodian of records of MySpace.com the very same
   day.

      i. On November 18th, 2009, Detective Michael Hirte received a return
      from MySpace as it relates to the content of the MySpace page of friend
      #495441909. The page had 11 Photos of Mary Kounovsky of which 10
      were considered pornographic.

      ii. MySpace also provided Detective Hirte the IP address during the
      initial page construction and any additional logons to that account.

         1. That IP Address was 75.145.247.49.
         2. No other IP Addresses were noted.
         3. Page setup was on August 22nd, 2009 at 0709 pacific.
         4. Detective Hirte researched the IP and noted it was registered to
         Comcast Cable Communications.

   c. On November 30th, 2009, Detective Hirte was issued a Subpoena Duces
   Tecum for the subscriber information related to 75.145.247.49. The Subponea
   Duces Tecum was authorized by the Honorable Judge Hirsh of the Thurston

**A - 112**

County Superior Court and served to the Custodian of Records for Comcast Cable Communications

    i.  On December 3rd, 2009, Detective Michael Hirte received a return from Comcast Cable Communications. It indicated that the IP Address at the suspect time belonged to the Comfort Inn and Suites located at 100 Wildwood Road in Salem Virginia.

    ii.  After inquiring as to if Michael Vaughan had stayed at the Hotel anytime between August 20th, 2009 and August 25th, 2009, Detective Hirte received a negative response.

    iii.  On information and belief, 1LT Vaughan notes that this address is within a very short distance (a mile or so) of the complainant's Mary Kounovsky's and her ex: husband's residence where they purportedly lived for some time.

d.  On November 10th, 2009, Detective Hirte applied for and received a Search Warrant related to two yahoo e-mail accounts that Mary Kounovsky alleged were 'secretly' 1LT Vaughan's. The warrant was authorized by the Honorable Judge Hirsh of the Thurston County Superior Court and served to the Custodian of Records at Yahoo.com.

e.  On November 20th, 2009, Detective Hirte received a return from Yahoo.com.

    i.  Out of the 2 accounts, only one still existed that of gliddy19802@yahoo.com. The other account had been deleted due to a complaint prior to the warrant.

    ii.  The subscriber information stated that the user was Indonesian and a check of the IP addresses showed locations ranging from Indonesia, Germany, Italy, Nigeria, and the U.S.

During the investigation Detective Michael Hirte was in contact with COL Rodney Hayes who stated after he had conducted an "investigation", that COL Rodney Hayes had "terminated him [1LT Vaughan]" and most distressing of all to 1LT Vaughan that he [COL Rodney Hayes] had contacted 1LT Vaughan's wife and informed her that not

**A - 113**

only that he had been terminated, but also the reasons why. These actions are now

currently being litigated as KY E.D. 3:10-CV-54, Vaughan v. Hayes.

11. The final paragraph in Detective Michael Hirte's December 31st, 2009 report was that

he recommended that the case be suspended as *"Search warrants for the relevant data*

*did not reveal a solid suspect and no further contacts were reported by [Mary Kounovsky]."*

12. In a follow up Supplemental Report dated March 27th, 2012 Detective Michael Hirte
states as follow;

    a. *"On August 17th, 2009, I conducted an investigation of a harassment that was
reported by [Mary Kounovsky/Brigham]. During the course of the initial
investigation multiple search warrants were obtained and executed for records. I was
not able to ascertain a positive suspect and recommended the case as suspended. In
January 2010 I was made aware of a military investigation involving the possible
suspect [1LT Vaughan] and statements were obtained. The KYNG/JAG office has not
sent additional documentation and I recommend case suspension. Nothing Further."*

    b. A follow up phone call by the plaintiff to Detective Hirte on March 27th, 2012
revealed that LTC Dylan Seitz had sent a copy of the 15-6 Report of
Investigation/Proceedings to Detective Hirte without receiving a written
request for the records.

    c. Detective Hirte had sent to 1LT Vaughan in this action, the investigative case
file and documentation confirming that the only reason the criminal case had
been taken out of a suspended status on ~January 22nd, 2010 was due to the
egregious Privacy Act violation of the KY Army National Guard.

