UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| MICHAEL DEAN VAUGHAN, | ) |
| Plaintiff, | ) Civil No. 3:15-6-GFVT |
| v. | ) **MEMORANDUM OPINION** |
| KENTUCKY ARMY NAT'L GUARD, et al., | ) **&** |
| Defendants. | ) **ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Michael Dean Vaughan, a former Lieutenant in the Kentucky Army National Guard and a frequent plaintiff in the Eastern District of Kentucky, has filed suit against the Kentucky Army National Guard, the National Guard Bureau, and the United States Army alleging "fraud on the Court" in the parties' previous litigation. According to Vaughan, the Kentucky Army National Guard filed a fraudulent document in a 2010 lawsuit which inappropriately influenced the Court against Vaughan in various lawsuits going forward. The Defendants seek dismissal of Vaughan's complaint as well as the imposition of sanctions, and for the reasons that follow, the Court will GRANT the Defendants' motion.

**I**

**A**

This case is the seventh federal lawsuit Vaughan has filed since 2010. All seven lawsuits result from allegations that Vaughan engaged in the online harassment of a woman in 2009 and from the subsequent sanctions that were imposed upon him while he was a Lieutenant in the Kentucky Army National Guard ("KYARNG"). [R. 22-1 at 2-5.] *See also Vaughan v. Ky. Army*

*Nat'l Guard*, No. 3:12-33-DCR (E.D. Ky. 2012) [R. 38, therein, at 1-6 (detailing history of the litigation).]

Specifically, in 2005, Vaughan began a long-distance affair with Mary Elizabeth Brigham-Kounovsky ("Brigham"), a resident of Washington state. In August 2009, when Brigham discovered Vaughan was married, she attempted to end the relationship. Vaughan responded by threatening to send pornographic pictures of the couple engaging in sexual relations to Brigham's family, friends, coworkers, and employer. He also threatened to post the images on her MySpace and Facebook pages. When Brigham did not respond to Vaughan's threats, he carried them through, using a proxy server to disguise his identity.

At Brigham's request, local police in Washington opened an investigation of Vaughan for harassment, cyberstalking, and identity fraud. Brigham also contacted Colonel Hayes, Vaughan's supervisor at KYARNG. Colonel Hayes took a statement from Vaughan, concluded that Vaughan had committed the acts in question, and removed Vaughan from his position working for a military contractor. A formal military investigation was commenced in early 2010 to revoke Vaughan's federal recognition as an officer and to remove him from KYARNG. *See Vaughan v. Brigham*, No. 3:10-5-DCR (E.D. Ky. 2010) ("*Vaughan I*"), [R. 35, therein, at 2-5.] Vaughan later recanted his statement to Colonel Hayes and contended that it was Brigham who had distributed the pornographic images in an effort to damage Vaughan's reputation. [R. 3 at 4.]

On February 16, 2010, Vaughan sued Brigham in the Eastern District of Kentucky for defamation and related state law claims. While default was entered against Brigham for her failure to respond, Vaughan continued to use the case to obtain discovery from non-party KYARNG, attempting to collect evidence to defend against the ongoing military disciplinary

2

investigation against him. After the Court held three hearings in the case, it concluded that Vaughan's actions were pursued in bad faith and that he had committed perjury during the hearings. The Court dismissed the case with prejudice as a sanction, a decision affirmed by the Sixth Circuit on appeal. *See Vaughan I*, [R. 76; R. 87, therein.] In 2010, Vaughan also sued Colonel Hayes for defamation and invasion of privacy for actions undertaken during the disciplinary investigation. After the United States was substituted as the appropriate defendant, the claims were dismissed with prejudice. *Vaughan v. United States*, No. 3:10-54-DCR (E.D. Ky. 2010) ("*Vaughan II*").

Vaughan filed four related lawsuits in 2010. First, Vaughan sued KYARNG and the United States Army for alleged violations of the Privacy Act and the Freedom of Information Act, for their use of documents created to defend against his allegations in *Vaughan I*. On May 1, 2013, the Court dismissed those claims with prejudice as meritless. *See Vaughan v. Ky. Army Nat'l Guard*, No. 3:12-33-DCR (E.D. Ky. 2012) ("*Vaughan III*").