13. This investigation by Thurston County is exculpatory as it demonstrates absolutely

no link to any allegations made by Mary Kounovsky in the AR 15-6 Report of

Proceedings, to the plaintiff in this action or any link to any 'misconduct'

purportedly perpetrated by the plaintiff. No evidence linking the plaintiff to any

email addresses 'secretly' supposedly the plaintiffs was found after multiple search

**A - 114**

warrants were executed.  No evidence pointing to the plaintiff as being the person responsible for uploading pornographic images of Mary Kounovsky to a website was discovered. However, evidence was found pointing to a location only a mile or so from Mary Kounovsky's ex. husband's residence and Mary's former residence that she admittedly still visits to see friends and family. No evidence was discovered pointing to the plaintiff ever using gliddy19802@yahoo.com after Detective Hirte executed multiple search warrants. Nor was the plaintiff ever identified as a "suspect" contrary to LTC Seitz's assertions in his Motion to Quash in KY E.D. Case No. 3:10-CV-5, Doc No 35.

14. On August 18th, 2009, at 1500 (3PM), MAJ James Richmond concluded his AR 15-6 investigation and a Report of Investigation/Proceedings was completed.

15. From August 2005-August of 2009 1LT Vaughan worked as a civilian for a Civilian Company Called R.A.M. Inc.  This company was contracted to work in the KY ARNG J6 Building that was commanded by COL Rodney Hayes. On August 18th, 2009 at 1:30PM, 1LT Vaughan [In His Civilian Capacity at all times during this meeting] attended a meeting held by COL Rodney Hayes regarding a complaint from a woman by the name of Mary E. Kounovsky/Brigham regarding 1LT Michael Vaughan.
   a. Prior to the start of the meeting, 1LT Vaughan observed COL Rodney Hayes test and subsequently retest an audio recorder.
   b. At the beginning of the  meeting COL Rodney Hayes stated to all present that;
        i. the meeting was not a trial, nor was it a disciplinary hearing.  That 1LT Vaughan would not be accorded Defense Counsel, nor could he rebut anything said during the meeting and he had no recourse to appeal anything said during the meeting. He was neither allowed to make a statement NOR tell his side of the story period.
   c. During this same meeting COL Rodney  Hayes also **stated as fact** during the meeting to all present;

**A - 115**

    i.   that 1LT Vaughan had used 4 e-mail accounts [separate personas] to harass his 'mistress,  a woman named Mary Kounovsky/Brigham.

    ii.   that 1LT Vaughan had, among other things, published to websites and distributed thru email pornographic photographs and video of Mary Kounovsky/Brigham in an attempt to embarrass, discredit, traumatize, and "exact revenge" that he could of his 'Mistress.

    iii.   That there was an ongoing criminal investigation but refused to tell that 1LT Vaughan anything other than it was in Washington State.

d. During this same meeting COL Rodney Hayes also showed 1LT Vaughan a picture of him with Mary Kounovsky/Brigham. When 1LT Vaughan affirmed that it was him in the image, COL Rodney Hayes muttered under his breath "adulterer".

e. During this meeting, COL Rodney Hayes was visibly outraged that 1LT Vaughan had purportedly "committed adultery" and repeated this several times during this meeting. Referring to 1LT Vaughan as 'immoral' and obviously lacking in "common decency".

f. Specifically COL Rodney Hayes stated as fact that that 1LT Vaughan lacked 'common decency' and any type of moral standards especially as to his committing adultery with his purported 'mistress and that 1LT Vaughan had "long since ago discontinued any regard for your family..."

g. During the same meeting COL Rodney Hayes specifically advised 1LT Vaughan that he was barred from the J6 building and had 1LT Vaughan summarily escorted off Boone National Guard Center.

h. However, on July 9th 2011, at a Board to Withdraw 1LT Vaughan's Federal Recognition as an Officer based in the contested AR 15-6 Report of Proceedings, COL Rodney Hayes amazingly stated that;

    i.   a. he had conducted an investigation;

    ii.   b. he found no incriminating evidence on any government machine that corroborated Mary Kounovsky's allegations;

    iii.   that he had not been in contact with anyone with the Thurston County Sherriff's Office since August of 2009 and;

    iv.   no one else in his office had been in contact with the Thurston County Sherriff's Office since August of 2009.

i. When 1LT Vaughan filed FOIA/Privacy Act requests for this exculpatory testimony and the records and recordings in the Board Hearing for rebuttal purposes, it was summarily denied.  This FOIA/Privacy Act denial is now the subject of yet another Federal Lawsuit; DC Federal Case No. 1:12-CV-00476.