Vaughan then sued KYARNG and the National Guard Bureau for more alleged violations of the Privacy Act and the Freedom of Information Act. On August 24, 2012, the Court granted Vaughan's own motion to dismiss that action with prejudice, which Vaughan filed after he received certain documents he originally sought from the Defendants. *See Vaughan v. Ky. Army Nat'l Guard*, No. 3:12-34-DCR (E.D. Ky. 2012) ("*Vaughan IV*").

Vaughan also sued KYARNG and the United States Army for allegedly violating his due process rights and the Administrative Procedure Act for a variety of actions taken during the course of their disciplinary investigations of Vaughan. The Court dismissed that case with prejudice on January 18, 2013. *Vaughan v. Ky. Army Nat'l Guard*, No. 3:12-35-DCR (E.D. Ky. 2012) ("*Vaughan V*").

3

Finally, Vaughan brought a fourth case against KYARNG and the National Guard Bureau, which again alleged violations of the Privacy Act and the Freedom of Information Act. The Court dismissed that case on March 15, 2012, for failure to prosecute. *Vaughan v. Ky. Army Nat'l Guard*, No. 3:12-53-DCR (E.D. Ky. 2012) ("*Vaughan VI*").

In his current complaint for "fraud on the Court," Vaughan alleges that KYARNG filed an "altered" document in *Vaughan I* that misled the Court both at the time and going forward. This document, an AR 15-6 Report of Investigation, was filed by KYARNG on September 9, 2010, in support of a motion to quash. *See Vaughan I*, [R. 35-2, therein.] At that time, KYARNG filed all four pages of the AR 15-6, which contained investigating officer Major James Richmond's recommendation that Vaughan be found guilty of conduct unbecoming an officer but contained no comments on the "Section VIII – Action by Appointing Authority" portion of page four. *Id.*, [R. 35, therein, at 3.] At a later date, Lieutenant Colonel Jerry Morrison reviewed the AR 15-6 and filled out Section VIII of the form, indicating that while he largely agreed with the recommendation, he did not concur with the charge of conduct unbecoming an officer. [*See* R. 3-1 at 2.] Vaughan contends the version submitted by KYARNG was altered because KYARNG submitted the version of the AR 15-6 which did not include Lieutenant Colonel Morrison's subsequent rejection of the conduct unbecoming charge. [R. 3 at 7, 22-23.] According to Vaughan, this was done "to deceive the court into believing that the plaintiff had been found guilty of 'Conduct Unbecoming an Officer.'" [R. 3 at 2.] Apart from this perceived prejudice in *Vaughan I*, Vaughan contends the Defendants' failure to produce the final version of the AR 15-6 was a critical factor in the dismissal of nearly every other lawsuit he filed. [*See id.* at 7-15.]

In his prayer for relief, Vaughan seeks (1) damages based upon the alleged fraud upon the Court and spoliation of evidence; (2) a declaration that the Defendants violated the Privacy Act, 5 U.S.C. § 552a; the Freedom of Information Act, 5 U.S.C. § 552; and his due process rights during the course of the disciplinary investigation; and (3) an order setting aside and vacating the judgments entered in *Vaughan I*, *Vaughan III*, *Vaughan IV*, and *Vaughan V*. [*See id.* at 26-27.] The Defendants seek dismissal of Vaughan's complaint.

**B**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of a plaintiff's complaint. *See, e.g.*, *Gardner v. Quicken Loans, Inc.*, 567 F. App'x 362, 364 (6th Cir. 2014). When addressing a motion to dismiss, the Court views the complaint in the light most favorable to the plaintiff and accepts as true all "well-pleaded facts" in the complaint. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). Because Plaintiff Vaughan is proceeding without the benefit of an attorney, the Court reads his complaint to include all fairly and reasonably inferred claims. *See Davis v. Prison Health Servs.*, 679 F.3d 433, 437-38 (6th Cir. 2012).