**A - 116**

16. This testimony of COL Rodney Hayes was evidence of an exculpatory investigation that had been explicitly hidden not only from 1LT Vaughan, but from the Honorable Danny Reeves, presiding in case no. 3:10-CV-5 in the E.D. of KY.

17. On September 20th, 2009, during a 3 day drill weekend, the plaintiff was told he was being relieved from command and transferred back to the 201st EN BN HSC into the S3 (Operations) shop. Effective October 2009 he began to drill with the 201st EN BN HSC. Plaintiff Vaughan being relieved of command [in his military capacity] has explicit due process requirements as outlined in Army Regulation 15-6 PARA 1-9 (c), Army Regulation 623-105 PARA 3-50, and Army Regulation 623-3 PARA 3–58. These Army regulations are excerpted in following paragraphs with specificity.

18. Plaintiff Vaughan sent via e-mail on September 23rd, 2009, and also sent via certified/return receipt requested USPS mail on September 28th, 2009, three Memorandums to LTC Jerry Morrison. One memorandum requested the 15-6 Report of Investigation so he could rebut it, the second memorandum requested Army Trial Defense Counsel (TDS), and the last memorandum regarded plaintiff Vaughan withdrawing his sworn statement as he had been ordered to submit to it while provably under the influence of Narcotics and Opiates and that he barely remembered writing it.

19. On September 24th, 2009, 1LT Vaughan submitted a FOIA/Privacy Act request to the KY Army National Guard for the recording made of the meeting between COL

**A - 117**

Hayes and 1LT Vaughan [Civilian Capacity]. He also requested additional records pertaining to the meeting with COL Rodney Hayes held on August 18th, 2009 and pertaining to his investigation and its findings. The response was that "...*a recording was attempted, but was not successful.*" This despite the fact that 1LT Vaughan had observed COL Rodney Hayes test the recorder twice before the start of the hearing.

20. All FOIA/Privacy Act requests went thru COL Rodney Hayes Office. The plaintiff was also subsequently denied all of the other requested documents as well.

21. ~November 10th, 2009. 1LT Vaughan frustrated with the his inability to get a copy of the AR 15-6 Report of Investigation so that he could rebut it consulted with William Cassarra. He was advised that he could temporarily let the KY ARNG know he was represented until a formal arrangement [IE Payment] was made. In early December 2009, 1LT Vaughan drove down to Georgia to meet with Mr. Cassarra. He had been advised that Mr. Cassarra had tried on multiple occasions to reach LTC Seitz by phone but that his calls were never returned. Additionally, Mr. Cassarra advised 1LT Vaughan that his fees were $5,000 up front to go any further. As 1LT Vaughan was unemployed, this amount up front barred him from formally retaining Mr. Cassarra to assist with his defense against the AR 15-6 Report of Investigation. At his unit's December Christmas Drill, 1LT Vaughan asked about TDS counsel and was provided a couple of names. However, LTC Morrison wasn't positively sure who it was.

**A - 118**

22. On ~January 22nd, 2010, LTC Dylan Seitz intentionally, willfully, arbitrarily, and capriciously disclosed to the Thurston County Sherriff's Office in Olympia, WA the INCOMPLETE Privacy Act Protected Army Regulation 15-6 Report of Investigation/Proceedings that the KY Army National Guard and the U.S. Army has willfully, and intentionally denied the plaintiff the opportunity to rebut. This version of the Privacy Act Protected Army Regulation 15-6 Report of Investigation/Proceedings failed to have the complete last page which stated that the appointing officer 'Non-Concurred" with the finding that the plaintiff was "guilty" of conduct unbecoming an officer. IE: He decided it was not an accurate and appropriate finding. Furthermore, this incomplete copy was the same copy submitted to the court in case no. 3:10-CV-5 Vaughan V. Brigham Doc. 35. This dissemination of these documents was done without permission from plaintiff Vaughan nor was it authorized under the US Army Systems of Notice Statements nor was it a compatible or acceptable disclosure of these documents under the D.O.D. Blanket Routine Use Provisions. The disclosure of these documents had, at the very minimum, a material adverse effect on plaintiff Vaughan in that an investigation that was rightfully suspended was erroneously reopened with inaccurate, defamatory, and incomplete information. A criminal investigation in Washington State that the KY Army National Guard referenced as being "open", with the plaintiff as "a suspect" for "felony crimes" that the KY Army National Guard