A complaint must contain allegations, either expressly stated or necessarily inferred, with respect to every material element necessary to sustain a recovery under some viable legal theory. *Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013). However, a complaint must be dismissed if it undoubtedly fails to allege facts sufficient to state a facially-plausible claim. *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 247 (6th Cir. 2012). A complaint may be dismissed for failure to state a claim if "it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**II**

**A**

As a preliminary matter, the Court has been notified of a threat made by Plaintiff Vaughan toward the Court. Pursuant to 28 U.S.C. § 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Courts have held that recusal need not be automatic when a threat is made against a judge. *See, e.g., United States v. Spangle*, 626 F.3d 488, 495-97 (9th Cir. 2010) (explaining that § 455 necessitates both an objective and subjective test, so the mere existence of a threat does not end the inquiry); *U.S. v. Greenspan*, 26 F.3d 1001, 1005-06 (10th Cir. 1994) (clarifying "threats or attempts to intimidate a judge will not ordinarily satisfy the requirements for disqualification under section 455(a) unless additional facts establish that the threats are serious). While a judge should take seriously his duty to recuse where genuine threats have been made, threats made simply to harass or to obtain a new judge do not necessitate recusal. *See, e.g., United States v. Yousef*, 327 F.3d 56, 170 (2d Cir. 2003) ("[W]here a threat is made simply 'to harass,' recusal is not warranted."); *Greenspan*, 26 F.3d at 1006 ("[I]f a judge concludes that recusal is at least one of the defendant's objectives . . . then section 455 will not mandate recusal because that statute is not intended to be used as a forum shopping statute.").

Based on the information available to the Court, 28 U.S.C. § 455 does not require the undersigned's recusal at this juncture. While a federal judge has a duty to recuse when he is disqualified, he also has a duty to "sit where not disqualified," which is equally as strong. *Laird v. Tatum*, 409 U.S. 824, 837 (1972). Thus, the undersigned retains jurisdiction of the Plaintiff's case and considers the propriety of the Defendants' motion to dismiss below.

**B**

The Defendants seek dismissal of Vaughan's latest complaint on the basis that the prior dismissal of Vaughan's claims in *Vaughan I*, *Vaughan III*, *Vaughan IV*, and *Vaughan V* renders his current claims barred under principles such as claim and issue preclusion. The Defendants maintain his "fraud on the Court" claim represents a transparent effort to relitigate claims that have previously been dismissed with prejudice. For the following reasons, the Court must agree.

As one of their grounds for dismissal, the Defendants raise the affirmative defense of res judicata. Accordingly, the Defendants bear the burden of proof for that defense. *Winget v. J.P. Morgan Chase Bank, N.A.*, 537 F.3d 565, 572 (6th Cir. 2008). The Sixth Circuit has explained that:

> Res judicata generally includes two separate concepts—claim preclusion and issue preclusion. Claim preclusion, or true res judicata, refers to [the] effect of a prior judgment in foreclosing a subsequent claim that has never been litigated, because of a determination that it should have been advanced in an earlier action. Issue preclusion, on the other hand, refers to the foreclosure of an issue previously litigated.

*Mitchell v. Chapman*, 343 F.3d 811, 818 n.5 (6th Cir. 2003) (citing *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984)). A claim is barred by res judicata where the following elements are present:

> (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*Browning v. Levy*, 283 F.3d 761, 772 (6th Cir. 2002) (quoting *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997)).

In this case, there is no question that res judicata applies. Vaughan expressly asks the Court to resuscitate the very same claims previously dismissed with prejudice against the very

same parties. As explained above, in *Vaughan III*, Vaughan sued KYARNG and the United States Army for their use of the AR 15-6 report in *Vaughan I*; in that case, Vaughan framed his complaint in terms of a Privacy Act violation. *See Vaughan III*, [R. 2, therein, at 6-11.] Similarly, in *Vaughan IV*, Vaughan sued KYARNG and the National Guard Bureau alleging violations of the Privacy Act and Freedom of Information Act by the Defendants for their use of the AR 15-6 report in *Vaughan I*. *See Vaughan IV*, [R. 1, therein.] In *Vaughan V*, Vaughan sued KYARNG and the Army for violations of the Administrative Procedure Act, again stemming from the Defendants' improper use of the AR 15-6. *See Vaughan V*, [R. 1, therein, at 17.] These cases were finally decided on the merits by the Court and involved the same parties as Vaughan's instant lawsuit—Vaughan, KYARNG, the United States Army, and the National Guard Bureau.[1] [*See* R. 3.] *See also Browning*, 283 F.3d at 772.