**A - 119**

was *"actively assisting"* in the investigation thereof in a Motion to Quash filed September 9th, 2010 in case number KY. E.D. 3:10-CV-5 Vaughan v. Brigham, Doc. No. 35.

23. The KY Army National Guard's *"assistance"* in the investigation came in the form of the egregious privacy act violation, the case should have still been suspended, nor was the plaintiff ever listed as a suspect, nor were felony crimes being investigated.

24. On February 16th, 2010, a relief for cause/referred (bad) Officer Evaluation Report (OER) and its associated documents were created by LTC Jerry Morrison.

25. LTC Jerry Morrison created these documents on February 16th, 2010 after the plaintiff had notified him of his having filed the lawsuit in KY E.D. 3:10-CV-5 Vaughan v. Brigham. This is verifiable via an e-mail and a Serious Incident Report ("SIR") sent up through the chain of command that the plaintiff now has.

26. On February 21st, 2010, 1LT Vaughan was counseled that he was receiving a relief for cause/referred OER, he was also recommended to receive a Letter of Reprimand from the Brigade Commander, and he was to continue to have his security clearance locally suspended. He was advised that the AR 15-6 Report of Proceedings was not to be used against him, but that he "made some poor decisions". At this time, as he had done numerous times previously, 1LT Vaughan again vehemently denied having committed any of the allegations made by the complainant Mary Brigham/Kounovsky.

**A - 120**

27. Plaintiff refused to sign as he had seen too many administrative errors in the OER, had still not received a copy of the informal AR 15-6 Report of Investigation for rebuttal purposes as required by no less than four Army Regulations.

28. Specifically, Army Regulation 15-6 PARA 1-9 (c), Army Regulation 623-105 PARA 3-50, Army Regulation 623-3 PARA 3-58, and AR 600-37 PARA 3–6.

29. On February 19th, 2010, 1LT Vaughan sent via email, an 'RFI' to MAJ James Richmond requesting information re: the complaints that had been made against him. This was done so 1LT Vaughan would have a better idea as to what precisely he had been accused. That following drill weekend, MAJ Richmond advised 1LT Vaughan that he had been told by LTC Dylan Seitz to do a 'FOIA Request' for that information.

30. On February 24th, 2010, 1LTVaughan received an e-mail from LTC Jerry Morrison re: the Relief for Cause/Referred OER and requested that 1LT Vaughan sign it. On February 26th 2010, 1LT Vaughan responded back to LTC Jerry Morrison that he requested TDS counsel's information as he was refusing to sign anything until he spoke with TDS. On February 26th 2010, LTC Morrison responded that 1LT Vaughan had to sign it and requested the Servicing Judge Advocate General for the AR 15-6 Investigation to respond with TDS counsel's information. This was subsequently provided to 1LT Vaughan.

**A - 121**

31. Approximately early March 2009, 1LT Vaughan met (in a non-duty status) with a TDS Attorney named LTC Robert Bell. After a brief meeting to discuss the basics of the case, the plaintiff was subsequently assigned 1LT James Syrowski as a TDS counsel.

32. 1LT Syrowski exchanged a few informational e-mails with 1LT Vaughan from early March to approximately March 12th, 2010. Thereafter, 1LT Vaughan never heard from 1LT Syrowski ever again though the plaintiff tried to contact him.

33. On approximately March 12th, 2010, 1LT Vaughan filed an Inspector General ("IG") Complaint with COL David Alexander, Command IG for the Commonwealth of KY's National Guard regarding his OER and the informal AR 15-6 Report of Investigation that he was being refused access to in order to rebut.