Moreover, the issues raised in Vaughan's latest case were—or should have been—previously litigated in the prior lawsuits. For example, the *Vaughan I* court itself considered the substance and propriety of the AR 15-6 report. During two hearings held before the Court dismissed the case, KYARNG explained to the Court in detail the course and status of Vaughan's military disciplinary proceedings. *Vaughan I*, [R. 35-2, therein, at 4; R. 47; R. 76; R. 85.] This should have prevented any prejudice or confusion on behalf of the Court stemming from the AR 15-6 report. Also, Vaughan now contends the nondisclosure of the final AR 15-6

---

[1] *Vaughan III* and *Vaughan V* were dismissed with prejudice following merits determinations, and *Vaughan IV* was dismissed pursuant to Rule 41(b) following Vaughan's own motion. *Vaughan I* was dismissed with prejudice as a sanction; however, the dismissal still counts as an adjudication on the merits for claim preclusion purposes. Fed. R. Civ. P. 41(b) (explaining a dismissal operates as an adjudication on the merits); *Kreidie v. Sec'y, Penn. Dept. of Revenue*, 574 F. App'x 114, 116-18 (3d Cir. 2014); *Freedman v. American Export Isbrandtsen Lines, Inc.*, 451 F.2d 157, 158 (3d Cir. 1971) (finding Rule 41(b) dismissal with prejudice of *pro se* complaint barred subsequent federal court action on res judicata grounds); *Nasser v. Isthmian Lines*, 331 F.2d 124, 127-28 (2d Cir. 1964) (finding Rule 37 dismissal as sanction for discovery abuse constitutes adjudication on the merits).

harmed him in *Vaughan V*. [*See* R. 3.]  However, in that case, Vaughan *himself* filed the final version of the form in the record on August 31, 2012, in opposition to a motion to dismiss and five months before the Court ruled in favor of the Defendants.[2]  *Vaughan V*, [R. 30-2, therein, at 8; R. 37.]  Clearly, the issues raised by Vaughan's latest complaint were either previously dealt with in the prior cases or should have been raised by the Plaintiff at an earlier time.  *See Browning*, 283 F.3d at 772.  The Defendants' motion to dismiss on the basis of res judicata is, therefore, properly granted.

## C

Nevertheless, even if Vaughan's claims were not barred procedurally because of res judicata, they fail because Vaughan does not state a valid claim for fraud on the Court.  First, Vaughan's claim is procedurally deficient.  A party's assertion that a Court has been defrauded must be raised by filing a motion to vacate the judgment in the Court that rendered it.  *See Taft v. Donellan Jerome, Inc.*, 407 F.2d 807, 808 (7th Cir. 1969) (explaining that the court which was the victim of the fraud is the only court that can decide the question and it cannot be raised in an independent action).  *See also Hazel-Atlas Glass Co. v. Hartford-Empire Co*., 322 U.S. 238, 247-50 (1944) (holding that where fraud had been committed on the Third Circuit, that court was the appropriate venue to remedy the fraud); *Weisman v. Charles E. Smith Mgmt*., 829 F.2d 511, 513-14 (4th Cir. 1987); *Zinger Constr. Co. v. United States*, 13 Cl. Ct. 752, 754 (Cl. 1987) ("First, Rule 60(b) can only be invoked when the judgment from which a party seeks relief was a judgment of the court (or board) in which relief is sought.").

---

[2] In light of this, Vaughan's contention that disclosing "[t]he unaltered/missing page from the AR 15-6. . . would have been a critically decisive factor" in avoiding dismissal of *Vaughan V* is particularly meritless. [*See* R. 3 at 7-8.]

9

Vaughan's claim should have been filed pursuant to Federal Rule of Civil Procedure 60. Subsection (b) of that rule permits a litigant to seek to vacate a prior judgment where it has been procured by "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). While Rule 60 precisely captures the nature of Vaughan's fraud claim, he did not assert his claim pursuant to that rule and, in fact, cannot now seek relief under the rule because he is time-barred. "A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). Because each of the cases Vaughan seeks to reopen was closed several years ago, the one-year time period within which Vaughan could have sought relief under Rule 60(b)(3) has long since come and gone.

Moreover, even if the Court could consider Vaughan's claim of fraud on the Court in an action independent to a Rule 60(b) motion, his claim fails substantively. The Sixth Circuit has explained the elements of fraud on the Court as follows:

> Fraud on the court consists of conduct: 1) on the part of an officer of the court; that 2) is directed to the judicial machinery itself; 3) is intentionally false, willfully blind to the truth, or is in reckless disregard of the truth; 4) is a positive averment or a concealment when one is under a duty to disclose; and 5) deceives the court. Petitioner has the burden of proving existence of fraud on the court by clear and convincing evidence.