34. On April 2nd, 2010, 1LT Vaughan [again] submitted a FOIA/Privacy Act request to the KY National Guard for the AR-15-6 Report of Proceedings.

35. On April 13th, 2010, the Command Inspecting General for the KY National Guard informed 1LT Vaughan that among other things;

      d. That the AR 15-6 Report of Proceedings was not used for the Relief for Cause OER; (This was false)

      e. That 1LT Vaughan was only allowed to rebut the OER NOT the AR 15-6 Report of Proceedings; (This was false)

      f. That 1LT Vaughan needed to do a FOIA request for the AR 15-6 Report AND; (This was false)

      g. Most notably of all that "There is no Provision to "rebut" an AR 15-6 or a Letter of Reprimand. (False)

      h. This was also stated to 1LT Vaughan nearly a month after his TDS counsel 1LT Syrowski had ceased communicating with him AND while 1LT Vaughan

**A - 122**

was in Germany for Annual Training from April 10th 2010 to May1st 2010.

36. On May 4th, 2010, 1LT Vaughan sent and received a number of e-mails from LTC Dylan Seitz, State Staff Judge Advocate General and the Servicing Judge Advocate for the AR 15-6 Report of Proceedings who stated "... *I also believe that you would be entitled to receive a copy of this report in order to appeal or rebut any adverse administrative action based upon evidence produced as a result of this investigation.*" LTC Seitz also informed 1LT Vaughan when he stopped off to pick up (in his Civilian Capacity) the AR 15-6 Report of Proceedings as produced due to his FOIA/Privacy Act request, that the reason 1LT Syrowski had stopped talking to 1LT Vaughan in early March 2010 was that 1LT Syrowski had been 'medical review boarded' out of the KY Army National Guard. 1LT Vaughan was never notified by the defendants that 1LT Syrowski's status had changed until then.

37. On May 9th, 2010, additional final action was taken against the plaintiff by the filing of his Relief for Cause OER and his Letter of Reprimand into his permanent record that was based on the AR 15-6 Report of Proceedings.

38. On approximately February 18th, 2011, the plaintiff in this action received a certified letter from '1st Army' (Dept. of the U.S. Army) stating "*that sufficient basis exists to initiate action for withdrawal of Federal Recognition in the Army National Guard for moral or professional dereliction, in accordance with NGR 635-101, paragraph 9. Specifically, you had an adulterous relationship with a woman not your wife and an AR 15-6 investigation found that you harassed this woman after the relationship ended.*"

**A - 123**

39. The Plaintiff as a National Guard soldier, not on Title 10 orders (Federal Service) is not subject to the Uniform Code of Military Justice ("UCMJ").

40. At all other times, the plaintiff is only subject to the KY Code of Military Justice ("KCMJ"). Specifically referenced in KRS 35.015 that pertinently states as follows:

> **"35.015 Persons subject to code.**
>
> All persons belonging to the National Guard or active militia and who are not in federal service under a call or order of the President of the United States shall be subject to the provisions of this code."

41. Only the UCMJ has provisions regarding 'adultery'. The KY Code of Military Justice has no provision relating to "adultery.

42. During all relevant times, the plaintiff was not subject to the UCMJ, only the KCMJ.

43. The KY Code of Military Justice [Kentucky Revised Statute 35.436] pertinently states as follows:

> **"35.436 Persons subject to code.**
>
> No person may be tried or punished for any offense under KRS 35.440 to 35.680 unless it was committed while he was in a duty status, except for the offense of failure to obey an order to report for state active duty under KRS 35.491."

44. The AR 15-6 Report of Proceedings fails to show that any allegation allegedly occurred during any time when the plaintiff was in a duty status.

45. On March 11th 2011, the plaintiff submitted his response to the letter referencing the pending Board Hearing to withdraw the plaintiff's Federal Recognition as a Commissioned Officer.

46. In the plaintiff's response, he replied he wanted to appear before the board, that he desired to be appointed a Military Attorney, he also checked that he desired to be represented by

**A - 124**

civilian counsel of his choosing, that he desired copies of documents to be presented to the board and other pertinent releasable documents, and that he desired to submit statements on his behalf.