*Johnson v. Bell*, 605 F.3d 333, 339 (6th Cir. 2010) (quotation marks and internal citations omitted). "In practice, this means that even fairly despicable conduct will not qualify as fraud on the court." *Moore's Federal Practice* § 60.21(4)(c).

Vaughan has failed to establish the required elements by clear and convincing evidence in this case. He cannot satisfy the third element because the AR 15-6 filed in *Vaughan I* was neither false nor misleading. Instead, the document was simply representative of a particular

10

interim stage of the ongoing investigation against him. The fourth required element is also unmet, because Vaughan has not identified a legal basis to impose an affirmative obligation upon opposing counsel to turn over this document, let alone to provide him with a particular version of the document that Vaughan believes would have been more advantageous to his claims. *See Carter v. Anderson*, 585 F.3d 1007, 1012-13 (6th Cir. 2009) (discussing a party's failure to satisfy the third and fourth elements of a fraud on the Court claim).

In addition, Vaughan cannot satisfy the fifth criteria because the Court was not deceived. The face of the AR 15-6 document itself made plain that the recommendation of the investigating officer was subject to subsequent review and eventual approval or disapproval from an appointing authority. [*See* R. 3-1 at 4.] Further, Vaughan himself provided the full and updated copy of the AR 15-6 to the Court in some of the previous lawsuits, and he admits doing this in his amended complaint in the present action. [*See* R. 3.] For example, Vaughan repeatedly mentions and attaches the missing page from the AR 15-6 report in his pleadings in *Vaughan V*, explaining "this official military document's significance to his case." [R. 3 at 9.]. He now merely contends that "the court simply ignored" those filings. [*Id.*] *See also Vaughan V*, [R. 27-1, therein, at 6-8.] The *Vaughan V* court clearly had access to the full AR 15-6 document before making its decision. Similarly, the *Vaughan I* Court was not deceived by the original AR 15-6 report. In that case, the Court held two hearings prior to dismissing the action; during the hearings, KYARNG explained in detail the full course of the military disciplinary proceedings against Vaughan. *See Vaughan I*, [R. 35-2, therein, at 4; R. 47; R. 76; R. 85.] Notably, Vaughan possessed a copy of the document in question by August 2012, well before the dismissal of *Vaughan III*, *Vaughan IV*, and *Vaughan V*. He easily could have, and in some cases *did*, bring the document to the Court's attention. *See Vaughan V*, [R. 30-2, therein, at 8; R. 37.]

Under these circumstances, Vaughan has failed to demonstrate that any fraud was committed upon the Court under any standard, let alone the required clear and convincing evidence standard. *See Carter*, 585 F.3d at 1011-13; *General Medicine P.C. v. Horizon/CMS Health Care Corp.*, 475 F. App'x 65, 71-75 (6th Cir. 2011). Even if Vaughan's claims are not procedurally barred by res judicata or his failure to assert the claims under Rule 60(b), the claims fail substantively. Because Vaughan has failed to state a claim upon which relief may be granted, the Court grants the Defendants' motion to dismiss.

**D**

As a final matter, the Defendants ask the Court to impose filing restrictions upon Vaughan to prevent him from bringing further lawsuits arising out of the same history and claims. The Court agrees that seven lawsuits arising out of this particular set of events is enough and, thus, believes that narrowly-tailored restrictions against Vaughan's ability to file future suits are warranted.

The Supreme Court established long ago that "courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Anderson v. Dunn*, 19 U.S. 204, 227 (1821). Accordingly, a district court has inherent authority to sanction parties whose actions are vexatious, frivolous, or undertaken in bad faith. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). This authority is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962).

The Court takes seriously its obligation to afford additional latitude to *pro se* parties who are not educated in the eccentricities of the law or its practice, as their misguided actions may be

the consequence of inexperience or lack of specialized knowledge rather than a desire to harass or delay. *See, e.g., Haines v. Kerner*, 404 U.S. 519, 596 (1972). However, that forgiving approach has never been "interpreted so as to excuse mistakes by those who proceed without counsel," *McNeil v. United States*, 508 U.S. 106, 113 (1993), and the Court must not allow "the right of self-representation [to be used as] a license to abuse the dignity of the courtroom." *Faretta v. California*, 422 U.S. 806, 835 n. 46 (1975). Even a court's "special solicitude" towards *pro se* litigants "does not extend to the willful, obstinate refusal to play by the basic rules of the system upon whose very power the plaintiff is calling to vindicate his rights." *Pandozy v. Sega*, 518 F. Supp. 2d 5580, 558 (S.D.N.Y. 2007) (imposing pre-filing restrictions against a litigant who was "unwilling[] to accept unfavorable rulings on her claims. Each time her claims are dismissed, she repackages them with new labels, against new defendants, and in new courts, as part of an 'ever-broadening conspiracy theory.'").