47. The Board to Withdraw the Federal Recognition as a Commissioned Officer was held on July 9th, 2011.

48. The intentional misconduct of the defendants prior to, during, and after this Board to Withdraw the plaintiff's Federal Recognition is documented in the memorandums attached with Exhibit "A" to the original complaint constitutes a continuation of the pattern of egregious affirmative misconduct of the defendants in this action.

49. After the Board Hearing, the TDS Counsel that represented the Plaintiff for the limited purpose of appealing the board submitted a memorandum of appeal on approximately August 21st, 2011. On approximately November 27th 2011 the Plaintiff through his limited capacity TDS counsel submitted his memorandum to the Defendants.

50. The defendant KY Army National Guard intentionally waited until March 6th 2012 to submit the board results to 1st Army so they would not have to address all of the substantive and procedural due process violations that occurred prior, during, and after the Board Hearing that was referenced in the memorandums attached with Exhibit "A".

51. On March 31st, 2012 the plaintiff in this action received a letter from the Defendant US Dept. of the Army (1st Army) that "*On 9 July 2011, a board was held to determine whether you committed misconduct and to recommend whether your Federal recognition should be withdrawn. ·While that board recommended that your Federal recognition be withdrawn, it failed to make factual findings concerning the specific allegations of misconduct [EMPHASIS ADDED] in accordance with NGR 635-101, paragraph 20. In such instances,*

**A - 125**

*the proceedings are returned to the same board for compliance in accordance with NGR 635-101, paragraph 16a(I). In this case, however, an active duty board member has since retired and the board cannot reconvene. As a result, I have disapproved the board's findings and recommendation. For these reasons, I am reinitiating the withdrawal of Federal recognition process anew."*

52. The KY Code of Military Justice [Kentucky Revised Statute 35.220] pertinently states as follows:

**Former jeopardy.**

**(1) No person shall be tried a second time by a court of the state for the same offense.** <u>(EMPHASIS ADDED)</u>
(2) No proceeding in which an accused has been found guilty by a court-martial upon any charge or specification shall be held to be a trial in the sense of this section until the finding of guilty has become final after review of the case has been fully completed.
**(3) A proceeding which, <u>subsequent to the introduction of evidence but prior to a finding,</u> is <u>dismissed or terminated by the convening authority</u> or on motion of the prosecution for failure of available evidence or witnesses <u>without any fault of the accused shall be a trial in the sense of this section.</u>** (EMPHASIS ADDED)

53. This new board hearing is based on an informal AR 15-6 Report of investigation that is legally insufficient, based on an informal AR 15-6 Report of investigation that the plaintiff was willfully, intentionally, arbitrarily, and capriciously denied the right to rebut, and is being convened in direct violation of KRS 35.220.

54. And finally, on June 21st, 2012 the plaintiff was made aware of an incredible fraud on this honorable court. Specifically, that the defendant's in this action not only engaged in an egregious privacy act violation by submitting an informal AR 15-6 Report of Investigation to this court in case number 3:10-CV-5 (Vaughan v. Brigham) Doc No. 35 and its attachments but by failing to submit the complete informal AR 15-6 Report of Investigation which showed that the only 'charge' of which the plaintiff had been found 'guilty' of...was non-

**A - 126**

concurred by the appointing officer LTC Jerry Morrison. IE: the appointing officer of the investigation did not find that the plaintiff was 'guilty' of conduct unbecoming. The original document that incredibly prejudiced the Honorable Judge Reeves fails to have this final page of the document. More amazing is that the plaintiff in this action himself had never been told this….until almost three years later.

## CAUSES OF ACTION

### COUNT ONE
### <u>(Equitable Estoppel & Laches)</u>

55. The Plaintiff repeats, realleges, and incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

56. The defendants knew that the plaintiff was required to be allowed to rebut the AR 15-6 Report of Proceedings prior to taking final action.

57. The defendants intended for the plaintiff to act in reliance on their conduct and assertions that the AR 15-6 was not to be used against him and of the defendant's requirements to follow applicable Army Regulations to allow the plaintiff to rebut the AR 15-6 Report of Proceedings so that he could clear his name.

58. The plaintiff was ignorant of the fact that the true motive of the defendants was to explicitly deny him due process. Allowing the plaintiff to rebut the AR 15-6 Report of Proceedings would have quickly shown how legally insufficient it was.