Any person proceeding *pro se* who repeatedly files meritless or frivolous lawsuits abuses the right to represent himself without counsel and the privilege of proceeding without payment of the filing fee, thereby imposing a heavy burden upon the resources of the Court at the expense of other litigants with potentially meritorious claims. In such a situation, the Court may impose sanctions necessary and appropriate to deter the unacceptable conduct. *See Chambers*, 501 U.S. at 45-46. For example, the Court may deny such a plaintiff *pauper* status, *see Reneer v. Sewell*, 975 F.2d 258, 260-61 (6th Cir. 1992), or may require the offender to pay another party's attorneys' fees. *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 511-12 (6th Cir. 2002). When warranted, the Court may also require a vexatious litigant to request and receive permission before filing any new lawsuit. *See Marbly v. Wheatley*, 87 F. App'x 535, 536 (6th Cir. 2004); *Maxberry v. S.E.C.*, 879 F.3d 222, 224 (6th Cir. 1989); *Filipas v. Lemons*, 835

13

F.2d 1145, 1146 (6th Cir. 1987). Appropriately, any such orders should be narrowly tailored to prevent the abuses evidenced by the litigant's prior conduct. *See Andrews v. Heaton*, 483 F.3d 1070, 1077-78 (10th Cir. 2007).

Vaughan has already filed seven civil actions arising out of Brigham's allegations, the KYARNG investigation, and the subsequent Army disciplinary proceedings. The overwhelming majority of Vaughan's claims in these cases have been found meritless and appropriate for dismissal. Further, Vaughan's history of filing these suits suggests a propensity towards filing future frivolous suits arising out of the same factual scenario. The Court foresees no useful purpose in permitting additional lawsuits to be filed which arise out of the same events already litigated. Therefore, the Court will require Vaughan to request and obtain the Court's approval before he is permitted to file any additional civil actions, a sanction which is appropriately tailored in light of Vaughan's extensive history before the Court. *See, e.g., Wheatley*, 87 F. App'x at 536. Upon a request from Vaughan to file a lawsuit, the Court will consider Vaughan's claims and either grant or deny him permission to file. The Court notes it is very unlikely that permission would be granted to file a claim which is in any way related to those asserted in any of Vaughan's previous civil actions. *See Punchard v. U.S. Gov't*, 290 F. App'x 160, 161 (10th Cir. 2008) (banning a plaintiff from filing any future appeals involving the same claims already litigated).

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. The Defendants' motion to dismiss the complaint [R. 22] is **GRANTED**;

  2. Plaintiff Michael Dean Vaughan's original and amended complaints [R. 1; R. 3] are **DISMISSED WITH PREJUDICE**;

  3. Judgment will be entered contemporaneously herewith;

  4. Plaintiff Michael Dean Vaughan may not file any new civil lawsuits in this Court without the prior written authorization of the Court. The Clerk of the Court **SHALL REFUSE** to file or docket any civil complaint—regardless of how styled or the basis for the relief sought—unless the Court authorizes the filing of such action. To obtain such authorization, Vaughan must:

    a. Send a one-page letter to the Court requesting permission to file suit;

    b. Include a typewritten complaint, or a form Civil Rights Complaint [EDKY Form 520], which must describe the facts of his case and his legal claims with reasonable particularity; and

    c. Pay the required fees, or file a form Application to Proceed Without Prepayment of Fees and Affidavit [AO Form 249], file a Certificate of Inmate Account [Form EDKY 523], and explain why 28 U.S.C. § 1915(g) does not bar his request for pauper status;

  5. Any scheduled proceedings in this action are **CANCELLED**, and the matter is **STRICKEN** from the Court's active docket.

This the 21st day of April, 2016.

Gregory F. Van Tatenhove
United States District Judge