**A - 127**

59. Defendants further violations of the plaintiff's substantive and procedural due process rights in regard to the Board to Withdraw the plaintiff's Federal Recognition is a further demonstration of the defendants affirmative misconduct.

60. The plaintiff has had his reputation and honor grievously injured beyond repair due to his reliance on the defendant's statements and their following their own procedures and regulations. These are the regulations that the defendants have imposed upon themselves to ensure that due process requirements are met for all soldiers and civilians that these procedural requirements are meant to protect.

61. Furthermore, the defendants willfully, intentionally, arbitrarily, and capriciously refused to accord the plaintiff the opportunity, at the relevant time, to rebut the informal AR 15-6 report of investigation as required by Army Regulations and without due process of law, violatative of the plaintiff's rights as protected by the Administrative Procedure Act and by the Fifth and Fourteenth Amendments of the United States Constitution.

62. Due to the defendant's undeniable affirmative misconduct that goes far beyond mere negligence, the doctrine of equitable estoppel and laches, bars the defendants from using the contested AR 15-6 Report of the Proceedings or the evidence collected therein for any purpose.

63. That all previous and any continued action based on the AR 15-6 Report of Proceedings is and/or would be a serious injustice to the plaintiff in this action.

**A - 128**

64. The public's interest will not suffer undue damage by imposition of the liability of equitable estoppel and laches in the present case.

**COUNT TWO**
**(Fifth and Fourteenth Constitutional Due Process Rights Violations)**

65. The Plaintiff repeats, realleges, and incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

66. The plaintiff has been deprived of his liberty interest in his good name and professional reputation in violation of the due process clause.

67. The defendants conduct has seriously affected the plaintiff's ability to pursue his chosen professions and has had the additional effect of substantially reducing his earning capacity in his chosen professions.

68. The plaintiff suffered an adverse civilian and military employment action(s) and the humiliation of being demoted from a command position by being 'relieved for cause' by intentionally being denied the ability to rebut the allegations in the informal AR 15-6 Report of Proceeding.

69. The government's constitutional violation automatically excludes the plaintiff from a definite range of employment opportunities with State and/or other government agencies or broadly precludes him from continuing in his chosen career as an Engineer Officer and also seriously affects his ability to maintain employment in his civilian profession.

**A - 129**

70. The denial of the plaintiff's right to receive and rebut the AR 15-6 Report of Proceedings as required by Army Regulation 15-6 PARA 1-9 (c), Army Regulation 623-105 PARA 3-50, Army Regulation 623-3 PARA 3–58, & Army Regulation 600-37 PARA 3–6, deprived the Plaintiff of his constitutionally protected due process rights in his liberty interest in his good name and professional reputation in violation of the due process clause.

**COUNT THREE**
**(Administrative Procedure Act, "APA")**

71. The Plaintiff repeats, realleges, and incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

72. The APA requires the defendants (including the military) to act in accordance with the procedures it has imposed upon itself to ensure that due process requirements are met.

73. Plaintiff submits that clear evidence exists that the defendants failed to comply with its own administrative procedures as codified in Army Regulation 15-6 PARA 1-9 (c), Army Regulation 623-105 PARA 3-50, Army Regulation 623-3 PARA 3–58, & Army Regulation 600-37 PARA 3–6.

74. The intentional, willful, arbitrary, and capricious denial of the plaintiff's right to receive and rebut the AR 15-6 Report of Proceedings as required, deprived the

**A - 130**

Plaintiff of his substantive and procedural due process rights as statutorily protected by the Administrative Procedure Act.

75. The AR 15-6 Report of Proceedings resulted in no less than four final actions being taken against the plaintiff; 1) being Demoted from a command position and receiving a relief for cause/referred [bad] Officer Evaluation Report, 2) a Letter of Reprimand and 3) the suspension of his security clearance, 4) and prejudiced his civilian employment so much, he lost a job.

This final action by the defendants as recommended within the AR 15-6 Report of Proceedings caused a definitive 'legal change in status of the plaintiff.

## COUNT FOUR
## (VIOLATION OF KY LAW, "KCMJ")

76. The Plaintiff repeats, realleges, and incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

77. The plaintiff and the defendants are subject to the KY Code of Military Justice ("KCMJ") in relation to the plaintiff's due process rights which require the defendants to act in accordance with the laws passed by the KY Legislature and imposed upon the KY National Guard.

78. As the plaintiff is only subject to the KCMJ and not the UCMJ (Uniform Code of Military Justice), he is accorded specific due process protections.

79. The KY Code of Military Justice [Kentucky Revised Statute 35.220] pertinently states as follows:

**A - 131**

**Former jeopardy.**

**(1) No person shall be tried a second time by a court of the state for the same offense.** (EMPHASIS ADDED)
(2) No proceeding in which an accused has been found guilty by a court-martial upon any charge or specification shall be held to be a trial in the sense of this section until the finding of guilty has become final after review of the case has been fully completed.
**(3) A proceeding which, <u>subsequent to the introduction of evidence but prior to a finding</u>, is <u>dismissed or terminated by the convening authority</u> or on motion of the prosecution for failure of available evidence or witnesses <u>without any fault of the accused shall be a trial in the sense of this section.</u>** (EMPHASIS ADDED)

80. The board to withdraw the federal recognition of the plaintiff in this action held on July 9th, 2011 was set aside by LTG Bednarek as the board *"failed to make factual findings concerning the specific allegations of misconduct"*. Evidence was submitted and the board was vacated/set aside without any fault of the plaintiff.

81. The reconvening of the board to withdraw the plaintiff's recognition as an officer represents an explicit violation of KY Law and of the plaintiff's constitutionally protected due process rights.

**WHEREFORE,** the plaintiff Michael Vaughan prays that this Court award him the following relief:

1)  Declare that the AR 15-6 Report of Proceedings is unconstitutional to the extent that the defendants deprived the plaintiff of a liberty interest without due process of law, in violation of his substantive and procedural rights protected by the Administrative Procedure Act and by Army Regulations;

2)  Declare that the AR 15-6 Report of Proceedings is unconstitutional to the extent that the defendants deprived the plaintiff of a liberty interest without due process of law, in violation of his Fifth and Fourteenth Amendment rights as protected by the United States Constitution;

**A - 132**

3) Declare that the defendants willfully, intentionally, arbitrarily, and capriciously violated the plaintiff's substantive and procedural rights as protected by the Fifth and Fourteenth Amendments to the United States Constitution by denying him the opportunity to rebut the AR 15-6 Report of Proceedings;

4) Declare that the defendants willfully, intentionally, arbitrarily, and capriciously violated the plaintiff's substantive and procedural rights as protected by the Administrative Procedure Act and by Army Regulations by denying him the opportunity to rebut the AR 15-6 Report of Proceedings;

5) Preliminarily and permanently restrain and enjoin the Defendants, their agents, employees, and all persons acting under or in concert with them, from utilizing the AR 15-6 Report of Proceedings or any evidence collected during the investigation for any proceeding against the plaintiff or alternatively issuing a Writ of Mandamus barring the Defendants, their agents, employees, and all persons acting under or in concert with them, from utilizing the AR 15-6 Report of Proceedings or any evidence collected during the investigation for any proceeding against the plaintiff;

6) Preliminarily and permanently restrain and enjoin the Defendants, their agents, employees, and all persons acting under or in concert with them, from convening any proceedings based on the informal AR 15-6 Report of Proceedings, the previous board to withdraw the federal recognition of the plaintiff, or from any evidence collected there from, as it would violate the plaintiff's rights pursuant to Kentucky Revised Statute 35.220.

7) Expedite this action in every way pursuant to 28 U.S.C. § 1657 (a) and;

8) grant such other relief as the Court may deem just and proper.

**A - 133**

Case: 3:12-cv-00033-DCR Doc #: 112 Filed: 07/03/12 Page: 27 of 27 - Page ID#: 297

**Respectfully submitted**

Dated this 3[th] day of July, 2012

MICHAEL DEAN VAUGHAN
Plaintiff (*PRO SE*)
2010 Scott Blvd.
Covington, KY 41014
(513) 365-8090
mvaughan@kyguardgonewild.com

**A - 134**